UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

JOHN PAUL MAC ISAAC,

        Plaintiff,

v.

MADBITS, LLC,
a Florida Limited Liability Company

        and

TWITTER, INC.,
a Delaware Corporation,

        Defendants.
_____/

## COMPLAINT FOR DEFAMATION

COMES NOW, PLAINTIFF JOHN PAUL MAC ISAAC (hereinafter, "Plaintiff"), by and through undersigned counsel hereby sues DEFENDANTS, MADBITS, LLC and TWITTER, INC. for defamation for making false and damaging statements and alleges as follows:

### A. PARTIES, JURISDICTION & VENUE

1. This is an action for Defamation (Libel Per Se) and damages in excess of seventy-five thousand and 00/100 dollars ($75,000.00).

2. This court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332(a).

3. Plaintiff JOHN PAUL MAC ISAAC is an individual over the age of 18 who is *sui juris*, resides in, and is a citizen of Lakewood, Colorado.

4. Defendant MADBITS, LLC (hereinafter, "Defendant MADBITS") is a Limited Liability Company organized under the laws of the State of Florida with its principal place of business at 1355 Market Street Ste 900, San Francisco, CA 94103. The Articles of Organization for

Defendant MADBITS, LLC filed with the Florida Division of Corporations "Sunbiz" website on November 30, 2012, is attached as EXHIBIT A. The 2020 Annual Report for Defendant MADBITS, LLC showing its primary place of business is attached hereto as EXHIBIT B.

5. Defendant TWITTER, INC. (hereinafter, "Defendant TWITTER") is a Corporation incorporated under the laws of the State of Delaware with its principal place of business in 1355 Market Street Ste 900, San Francisco, CA 94103. A copy of the Entity Detail for Defendant TWITTER, INC. from the California Secretary of State is attached hereto as EXHIBIT C.

6. General jurisdiction over Defendant MADBITS is proper as MADBITS is "at home" in Florida, is a Florida limited liability company, upon information and belief, employs Florida residents, and performs substantial commercial activities with residents in the State of Florida. A copy of the Dun and Bradstreet Report on Defendant MADBITS is attached hereto as EXHIBIT D.

7. Personal jurisdiction over Defendant MADBITS is proper as per Florida Statute §48.193(1)(a)(1) due to the fact that Defendant MADBITS is a Florida limited liability company, upon information and belief, employs Florida residents, and performs substantial commercial activities with residents in the State of Florida . *See* EXHIBIT D

8. Personal jurisdiction over Defendant TWITTER is proper as per Florida Statute §48.193(1)(a)(1) due to the fact that Defendant TWITTER maintains an office at 78 SW 7th Street, Miami, Florida 33130, employs Florida residents, and performs substantial commercial activities with residents in the State of Florida. Announcement from 2015 announcing Defendant TWITTER's opening of an office in Miami attached as EXHIBIT E, Defendant TWITTER's current page on LinkedIn.com allegedly showing its current Miami office address attached as EXHIBIT F, and job openings for positions in Defendant TWITTER's Miami office attached as EXHIBIT G.

9. Personal jurisdiction over Defendant TWITTER is proper as per Florida Statute §48.193(1)(a)(2) due to the fact that Defendant TWITTER posted defamatory materials concerning the Plaintiff on their website and through their mobile app, which materials were accessed in Florida, constituting the tortious act of defamation. Defendant TWITTER has committed intentional torts aimed at Plaintiff, the effects of which were suffered in Florida. Copies of internet posts showing access by Florida residents referring directly to Defendant TWITTER's actions are attached hereto as follows:

    a. Florida Resident and Twitter user "Celeta Quinn", attached hereto as EXHIBIT H.

    b. Florida Resident and Twitter user "Linda Norway", attached hereto as EXHIBIT I.

    c. Florida Resident and Facebook user "Fred Barnard", attached hereto as EXHIBIT J.

    d. Florida Resident and Facebook user "Susie Turner Kilpatrick", attached hereto EXHIBIT K.

    e. Florida Resident and Facebook user "Toby Kennedy", attached hereto as EXHIBIT L.

10. Personal jurisdiction over Defendant TWITTER is proper as per Florida Statute §48.193(1)(a)(6)(a) due to the fact that Defendant TWITTER caused injury to Plaintiff with its defamatory materials while Defendant TWITTER was engaged in the solicitation and service of Florida residents, by means of advertising and otherwise, within the state of Florida. Defendant TWITTER, jointly and severally with Defendant MADBITS, reached beyond the borders of their states of incorporation and/or principal place of business into Florida to conduct business, and enter into contracts with residents of Florida that involve the knowing and repeated transmission of

computer files over the internet. Copies of webpages from Defendant TWITTER showing that TWITTER allows users to directly target paid advertising to Florida residents and accepts payment for doing so are attached hereto as EXHIBIT M.

11. General and personal jurisdiction over Defendant TWITTER is also proper as Defendant MADBITS is the alter ego of Defendant TWITTER and, as such, all contacts and activities of Defendant MADBITS are imputed to Defendant TWITTER for jurisdictional purposes.

12. Based on their intentional torts, office space, commercial activities, solicitations, and service in the State, Defendants should have reasonably anticipated being hailed into this Court, and therefore their Due Process has been observed and satisfied.

13. Venue is proper in this District as, upon information and belief, Defendant TWITTER maintain an office at 78 SW 7th Street, Miami, Florida 33130.

14. All conditions precedent to this action have been performed. Specifically, although not actually required to do so, Plaintiff provided Defendants with pre-suit notice pursuant to Florida Statute §770.01, *et seq*, copies of which is attached hereto as EXHIBIT N.

## B. STATEMENT OF CASE

15. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 14.

16. Plaintiff is a private citizen who currently resides in Lakewood, Colorado and is a citizen of the State of Colorado.

17. Plaintiff owned a small business named The Mac Shop, Inc. (the "Mac Shop") which is a Delaware corporation.

18. Plaintiff was in the business of repairing Mac computers.

19. Plaintiff is not and never has been a user/subscriber of the social media platform owned and operated by Defendant TWITTER.

20. Defendant MADBITS is a single-member limited liability company wholly owned by Defendant TWITTER. Defendant MADBITS has no website of its own, lists the offices of Defendant TWITTER as its principal office, and the Secretary of Defendant MADBITS, as listed with the Florida Division of Corporations, is Vijaya Gadde, the "Legal, Policy and Trust & Safety Lead @Twitter." Upon information and belief, Defendant TWITTER makes all financial decisions for Defendant MADBITS. *See* EXHIBIT B. A copy of the Twitter page of Vijaya Gadde is attached hereto as EXHIBIT O.

21. Upon information and belief, Defendant MADBITS is wholly controlled by Defendant TWITTER, to the point where Defendant MADBITS filed "Articles of Dissolution" with the Florida Secretary of State on January 13, 2015, listing as the "occurrence that resulted in the limited liability company's dissolution" that "LLC GOT ACQUIRED BY A PUBLIC COMPANY IN JULY 28, 2014. NO LONGER EXISTS AS SEPARATE ENTITY." A copy of said Articles of Dissolution is attached hereto as EXHIBIT P. Defendant MADBITS filed a Statement of Revocation of Dissolution on February 1, 2015, a copy of which is attached hereto as EXHIBIT Q.

22. It is Plaintiff's belief that Defendant MADBITS exists solely to allow Defendant TWITTER to operate its business and employ employees in the State of Florida, in violation of Florida law requiring the registration of Foreign Corporation with the Florida Secretary of State.

23. Defendant TWITTER is a company that developed and maintains a social media platform used by more than 340 million people worldwide, 78 million of whom purportedly reside in the United States of America. Twitter Demographics as of October 28, 2020 from www.omnicoreagency.com attached as EXHIBIT R.

24. On or about April 12, 2019, Plaintiff was asked to recover information from damaged Mac computers allegedly owned by Mr. Hunter Biden ("BIDEN"). Copy of Repair Authorization attached as EXHIBIT S.

25. On or about April 13, 2019, Plaintiff completed the recovery and called BIDEN to notify him of such and to request that he retrieve his recovered data, which was stored on an external hard drive.

26. On or about April 17, 2019, Plaintiff sent an electronic invoice to BIDEN in the amount of $85.00. Copy of electronic invoice attached as EXHIBIT T.

27. Plaintiff attempted to contact BIDEN at least one more time thereafter to request that he pay his invoice and retrieve his recovered data.

28. BIDEN never returned to the Mac Shop to retrieve his recovered data nor did he pay his invoice.

29. Pursuant to the terms of the Repair Authorization signed by BIDEN, "[e]quipment left with the Mac Shop after 90 days of notification of completed service will be treated as abandoned and you agree to hold the Mac Shop harmless for any damage or loss of property." *See* EXHIBIT Q.

30. Starting in late July 2019 to October 14, 2020, Plaintiff had multiple interactions with the Federal Bureau of Investigation, U.S. Congressional staff members, and Mr. Robert Costello, Esquire ("COSTELLO"), attorney for Rudolph Giuliani, Esquire ("GUILIANI").

31. On October 14, 2020, as a result of Plaintiff's interaction with COSTELLO, the New York Post newspaper ("NY POST") published an exposé about the contents of BIDEN's recovered data after having received the information from GIULIANI.

32. Plaintiff was unaware that the recovered data was disclosed to the NY POST nor did the Plaintiff authorize such disclosure.

33. Plaintiff did not know that the NY POST was going to publish a story about the recovered data nor did he authorize such publication.

34. Plaintiff specifically asked COSTELLO to not use his name when discussing the recovered data with GIULIANI as Plaintiff desired to remain anonymous.

35. Plaintiff did not authorize the disclosure of his identity by GIULIANI, COSTELLO, or the NY POST.

36. NY POST, as part of its exposé and without the consent of Plaintiff, published a photo of the Mac Shop without blurring the business name thereby notifying the public where BIDEN had dropped off his laptop.

37. On October 14, 2020, Defendant TWITTER locked the NY POST's account as the NY POST attempted to post and disseminate its exposé on the social media platform owned and operated by Defendant TWITTER.

38. In addition to locking the NY POST's account, Defendant publicly published a statement that it was blocking dissemination of the NY POST's story because it violated Defendant TWITTER's rules against "distribution of hacked material."[1] Notifications by Defendant TWITTER directly related to the NY POST story attached as EXHIBIT U.

---

[1] Specifically, the Defendant TWITTER's statement said:

    a. "YOUR ACCOUNT HAS BEEN LOCKED.
       What happened?

       Violating our rules against distribution of hacked materials.

       We don't permit the use of services to directly distribute content obtained through hacking that contains private information, may put people in physical harm or danger, or contains trade secrets."

    b. "We want to provide much needed clarity around the actions we've taken this morning with respect to two NY Post articles that were first tweeted this morning."

    c. "The images contained in the articles include personal and private information – like email address and phone numbers – which violate our rules."

    d. "As noted this morning, we also currently view materials included in the articles as violations of our Hacked Materials Policy."

39. Further actions taken by Defendant TWITTER in response to the NY POST's story included limiting the distribution of the story by others on its social media platform pursuant to the same policy thereby spreading the belief among its users, including Florida resident users, that the Plaintiff is a hacker. Copies of examples attached as EXHIBIT V.

40. Defendant TWITTER's publications were intended to be and actually were accessible in the State of Florida. *See* EXHIBIT V.

41. Defendant TWITTER's Distribution of Hacked Materials Policy ("Hacked Materials Policy") defines a "hack" as "an intrusion or access of a computer, network, or electronic device that was unauthorized or exceeded authorized access. Copy of Defendant TWITTER's Distribution of Hacked Material's Policy attached as EXHIBIT W.

42. The Hacked Materials Policy further defines "hacked materials" as "information obtained through a hack." *See* Exhibit W.

43. Plaintiff was the individual who obtained the information published by the NY POST which was identified as "hacked material" by Defendant TWITTER.

44. On November 17, 2020, during testimony before the United States Senate Judiciary Committee, the Chief Executive Officer of Defendant TWITTER, Mr. Jack Dorsey ("DORSEY"), made the following statements specifically relating to the Defendant TWITTER's actions toward the NY POST's account on its social media platform (Copy of Testimony attached as EHIBIT X):

   a. "We did an under our terms of service, which as you know, everyone agrees to when they sign up for Twitter. This was a policy around distribution of hacked materials. We did not want Twitter to be a distribution point for hacked materials." *See* Testimony at 55:55.

   b. "We realize that and we recognize [the suppression and labeling of the information] as a mistake that we made both in terms of the intention of the policy and also the

enforcement action of not allowing people to share it publicly or privately, which is why we corrected it within 24 hours." *See* Testimony at 56:21.

c. "It was a business decision." *See* Testimony at 57:42.

d. "Our policy was focused on distribution of the actual hack materials and the New York Times..." *See* Testimony at 2:06:42.

e. "And in the New York Times case, we interpreted as reporting about the hacked materials, not distribution of [inaudible 02:06:58]." *See* Testimony at 2:06:51.

f. "No. And that account is not suspended, it fell afoul of the hacked materials policy, we realized that there was an error in that policy and the enforcement and we corrected that within 24 hours." *See* Testimony at 2:08:51.

42. Defendant TWITTER's actions and statements had the specific intent to communicate to its users, including its Florida resident users, that Plaintiff is a hacker and/or hacked the published materials.

43. According to Merriam-Webster, a "hacker" is "a person who illegally gains access to and sometimes tampers with information in a computer system."

44. The term "hacker" is not only widely viewed as disparaging, particularly when said about someone who owns a computer repair business but is also a criminal act.

45. Plaintiff is not a hacker and the information obtained from the computer does not constitute hacked materials because Plaintiff lawfully gained access to the computer, first with the permission of its owner, BIDEN, and then, after BIDEN failed to retrieve the recovered data despite Plaintiff's requests, in accordance with the Mac Shop's abandoned property policy.

46. Plaintiff, as a direct result of Defendant TWITTER's actions and statements, is now widely considered a hacker and, beginning on the same day Defendant TWITTER categorized the

Plaintiff as a hacker, Plaintiff began to receive negative reviews of his business as well as threats to his person and property. Yelp reviews and personal threats attached as EXHIBIT V.

47. Further evidence of the harm suffered by Plaintiff as a direct result of Defendant TWITTER's false statements is that the Plaintiff had to close his business.

48. Defendant TWITTER acted with malicious intent to harm the Plaintiff by publishing the defamatory statement.

49. Alternatively, Defendant TWITTER was grossly negligent in publishing the defamatory statement about the Plaintiff.

50. Defendant TWITTER knew or should have known that its statement that the NY POST's story contains hacked materials would cause harm to the Plaintiff.

## C. COUNT 1: DEFAMATION AND DEFAMATION PER SE

51. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 50.

52. Defendant TWITTER, through its social media platform, has made false and defamatory statements concerning Plaintiff without privilege to do so.

53. The false and defamatory statements included, but are not limited to, allegations that:[2]

   a. the information obtained by NY POST from GIULIANI, which originally came from the Plaintiff, constitutes hacked materials thereby categorizing the Plaintiff as a hacker and/or a criminal;

   b. the Plaintiff may have put people in physical harm;

   c. the Plaintiff may have put people in danger;

   d. the Plaintiff may have violated trade secret laws

---

[2] *See* Footnote 1 on pages 6 and 7 of this Complaint.

54. The defamatory statements were made negligently; without reasonable care as to their truth or falsity; with knowledge of their falsity; and/or with reckless disregard for the truth.

55. The defamatory statements were published without privilege to third parties, including thousands (or more) of Florida residents.

56. The Plaintiff is not a public figure, nor is he a limited public figure for purposes of defamation analysis.

57. The statements allege that Plaintiff committed crimes including (but not limited to) computer hacking of the son of Democratic Party nominee, now President, Joe Biden. The implication of an attempt to undermine American democracy and the 2020 Presidential election is obvious.

58. The statements are of the kind that would tend to, and in fact did, prejudice the Plaintiff in the eyes of a substantial and respectable minority of his profession and the community at large, including those located in Florida.

59. Defendant TWITTER made the false statements about Plaintiff with the malicious intent to harm the Plaintiff or, alternatively, with reckless disregard for the harm the false statements would cause to the Plaintiff.

60. Defendant TWITTER, through its social media platform, published and/or communicated the falsehoods to third parties – its users in Florida and worldwide.

61. Defendant TWITTER knew or should have known such false statements would likely result in material and substantial injury to Plaintiff and his business practices, as the statements call into question the security and proper operation of Plaintiff's business. Additionally, the above statements subject and have subjected Plaintiff to distrust, scorn, ridicule, hatred, and contempt. As such, the defamatory statements constitute defamation *per se*.

62. Defendant TWITTER's false statements impute to the Plaintiff conduct, characteristics, and/or conditions incompatible with the proper exercise of Plaintiff's lawful business, trade, and/or profession, and that Plaintiff has committed an infamous crime[3].

63. As a direct and proximate result of the defamatory statements made by Defendants, Plaintiff has suffered, and continues to suffer, substantial damages.

64. Defendant TWITTER intended to harm the Plaintiff with the false statements.

65. It is clear from the statements made by Defendant TWITTER and DORSEY, *supra*, that they had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage would result to Plaintiff and, despite such knowledge, have issued no retraction or rehabilitation of Plaintiff such as would repair that damage. Accordingly, and in conformity with Florida Statute §768.72, Plaintiff will seek leave of Court to seek an award of punitive damages against Defendant TWITTER. In the alternative, Plaintiff will seek leave of court to seek punitive damages under Florida Statute §768.72 because Defendant TWITTER's actions, as described above, were so reckless or wanting in care that they constituted a conscious disregard or indifference to the rights of Plaintiff.

## *Prayer for Relief*

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment against the Defendants as follows:

(a) Awarding Plaintiff all compensatory damages including consequential and incidental damages as a result of Defendants' wrongdoing in an amount to be determined at Trial; and Plaintiff reserves the right to seek leave of Court to seek punitive damages against Defendants in accordance with the facts and claims stated herein and established through discovery.

---

[3] See generally Florida Statutes Chapter 815 "Computer Related Crimes". Computer-related crimes carry felony charges in Florida.

(b) Awarding Plaintiff all attorneys' fees and costs associated with litigating this case.

(c) Requiring Defendant TWITTER, INC. to make a public retraction of all false statements and to issue a public apology to Plaintiff.

(d) Such further relief as this Court deems just and proper.

### D. DEMAND FOR A JURY TRIAL

Plaintiff prays for a Jury Trial on all issues so triable.

Respectfully submitted this 18th day of February, 2021,

Brian R. Della Rocca, Esquire
Compass Law Partners
51 Monroe Street, Suite 408
Rockville, Maryland 20850
Ph: (240) 454-1013
Fax: (301) 740-2297
bdellarocca@compass-law.com

*Motion to Appear Pro Hac Vice to be filed*

Wesley R. Harvin, II, Esquire
Fla Bar ID #52706
Harvin & Harvin LLP
900 E. Ocean Blvd. Suite 210B
Stuart, FL 34994
(772) 286-3630
wesharvin@gmail.com

*Attorneys for John Paul Mac Isaac*