## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No.: 21-cv-20684-UU

JOHN PAUL MAC ISAAC,

                Plaintiff,

     v.

TWITTER, INC., *et al.*,

                Defendants.

_____/

### RESPONSE TO ORDER TO SHOW CAUSE
### DATED FEBRUARY 22, 2021

     PLAINTIFF JOHN PAUL MAC ISAAC (hereinafter, "Plaintiff"), by and through undersigned counsel, hereby responds to the Order to Show Cause, dated February 22, 2021 as follows:

#### Initial Statement

     This case is before this Court in response to statements made by Defendant TWITTER ("TWITTER") itself – not one of its customers – on its social media platform and, therefore, falls outside of the protections afforded by the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230").

#### Applicable Definitions and Protections of Section 230

     Congress determined that it is important that Americans' use the internet as an educational and informational resource. *See* 47 U.S.C. § 230(a). Congress also determined that it is important to protect the providers of interactive computer services from liability for information published by information content providers.

     As such, Section 230(c) outlines the protection of "Good Samaritan" blocking and screening of offensive materials. Section 230(f) defines the terms "Interactive Computer Service" and "Information Content Provider".

#### Inapplicability of Section 230(c)(1)

     The Supreme Court recently discussed the scope of Section 230's immunities in Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC, 141 S. Ct. 13, 14-15 (2020), stating:

"In short, the statute suggests that if a company unknowingly leaves up illegal third-party content, it is protected from publisher liability by § 230(c)(1); and if it takes down certain third-party content *in good faith*, it is protected by § 230(c)(2)(A). This modest understanding is a far cry from what has prevailed in court. *Adopting the too-common practice of reading extra immunity into statutes where it does not belong, courts have relied on policy and purpose arguments to grant sweeping protection to Internet platforms*. [citations omitted]" *See* Id at 15 (*emphasis added*).

In the instant case, § 230(c)(1) is inapplicable because Plaintiff's claim relates directly to a statement published by TWITTER. *See generally* Barnes v. Yahoo!, Inc., 570 F.3d 1096 (9th Cir. 2009) (discussing §230(c)(1) and holding that what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another). Rather, the protection at issue is that found in § 230(c)(2)(A).

**Inapplicability of Section 230(c)(2)(A)**

In order to benefit from § 230(c)(2)(A), this Honorable Court must find that TWITTER meets all of the following: TWITTER meets the § 230(f)(2) definition of the provider of an Interactive Computer Service ("ICS"), and took actions in good faith, and did so to remove restrict access to material considered obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable.

*TWITTER is not an ICS for purposes of its Publications.*

TWITTER is not protected by 230(c)(2)(A) in the instant case, as TWITTER was not serving as the provider of an ICS for purposes of their own publications. As stated in FTC v. Accusearch, Inc., 570 F.3d 1187, 1197 (10th Cir. 2009),

"Thus, an interactive computer service that is also an 'information content provider' of certain content is not immune from liability arising from publication of that content. *See* Roommates.com, 521 F.3d at 1162; Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc., 206 F.3d 980, 985 n.4 (10th Cir. 2000).

[Section 230] defines the term *information content provider* as 'any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.' 47 U.S.C. § 230(f)(3). 'This is a broad definition, covering even those who are responsible for the development of content only 'in part.'' Universal Commc'n Sys., 478 F.3d at 419. Accordingly, there may be several information content providers with respect to a single item of information (each being 'responsible,' at least 'in part,' for its 'creation or development'). *See* 47 U.S.C. § 230(f)(3)." *See* id at 22, 23.

The Court in Fair Hous. Council v. Roommates.com, LLC, 521 F.3d 1157 (9th Cir. 2008) noted that "[a] website operator can be both a service provider and a content provider: If it

2

passively displays content that is created entirely by third parties, then it is only a service provider with respect to that content. But as to content that it creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider. Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content." *See* id at 1162.

In the instant case, Defendant TWITTER created and developed its Hacked Materials Policy, and the tweets that it voluntarily published defaming the Plaintiff came from TWITTER's own staff. Complaint ¶ 38 and Exhibit U. TWITTER cannot say that it was passively displaying another content provider's definition of "hacked materials." Accordingly, TWITTER cannot be considered an ICS for purposes of this portion of § 230(a)(2)(A) and cannot benefit from its protection.

**TWITTER did not act in Good Faith.**

In order to gain protection, TWITTER must also act in "good faith". As a matter of fact and of law, TWITTER cannot prove that it so acted. The facts pertinent to this point have been provided by no less an authority than Congress, in its interview of the Founder and CEO of TWITTER, Jack Dorsey. Mr. Dorsey admitted that the banning of the New York Post story (which is part of the defamatory action at issue) was a "mistake" and a "business decision." It was an "error" that was "corrected within 24 hours", and that "[w]e did not want Twitter to become a distribution point for hacked materials." Complaint ¶ 44 and Exhibit X. These statements expressly admit that TWITTER was trying to protect itself and its business model, and TWITTER made no effort to determine whether the materials were truly hacked.

As a matter of precedent, TWITTER is also unable to show good faith. Florida's Federal Courts have addressed a similar issue in the case of e-ventures Worldwide, LLC v. Google, Inc., No. 2:14-cv-646-FtM-PAM-CM, 2017 U.S. Dist. LEXIS 88650, at *10 (M.D. Fla. Feb. 8, 2017). In that case, Google removed from search results approximately 350 websites published by the Plaintiff. *See* id at 1. e-ventures claimed that Google's actions were a business decision meant to protect its "AdWords" revenues. *See* id at 2. In support of this theory, e-ventures showed that, almost immediately after receiving an anonymous e-mail showing how many customers e-ventures had, Google removed all of e-ventures' websites from Google's search engines. *See* id at 4.

The *e-ventures* court addressed the issue of § 230(c)(2) immunity as against a claim of violation under Florida Deceptive and Unfair Trade Practices Act, and said:

> "Subsection (c)(2) may provide that immunity, but that section only immunizes actions taken in good faith, and e-ventures has brought forward enough circumstantial evidence - including the fact that Google's decision to remove all of e ventures' websites was made the day Google received a list of e-ventures' customers from a "tipster" - to raise a genuine issue of fact as to Google's good faith. Google's Motion on this point is denied." *See* id at 10.

In the instant case the Plaintiff has not yet been permitted discovery but has pled and intends to show evidence that TWITTER acted in its own self-interest and in that of its business. Accordingly, as in *e-ventures*, Plaintiff respectfully argues that there is a genuine issue of fact as to whether TWITTER acted with good faith, and evidence will show that it did not.

### *Material was not Reasonably Objectionable.*

Finally, TWITTER cannot be afforded protection under § 230(c)(2)(A) because the material at issue was not "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." As noted in the case of <u>Song Fi Inc. v. Google, Inc., 108 F. Supp. 3d 876, 883 (N.D. Cal. 2015)</u>:

> "Section 230 is captioned "Protection for 'Good Samaritan' blocking and screening of offensive material," yet another indication that Congress was focused on potentially offensive materials, not simply any materials undesirable to a content provider or user. 47 U.S.C. Section 230(c) (emphasis added); *see* <u>Doe v. GTE Corp.</u>, 347 F.3d 655, 659-60 (7th Cir. 2003) (interpreting Section 230(c) in light of this caption); see also <u>Fair Housing Council</u>, 521 F.3d at 1163-64 (citing <u>Doe</u> and a subsequent Seventh Circuit decision discussing the caption with approval)."

TWITTER made no claim that the news story indicating Plaintiff was any of the above; rather, they cited their "Hacked Materials" policy. Mr. Dorsey admitted the ban was made to protect TWITTER and its business. As per *Song Fi Inc*, "undesirable" does not mean obscene. Accordingly, TWITTER cannot enjoy protection under § 230(c)(2)(A) because the material at issue was not intended to be covered by Congress in determining the scope of § 230 immunity.

### <u>Inapplicability of Section 230(c)(2)(B)</u>

Section 230(c)(2)(B) is inapplicable, as there is no issue presented regarding the technical means TWITTER presented to others to restrict access to information.

## Conclusion

TWITTER notified the world wrongly that the information provided in the NY Post story constituted hacked materials and therefore, that the Plaintiff, by virtue of being the provider of that information, is a hacker. TWITTER took its actions to a level that is not afforded the protections of Section 230 – TWITTER published its own statement as to its purported reason for restricting the dissemination of the NY Post's story. Complaint ¶ 38 and Exhibit U. By doing so, TWITTER developed its own content. That content is not protected by Section 230.

"Paring back the sweeping immunity courts have read into § 230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place." Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC, 141 S. Ct. 13, 18 (2020)

Respectfully submitted this 24ᵗʰ day of February, 2021,


Brian R. Della Rocca, Esquire
Compass Law Partners
51 Monroe Street, Suite 408
Rockville, Maryland 20850
Ph: (240) 454-1013
Fax: (301) 740-2297
bdellarocca@compass-law.com
*Motion to Appear Pro Hac Vice has been filed*

Wesley R. Harvin, II, Esquire
Fla Bar ID #52706
Harvin & Harvin LLP
900 E. Ocean Blvd. Suite 210B
Stuart, FL 34994
(772) 286-3630
wesharvin@gmail.com
*Attorneys for Plaintiff*