UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN PAUL MAC ISSAC, <br><br> Plaintiff, <br><br> v. <br><br> TWITTER, INC. *et al.*, <br><br> Defendants. | Case No. 1:21-cv-20684-BB |

**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

Defendants, Twitter, Inc. and Madbits, LLC (collectively, "Defendants"), by and through their undersigned counsel and pursuant to the Court's February 22, 2021 Order to Show Cause [D.E. 7] (the "Order"), hereby file this Response and state as follows:

Section 230 of the Communications Decency Act of 1996 ("CDA") precludes Plaintiff's claim. Plaintiff seeks to hold Twitter liable for restricting access to objectionable material on its platform—here, a Tweet from the *New York Post*—and explaining that editorial decision. This is precisely the core publisher function that Congress sought to protect through § 230's broad grant of immunity to services like Twitter.[1]

## ARGUMENT

Section 230(c) provides two applicable protections. Under § 230(c)(1), "[n]o provider or user of an interactive computer service ["ICS"] shall be treated as the publisher or speaker of any information provided by another information content provider." And under § 230(c)(2)(A):

> "No provider or user of an [ICS] shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable . . . ."

These protections "establish broad federal immunity" for covered entities, *Dowbenko v. Google Inc.*, 582 F. App'x 801, 804 (11th Cir. 2014), applying "in all cases *arising from* the publication

---

[1] In responding to the specific question set forth in the Court's Order, Twitter preserves and does not waive any procedural or substantive right to challenge the Complaint, including whether personal jurisdiction exists over Twitter and whether Plaintiff has failed to state a claim.

of user-generated content," *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (emphasis added).  Enforcing § 230(c) immunity at the threshold protects covered entities "not only from ultimate liability . . . , but also from having to fight costly and protracted legal battles." *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 139 (4th Cir. 2019) (citation omitted).  Section 230(c) requires a functional inquiry: "any activity that can be *boiled down* to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1167 (N.D. Cal. 2017) (emphasis added) (citation omitted).  And "close cases . . . must be resolved in favor of immunity . . . ." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008).

"Twitter—as a platform that transmits, receives, displays, organizes, and hosts content—is an [ICS]" entitled to § 230's protections.  *Mezey v. Twitter, Inc.*, 1:18-cv-21069-KMM, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018).  This is true not only when a plaintiff seeks to hold Twitter liable based on user-generated content, but also when Twitter blocks posts, locks profiles, and enforces its terms and conditions.  *See, e.g.*, *Murphy v. Twitter, Inc.*, 274 Cal. Rptr. 3d 360, 369–70, 374 (2021).  Such actions, as here, "aris[e] from the publication of user-generated content" and are therefore protected.  *MySpace*, 528 F.3d at 418.

Here, Plaintiff challenges Twitter's removal of certain user-generated content (the subject Tweet from the *New York Post*), and its explanation for that decision to aid its community's understanding of how Twitter enforces its content moderation policies.  Plaintiff argues that the act of explaining the decision converts Twitter from a publisher (immune under § 230) into an information content provider, citing *Roommates.com*, 521 F.3d at 1162.  Plf's Response at 2.[2]  *Roommates.com* illustrates how an ICS can become a content provider—e.g., if it goes so far as to edit a user's post to change its meaning, 521 F.3d at 1169, or creates substantial freestanding content divorced from users' content, *id.* at 1163 n.8.  No such circumstance is alleged here.

Twitter's actions here are protected under both § 230(c)(1) and § 230(c)(2)(A).  Its removal of the *New York Post*'s Tweet and accompanying explanation are protected actions to restrict objectionable material under § 230(c)(2)(A).  And § 230(c)(1) applies to Twitter's traditional functions as a publisher, exercised here, to monitor content and enforce its User Agreement.

---

[2] Pursuant to § 230(f)(3), information content providers "creat[e] or develop[]" content.

**I.     TWITTER IS PROTECTED FROM SUIT UNDER § 230(C)(2)(A)**

Plaintiff focuses most of his attention on § 230(c)(2)(A), which provides a safe harbor to an ICS that, in good faith, restricts or removes access to a post the ICS deems objectionable. Twitter's conduct falls squarely within the safe harbor, thus justifying dismissal of this case.

Section 230(c)(2)(A) confers immunity to "*any action* voluntarily taken in good faith to restrict access to or availability of material"—not merely the blocking of material, but also the ICS's actions stemming from that restriction. *Id.* (emphasis added). Thus, an ICS that "developed . . . the content at issue," "can take advantage of subsection (c)(2) if [it] act[ed] to restrict access to" objectionable content. *Barnes*, 570 F.3d at 1105. Courts have rejected Plaintiff's theory that an ICS is immune under § 230(c)(2)(A) if it posts a user's statement but not if the ICS drafted the statement. Plf's Response at 3. Section 230(c)(2) "contains no such limitation" that "the statements for which the provider claims immunity be someone else's statements." *PC Drivers Headquarters, LP v. Malwarebytes, Inc.*, 1:18-CV-234-RP, 2018 WL 2996897, at *3 (W.D. Tex. Apr. 23, 2018). Section 230(c)(2)(A) and its good faith standard would be an empty vessel if an ICS were protected in removing user content, but not for explaining why.

Nor has Plaintiff pleaded a cognizable absence of good faith by Twitter—e.g., that Twitter's editorial activities were pretext for a "wrongful motive," such as punishment of its competitors or rank bias toward certain users. *Levitt v. Yelp! Inc.*, Nos. C-10-1321 EMC, 2011 WL 5079526, at *7 (N.D. Cal. Oct. 26, 2011). Quite the opposite. The facts alleged in the Complaint demonstrate Twitter's good faith: it applied its User Agreement, found a violation, removed a post, and provided an explanation for that specific decision. *See* Compl. ¶¶ 37, 38. A publisher "appl[ying] its Guidelines to remove" an offending post is an act in good faith. *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 604 (S.D.N.Y. 2020).

Plaintiff's sole, and insufficient, basis for claiming a lack of good faith by Twitter involves an out-of-context quote from Twitter CEO Jack Dorsey's congressional testimony, claiming that Mr. Dorsey said that blocking the *New York Post* story "was a 'mistake' and a 'business decision.'" Plf's Response at 3. Mr. Dorsey actually testified that Twitter's policy—not the removal of the post at issue—was a "business decision," as "the market told us" that users "would not put up with . . . harassment." D.E. 1-25 (Compl. "Ex. X") at 16–17. Further, the "mistake" Mr. Dorsey was referring to was the policy not allowing "people to share" the post—not any labelling of the

Tweet.³  *Id.*  In any event, courts have made clear that removing user content based on either a mistake or a business decision does not show a lack of good faith.  *e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) ("[A] mistaken choice to block, if [otherwise] made in good faith, cannot be the basis for liability" under § 230(c)(2)(A).); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (conclusory allegations that provider blocking decisions "motivated by profit" fail to plead lack of good faith).

Finally, Twitter acted to remove "material that [it, as] the provider . . . consider[ed] to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or *otherwise objectionable* . . . ." § 230(c)(2)(A) (emphasis added).  The category of "objectionable" materials is not "limited to the . . . seven specific categories that precede it[;]" it is a "catchall . . . encapsulat[ing] forms of unwanted online content" generally.  *Enigma Software Grp. USA v. Malwarebytes, Inc.*, 946 F.3d 1040, 1050–52 (9th Cir. 2019) (interpreting *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876 (N.D. Cal. 2015), cited at Plf's Response at 4).  Plaintiff's assertion that "objectionable" materials must be "obscene" to qualify is thus wrong.  Plf's Response at 4.  Just as spam is "objectionable," *Shulman v. Facebook.com*, No. 17-764 (JMV) (LDW), 2018 WL 3344236, at *7 (D.N.J. July 9, 2018), so is private information obtained without authorization.

## II.    TWITTER IS PROTECTED FROM SUIT UNDER § 230(C)(1)

Plaintiff brushes past § 230(c)(1), relying on a purported "Supreme Court recent[] discussion [of] the scope of Section's 230's immunities," to underscore the "[i]napplicability of Section 230(c)(1)."  Plf's Response at 1–2 (quoting *Malwarebytes, Inc. v. Enigma Software Grp USA, LLC*, 141 S. Ct. 13, 14–15 (2020)).  But the Supreme Court engaged in no such discussion; Plaintiff's quote comes from the Statement of Justice Thomas, alone, "respecting the denial of certiorari."  *Malwarebytes*, 141 S. Ct. at 13, 15.

Taking the law *as it stands*, § 230(c)(1) additionally and independently immunizes Twitter, for enforcing standards on its platform.  Section 230(c)(1) of the CDA "bars a plaintiff's claims when (1) defendant is [an ICS]; (2) the relevant content contains information provided by another information content provider; and (3) the complaint seeks to hold defendant liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content."  *Mezey*, 2018 WL 5306769, at *1.  Twitter is an ICS, and the content

---

³ Indeed, Twitter changed this policy in October 2020, before Mr. Dorsey's testimony.  *See* https://twitter.com/vijaya/status/1316923549236551680.

at issue—the blocking of the *New York Post*'s Tweet—"contains information provided by another information provider." And Plaintiff fundamentally seeks to hold Twitter liable for traditional editorial functions as a publisher. "Courts have broadly interpreted what it means to be acting as a publisher under the CDA." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954 (N.D. Cal. 2020). "[E]stablishing and enforcing" standards of decency and "retracting" offending content is "the very essence of publishing." *Bennett v. Google, LLC*, 882 F.3d 1163, 1167–68 (D.C. Cir. 2018) (citation omitted). And a publisher may take active editorial steps within the bounds of § 230(c)(1): it may create an aggregated rating system, *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016), perform automated editorial acts on content, *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016), or create a map for users based on business locations, *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1271 (D.C. Cir. 2019). Twitter likewise took active steps to enforce its standards and remove content, accompanied by an explanation that the content did not meet the publisher's standards. This is core editorial action immunized under § 230(c)(1).

## CONCLUSION

WHEREFORE, Defendants Twitter, Inc. and Madbits, LLC, respectfully respond to the Court's Order to Show Cause by stating that § 230(c) protects Twitter's activity, thereby justifying dismissal.

Dated: March 4, 2021

By: /s/ *Kathleen R. Hartnett*
Kathleen R. Hartnett
California Bar No.: 314267
Email: khartnett@cooley.com
*Admitted Pro Hac Vice*
Kyle C. Wong
California Bar No.: 224021
Email: kwong@cooley.com
*Admitted Pro Hac Vice*
**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

-and-

Alexander J. Kasner
California Bar No.: 310637
Email: akasner@cooley.com
*Admitted Pro Hac Vice*
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 843 7400

-and-

By: /s/ *Jennifer Olmedo-Rodriguez*
Jennifer Olmedo-Rodriguez
Florida Bar No. 605158
Email: jennifer.olmedo-rodriguez@bipc.com
A. Sheila Oretsky
Florida Bar No. 31365
Email: sheila.oretsky@bipc.com
**BUCHANAN INGERSOLL & ROONEY PC**
2 South Biscayne Blvd, Suite 1500
Miami, FL 33131-1822
Telephone: 305 347 5900
Facsimile: 305 347 4089

Attorneys for Defendants

## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

Pursuant to the Court's February 23, 2021, Order Setting Initial Planning and Scheduling Conference [D.E. 10], undersigned counsel for Defendants certifies that this Response complies with the type-volume limitation of 6,000 words. This Response contains 1,881 words. Moreover, this Response is no more than five (5) pages as set forth in the Court's Order to Show Cause [D.E. 7].

By: */s/ Jennifer Olmedo-Rodriguez*
BUCHANAN INGERSOLL & ROONEY PC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 4, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

By: */s/ Jennifer Olmedo-Rodriguez*
BUCHANAN INGERSOLL & ROONEY PC

4834-1689-3407, v. 1