UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOHN PAUL MAC ISAAC,<br><br>        Plaintiff,<br><br>v.<br><br>TWITTER, INC. *et al.*,<br><br>        Defendants. | Case No. 1:21-cv-20684-BB |

**NOTICE OF FILING SUPPLEMENTAL AUTHORITY**

PLEASE TAKE NOTICE that Defendants, Twitter, Inc. and Madbits, LLC (collectively, "Defendants"), by and through undersigned counsel, hereby give notice[1] of filing the attached supplemental authority in support of their Response to Order to Show Cause [D.E. 27]:

1.    *Domen v. Vimeo, Inc.*, Docket No. 20-616, 2021 U.S. App. LEXIS 7101 (2d Cir. Mar. 11, 2021).

Dated: March 18, 2021

By: /s/ *Kathleen R. Hartnett*
Kathleen R. Hartnett
California Bar No.: 314267
Email: khartnett@cooley.com
Admitted Pro Hac Vice
Kyle C. Wong
California Bar No.: 224021
Email: kwong@cooley.com
Admitted Pro Hac Vice
**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

-and-

---

[1] By filing this Notice, Defendants do not consent to this Court's personal jurisdiction or waive any rights to assert such a defense or any other defenses under Fed. R. Civ. P. 12(b), all of which are expressly reserved.

        Alexander J. Kasner
        California Bar No.: 310637
        Email: akasner@cooley.com
        Admitted Pro Hac Vice
        **COOLEY LLP**
        3175 Hanover Street
        Palo Alto, CA 94304
        Telephone: +1 650 843 5000
        Facsimile: +1 650 843 7400

        -and-

        By: /s/ *Jennifer Olmedo-Rodriguez*
        Jennifer Olmedo-Rodriguez
        Florida Bar No. 605158
        Email: jennifer.olmedo-rodriguez@bipc.com
        A. Sheila Oretsky
        Florida Bar No. 31365
        Email: sheila.oretsky@bipc.com
        **BUCHANAN INGERSOLL & ROONEY PC**
        2 South Biscayne Blvd, Suite 1500
        Miami, FL  33131-1822
        Telephone: 305 347 5900
        Facsimile: 305 347 4089
        ***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 18, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

        By:  /s/ *Jennifer Olmedo-Rodriguez*
              BUCHANAN INGERSOLL & ROONEY PC

 Neutral
As of: March 18, 2021 2:06 PM Z

# *Domen v. Vimeo, Inc.*

United States Court of Appeals for the Second Circuit

December 10, 2020, Argued; March 11, 2021, Decided

Docket No. 20-616

**Reporter**
2021 U.S. App. LEXIS 7101 *; __ F.3d __; 2021 WL 922749

JAMES DOMEN, AN INDIVIDUAL, CHURCH UNITED, A CALIFORNIA NOT-FOR-PROFIT CORPORATION, Plaintiffs-Appellants, v. VIMEO, INC., A DELAWARE FOR-PROFIT CORPORATION, Defendant-Appellee.[1]

**Prior History:** Appeal from the judgment of the United States District Court for the Southern District of New York. (Stewart D. Aaron, M.J.) dismissing plaintiffs' claims alleging discrimination based on sexual orientation and religion under federal and state law. James Domen and Church United allege that Vimeo, Inc., discriminated against them by deleting Church United's account from its online video hosting platform. We agree with the district court that *Section 230(c)(2)* **[\*1]** of the Communications Decency Act provides Vimeo, Inc., with immunity from suit and requires dismissal of Appellants' claims. Therefore, we AFFIRM the judgment of the district court.

*Domen v. Vimeo, Inc., 433 F. Supp. 3d 592, 2020 U.S. Dist. LEXIS 7935, 2020 WL 217048 (S.D.N.Y., Jan. 14, 2020)*

## Core Terms

videos, immunity, district court, provider, interactive, deleted, computer service, homosexual, platforms, user, sexual orientation, bad faith, marks, restrict access, good faith, objectionable, allegations, quotation, religion, policies, promoted, motion to dismiss, website

---

[1] The Clerk of Court is directed to change the caption to the above.

## Case Summary

### Overview

HOLDINGS: [1]-*47 U.S.C.S. § 230(c)(2)* of the Communications Decency Act immunized a provider of an online video hosting platform from claims arising from the provider's deletion of a church's account for violation of the provider's policy barring the promotion of sexual orientation change efforts. Allegations that the provider acted in bad faith were conclusory, and the fact that other videos discussing sexual orientation remained available did not mean that the provider's actions were not taken in good faith.

### Outcome
Judgment affirmed.

## LexisNexis® Headnotes

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Internet Business > Internet & Online Services > Service Providers

Business & Corporate Compliance > ... > Computer & Internet Law > Civil Actions > Service Provider Liability

Business & Corporate Compliance > ... > Overview & Legal Concepts > Related Legal Issues > Indecency & Obscenity

*HN1*[ ] **Content Regulation, Communications Decency Act**

Pursuant to *47 U.S.C.S. § 230(c)(2)* of the Communications Decency Act, an interactive service provider is free to restrict access to material that, in good faith, it finds objectionable.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Internet Business > Internet & Online Services > Service Providers

Business & Corporate Compliance > ... > Computer & Internet Law > Civil Actions > Service Provider Liability

Business & Corporate Compliance > ... > Overview & Legal Concepts > Related Legal Issues > Indecency & Obscenity

*HN2*[ ] **Content Regulation, Communications Decency Act**

*47 U.S.C.S. § 230(c)(2)* of the Communications Decency Act does not require interactive service providers to use a particular method of content restriction, nor does it mandate perfect enforcement of a platform's content policies. Indeed, the fundamental purpose of *§ 230(c)(2)* is to provide platforms with the discretion to identify and remove what they consider objectionable content from their platforms without incurring liability for each decision.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Civil Actions > Defamation

Constitutional Law > Supremacy Clause > Federal Preemption

Business & Corporate Compliance > ... > Computer & Internet Law > Civil Actions > Service Provider Liability

*HN3*[ ] **Content Regulation, Communications Decency Act**

Although the word "immunity" is not found in the statute, many courts refer to *47 U.S.C.S. § 230* of the Communications Decency Act as providing immunity from any suit in which the plaintiff seeks to treat an interactive computer service as the publisher or speaker of information provided by another information content provider. *Section 230(e)(3)* also expressly preempts state-law causes of action in the event of an inconsistency between such actions and *§ 230*. *47 U.S.C.S. § 230(e)(3)*. Since *§ 230* establishes that no cause of action that is inconsistent with the section's provisions may be brought, *47 U.S.C.S. § 230(e)(3)*, *§ 230*'s protections are referred to as both effecting immunity from suit and preemption of certain state law actions.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > Appeals > Standards of Review > De Novo Review

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

*HN4*[ ] **Standards of Review, Abuse of Discretion**

A court of appeals reviews a district court's grant of a motion to dismiss de novo, and denials of leave to amend for abuse of discretion, To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Civil Actions > Defamation

Business & Corporate Compliance > ... > Computer & Internet Law > Civil Actions > Service Provider Liability

Computer & Internet Law > Criminal Offenses > Sex Crimes

*HN5*[ ] **Content Regulation, Communications Decency Act**

T]he primary purpose of the Communications Decency Act was to protect children from sexually explicit internet content. *47 U.S.C.S. § 230* is an amendment to the original law, enacted to provide immunity for interactive computer services that make good faith efforts to block and screen offensive content. Although the U.S. Court of Appeals for the Second Circuit has had limited opportunity to interpret *§ 230*, the Second Circuit and others note that *§ 230* immunity is broad.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Civil Actions > Defamation

Business & Corporate Compliance > ... > Overview & Legal Concepts > Related Legal Issues > Indecency & Obscenity

Computer & Internet Law > Criminal Offenses > Sex Crimes

*HN6*[ ] **Content Regulation, Communications Decency Act**

*47 U.S.C.S. § 230* has two relevant subsections. The first provides that no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider. *47 U.S.C.S. § 230(c)(1)*. The second governs civil liability and states that no provider or user of an interactive computer service shall be held liable for: (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to the material described. *§ 230(c)(2)*.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Civil Actions > Defamation

Business & Corporate Compliance > ... > Computer & Internet Law > Civil Actions > Service Provider Liability

Business & Corporate Compliance > ... > Overview & Legal Concepts > Related Legal Issues > Indecency & Obscenity

*HN7*[ ] **Content Regulation, Communications Decency Act**

In applying *47 U.S.C.S. § 230(c)*, courts have broken it down into three component parts. The statute shields conduct if the defendant (1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat the defendant as the publisher or speaker of that information. A publisher's traditional editorial functions include deciding whether to publish, withdraw, postpone or alter content.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Obscenity

Computer & Internet Law > ... > Copyright Protection > Digital Millennium Copyright Act > Safe Harbor Provisions

Business & Corporate Compliance > ... > Overview & Legal Concepts > Related Legal Issues > Indecency & Obscenity

*HN8*[ ] **Content Regulation, Communications Decency Act**

A broad provision, *47 U.S.C.S. § 230(c)(2)* immunizes interactive computer service providers from liability for any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected. *47 U.S.C.S. § 230(c)(2)*. Notably, the provision explicitly provides protection for restricting access to content that providers consider objectionable, even if the material would otherwise be constitutionally protected, granting significant subjective discretion.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Business & Corporate Compliance > ... > Computer & Internet Law > Civil Actions > Service Provider Liability

Business & Corporate Compliance > ... > Overview & Legal Concepts > Related Legal Issues > Indecency & Obscenity

*HN9*[ ] **Content Regulation, Communications Decency Act**

*47 U.S.C.S. § 230* of the Communications Decency Act does not require providers to use any particular form of restriction.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Civil Actions > Defamation

*HN10*[ ] **Content Regulation, Communications Decency Act**

One purpose of *47 U.S.C.S. § 230* is to provide interactive computer services with immunity for removing some—but not all—offensive material from their websites. Given the massive amount of user-generated content available on interactive platforms, imperfect exercise of content-policing discretion does not, without more, suggest that enforcement of content policies was not done in good faith. The amount of information communicated via interactive computer services is staggering, and Congress passed *§ 230* expressly to remove disincentives for the development and utilization of blocking and filtering technologies.

Business & Corporate Compliance > ... > Computer & Internet Law > Content Regulation > Communications Decency Act

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Civil Actions > Defamation

Business & Corporate Compliance > ... > Computer & Internet Law > Civil Actions > Service Provider Liability

Computer & Internet Law > ... > Copyright Protection > Digital Millennium Copyright Act > Safe Harbor Provisions

[HN11](#)[⬇] **Content Regulation, Communications Decency Act**

Ultimately, [47 U.S.C.S. § 230(c)(2)](#) immunizes from liability providers and users of interactive computer service who voluntarily make good faith efforts to restrict access to material they consider to be objectionable.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Immunity

Communications Law > Federal Acts > Telecommunications Act > Communications Decency Act

Computer & Internet Law > Internet Business > Internet & Online Services > Service Providers

[HN12](#)[⬇] **Affirmative Defenses, Immunity**

The Communications Decency Act's immunity provision allows computer service providers to establish standards of decency without risking liability for doing so.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Immunity

[HN13](#)[⬇] **Affirmative Defenses, Immunity**

[47 U.S.C.S. § 230](#) immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process, and immunity is an immunity from suit rather than a mere defense to liability; it is effectively lost if a case is erroneously permitted to go to trial.

**Counsel:** NADA N. HIGUERA, Tyler & Bursch, LLP (Robert H. Tyler, on the brief), Murrieta, CA, for Plaintiffs-Appellants.

MICHAEL A. CHEAH, General Counsel, Vimeo, Inc., New York, NY, for Defendant-Appellee.

Jean-Paul Jassy, Kevin L. Vick, Elizabeth H. Baldridge, Jassy Vick Carolan LLP, Los Angeles, CA (on the brief), for Defendant-Appellee.

Samuel C. Leifer, Patrick J. Carome, Ari Holtzblatt, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA and Washington, DC, for The Internet Association, amicus curiae in support of Defendant-Appellee.

**Judges:** Before: POOLER, WESLEY, and CARNEY, Circuit **[*2]** Judges.

**Opinion by:** POOLER

## Opinion

POOLER, *Circuit Judge*:

Plaintiffs-Appellants James Domen and Church United allege that Vimeo, Inc., discriminated against them on the basis of their religion and sexual orientation by deleting Church United's account from Vimeo's online video hosting platform. The district court granted Vimeo's motion to dismiss on the ground that [Section 230 of the Communications Decency Act](#) ("CDA") immunizes Vimeo from this suit. The district court concluded that Vimeo deleted Church United's account because of Church United's violation of one of Vimeo's content policies barring the promotion of sexual orientation change efforts ("SOCE") on its platform. This

policy, in turn, fell within the confines of the good-faith content policing immunity that the CDA provides to interactive computer services.

Section 230 figures prominently in the current discourse regarding the intersection of law and social media.[2] While lively debate on whether and how best to regulate interactive computer service platforms is ongoing, and experts, consumers, and businesses continue to propose a variety of solutions, Section 230 remains the governing statute. Moreover, its impact on this case is clear. HN1[↑] Pursuant to Section 230(c)(2), Vimeo is free to restrict access **[*3]** to material that, in good faith, it finds objectionable. Appellants argue that Vimeo demonstrated bad faith by discriminating against them on the basis of their religion and sexual orientation, which they term "former" homosexuality; deleting Church United's entire account, as opposed to only the videos at issue; and permitting other videos with titles referring to homosexuality to remain on the website. However, Appellants' conclusory allegations of bad faith do not survive the pleadings stage, especially when examined in the context of Section 230(c)(2). HN2[↑] Section 230(c)(2) does not require interactive service providers to use a particular method of content restriction, nor does it mandate perfect enforcement of a platform's content policies. Indeed, the fundamental purpose of Section 230(c)(2) is to provide platforms like Vimeo with the discretion to identify and remove what they consider objectionable content from their platforms without incurring liability for each decision. Therefore, we AFFIRM the judgment of the district court.

**BACKGROUND**

These facts are taken from plaintiffs' amended complaint and are assumed true for this appeal.

James Domen is the president and founder of the non-profit organization Church United.[3] Domen alleges that he "was a homosexual" for three years but then, "because of his desire to pursue his faith in Christianity, he began to identify as a former homosexual." App'x at 47. Domen shares his story through Church United to connect with others in California who have had similar experiences. Church United was founded in 1994 and is a California non-profit religious corporation. It seeks to "equip pastors to positively impact the political and moral culture in their communities," and it has over 750 affiliated pastors. App'x at 47. The organization claims to "focus on the spiritual heritage of the United States" by attempting to connect with "nationally-known speakers, including elected officials . . . who vote to support a biblical worldview." App'x at 47.

Vimeo is a Delaware for-profit corporation headquartered in New York. Founded in 2004, it provides an online forum that allows users to upload, view, and comment on videos. Videos hosted on Vimeo include music videos, documentaries, **[*5]** live streams, and others.

In October 2016, Church United created a Vimeo account to upload a variety of videos promoting the organization, including "videos addressing sexual orientation as it relates to religion." App'x at 49. They allegedly uploaded 89 videos over the following two years. At some point, Church United upgraded to a professional account, which requires a monthly fee in exchange for access to more features and bandwidth. On November 23, 2018, Vimeo e-mailed Domen, informing him that a moderator had marked the Church United account for review. The e-mail explained, "Vimeo does not allow videos that promote [SOCE]." App'x at 58. Vimeo instructed Church United to remove the videos and warned that if Church United did not do so within 24 hours, Vimeo might remove the videos or the entire account. It also instructed Church United to download the videos as soon as possible to ensure that the organization could keep them in the event Vimeo deleted the account. Church United claims that five of its videos were flagged as violating Vimeo's policies:

• Video One: a two-minute video where Domen explained "his life story, preferred sexual orientation, the discrimination he faced, and his religion." App'x at 49.

**[*6]** • Video Two: a promotion video for "Freedom March Los Angeles," allegedly an event where "former homosexuals" gather. App'x at 50.

---

[2] See generally, e.g., Danielle Keats Citron & Benjamin Wittes, The Internet Will Not Break: Denying Bad Samaritans § 230 Immunity, 86 FORDHAM L. REV. 401 (2017); Benjamin Edelman & Abbey Stemler, From the Digital to the Physical: Federal Limitations on Regulating Online Marketplaces, 56 HARV. J. ON LEGIS. 141 (2019); Kate Klonic, The New Governors: The People, Rules, **[*4]** and Processes Governing Online Speech, 131 HARV. L. REV. 1598 (2018).

[3] Because Domen is the president and founder of Church United and his claims are co-extensive with those of Church United, we refer to Domen and Church United together as "Church United" or "Appellants."

- Video Three: an NBC-produced documentary segment about SOCE.
- Video Four: a press conference with "the founder of Desert Stream" relating to his religion and sexuality. App'x at 50.
- Video Five: an interview with a survivor of the attack on Pulse Nightclub in Florida in March 2018 and his background as a "former homosexual." App'x at 50.

Appellants allege that the videos were part of an effort by Church United to challenge a California Assembly bill proposing to expand the state's ban on SOCE to talk therapy and pastoral counseling.

On December 6, 2018, Vimeo deleted Church United's account, explaining: "Vimeo does not allow videos that harass, incite hatred, or include discriminatory or defamatory speech." App'x at 60. Appellants allege that this is "censorship," App'x at 52, insofar as it barred Domen from speaking about his preferred sexual orientation and religious beliefs. They also allege that Vimeo allows similar videos to remain on its website with titles such as "Gay to Straight," "Homosexuality is NOT ALLOWED in the QURAN," "The Gay Dad," and "Happy Pride! LGBTQ Pride Month 2016." App'x at 51. Based on these allegations, **[*7]** Appellants claim that Vimeo violated the *Unruh Act*, a California law aimed at barring business establishments from intentionally discriminating on the basis of, inter alia, sexual orientation and religion; New York's Sexual Orientation Non-Discrimination Act; and *Article 1, Section 2 of the California Constitution*, which "mandates viewpoint neutral regulation of speech in public and quasi-public fora." App'x at 54.

The district court granted Vimeo's motion to dismiss pursuant to Federal *Rule 12(b)(6)*. *See Domen v. Vimeo, Inc., 433 F. Supp. 3d 592, 607-08 (S.D.N.Y. 2020)*. In doing so, the court concluded that all of Appellants' claims were preempted under both *subsections (c)(1)* and *(c)(2)* of *Section 230* of the CDA.[4] The district court first concluded that Vimeo was acting as a "publisher" rather than a speaker, triggering immunity under *subsection (c)(1)*. *Id. at 601-03*. The district court acknowledged that the Second Circuit had not ruled on precisely this situation—where the plaintiffs sought to hold the defendant liable for removing content as opposed to permitting content to exist on its platform—but used the reasoning of other courts to conclude that this did not change the outcome. *Id. at 602*. The district court also concluded *subsection (c)(2)* required dismissal. *Id. at 604*. It reasoned that the videos promoted SOCE, violating Vimeo's legitimate content policy against SOCE, and Appellants' allegations suggesting Vimeo **[*8]** acted in bad faith were too conclusory to "nudge their claims across the line from conceivable to plausible." *Id. at 604* (alteration omitted). The district court further decided that because *Section 230* preempts state statutory claims and the California state constitutional claim, the entire case was statutorily barred. *Id. at 604-06*.

Next, the district court concluded that, even if the CDA did not bar all of Appellants' claims, Appellants failed to state any plausible legal claim. *Id. at 606-07*. As for the discrimination claims, there were no plausible allegations supporting the claim that Vimeo intentionally discriminated against Appellants on the basis of their sexuality or religion. *Id. at 606*. The district court also concluded that Vimeo was not a state actor, so its actions did not implicate Appellants' free speech rights, requiring dismissal of the California constitutional claim. *Id. at 606-07*. Lastly, the district court denied leave to amend as futile. *Id. at 607*.

On appeal, Appellants argue that *Section 230* of the CDA does not protect Vimeo's actions and that they stated a claim under state statutory discrimination law. They do not make any arguments regarding their state constitutional free speech claim in their opening brief and have therefore **[*9]** waived the ability to challenge it in this appeal. *See Gross v. Rell, 585 F.3d 72, 95 (2d Cir. 2009)*.

## DISCUSSION

---

[4] *HN3*[↑] Although the word "immunity" is not found in the statute, many courts refer to *Section 230* as providing immunity from any suit in which the plaintiff seeks to treat an interactive computer service as the publisher or speaker of information provided by another information content provider. *See **Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100-01 (9th Cir. 2009)***. *Section 230(e)(3)* also expressly preempts state-law causes of action in the event of an "inconsisten[cy]" between such actions and *Section 230*. *47 U.S.C. § 230(e)(3)*;

see also *Zeran v. Am. Online, Inc., 958 F. Supp. 1124, 1131 (E.D. Va. 1997)*, aff'd, *129 F.3d 327 (4th Cir. 1997)*. Since *Section 230* establishes that "[n]o cause of action" that is "inconsistent" with the section's provisions may be brought, *47 U.S.C. § 230(e)(3)*, we refer to *Section 230*'s protections as both effecting immunity from suit and preemption of certain state law actions.

**HN4**[⬆] We review a district court's grant of a motion to dismiss de novo, *Hernandez v. United States, 939 F.3d 191, 198 (2d Cir. 2019)*, and denials of leave to amend for abuse of discretion, *Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hernandez, 939 F.3d at 198* (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))*.

Congress enacted the CDA in the face of growing and widespread use of the internet. **HN5**[⬆] "[T]he primary purpose of the CDA was to protect children from sexually explicit internet content." *FTC v. LeadClick Media, LLC, 838 F.3d 158, 173 (2d Cir. 2016)* (footnote omitted). *Section 230* is an amendment to the original law, enacted to "provide immunity for interactive computer services that make 'good faith' efforts to block and screen offensive content." *Id.* (citation, alteration, and some internal quotation marks omitted). Although "[w]e have had limited opportunity to interpret *Section 230*," our Circuit and others note "that *Section 230* immunity is broad." *Id.*

**HN6**[⬆] *Section 230* has two relevant subsections. The first provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *47 U.S.C § 230(c)(1)*. The second governs "[c]ivil liability" **[*10]** and states that no provider or user of an interactive computer service shall be held liable for:

> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to [the] material described . . . .

*Id.* § (c)(2). **HN7**[⬆] "In applying the statute, courts have broken it down into three component parts[.]" *LeadClick, 838 F.3d at 173* (brackets and internal quotation marks omitted). The statute shields conduct if the defendant "(1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat the defendant as the publisher or speaker of that information." *Id.* (alterations and internal quotation marks omitted). A "publisher's traditional editorial functions" include "deciding whether to publish, withdraw, postpone or alter content." *Id. at 174* (internal quotation marks **[*11]** omitted).

Appellants argue neither subsection of *Section 230(c)* applies. They contend that *subsection (c)(1)* is inapplicable because this lawsuit seeks to hold Vimeo liable for the enforcement of its own content policies, not for hosting user-generated content. They also argue that *subsection (c)(2)* is inapplicable because, in their view, Vimeo did not act in good faith. Vimeo argues that *subsection (c)(1)* immunity applies because the action involves content that it did not create, i.e., Appellants' videos regarding SOCE, and that, in any event, its enforcement of its policy regarding SOCE qualifies for good faith protection under *subsection (c)(2)*. It further argues that any allegations of bad faith are too conclusory to support rejection of its defense under *subsection (c)(2)*. Regardless of whether a separate analysis might lead to the conclusion that *subsection (c)(1)* covers Vimeo in the circumstances alleged, we affirm the district court's dismissal on the ground that *subsection (c)(2)* immunizes Vimeo from suit.

**HN8**[⬆] A broad provision, *subsection (c)(2)* immunizes interactive computer service providers from liability for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise **[*12]** objectionable, whether or not such material is constitutionally protected." *47 U.S.C § 230(c)(2)*. Notably, the provision explicitly provides protection for restricting access to content that providers "*consider*[] . . . objectionable," even if the material would otherwise be constitutionally protected, granting significant subjective discretion. *Id.* (emphasis added). Therefore, Vimeo is statutorily entitled to consider SOCE content objectionable and may restrict access to that content as it sees fit.

**HN9**[⬆] Moreover, the statute does not require providers to use any particular form of restriction. Although Appellants take issue with Vimeo's deletion of Church United's entire account as opposed to deleting only those videos promoting SOCE, nothing within the statute or related case law suggests that this took Vimeo's actions outside of the scope of *subsection (c)(2)* immunity. Indeed, Vimeo warned Church United that removal of the entire account was exactly what might happen if they ignored the warning. Church United received the warning and did not take the videos

down or otherwise allay Vimeo's concerns. Vimeo was entitled to enforce its internal content policy regarding SOCE and delete Church United's account without incurring [*13] liability.

We also agree with the district court that Appellants' allegations that Vimeo acted in bad faith are too conclusory to survive a motion to dismiss under Rule 12(b)(6). Appellants' bases for arguing that Vimeo acted in bad faith are not commensurate with how courts interpret bad faith in this context. Appellants' cited cases do not satisfy their position. In Zango, Inc. v. Kaspersky Lab, Inc., the Ninth Circuit considered whether the defendant's software—a filter blocking potentially malicious software from users' computers—qualified for Section 230 immunity in the same manner as platforms like YouTube or Facebook. 568 F.3d 1169, 1173-78 (9th Cir. 2009). The Ninth Circuit held that it did. Id at 1178. In Enigma Software Group USA, LLC v. Malwarebytes, Inc., the Ninth Circuit limited the scope of Zango, clarifying that Section 230 "immunity . . . does not extend to anticompetitive conduct." 946 F.3d 1040, 1054 (9th Cir. 2019). There, the court reinstated the plaintiff's Lanham Act claim, which alleged that the defendant's firewall program improperly filtered out the plaintiff's rival firewall program, even though the plaintiff's program posed no actual security threat to users' computers. Id. at 1047-48. The plaintiff alleged that the defendant made "false and misleading statements to deceive consumers into choosing [the defendant's] [*14] security software over [the plaintiff's]." Id. at 1048. Vimeo's deletion of Appellants' account was not anti-competitive conduct or self-serving behavior in the name of content regulation. Instead, it was a straightforward consequence of Vimeo's content policies, which Vimeo communicated to Church United prior to deleting its account.

Appellants argue that bad faith is apparent from the fact that other videos relating to homosexuality exist on Vimeo's website. In support of this, Appellants point to titles of videos that allegedly remain on Vimeo's website: "Gay to Straight," "Homosexuality is NOT ALLOWED in the QURAN," "The Gay Dad," and "Happy Pride! LGBTQ Pride Month 2016." App'x at 51. However, the mere fact that Appellants' account was deleted while other videos and accounts discussing sexual orientation remain available does not mean that Vimeo's actions were not taken in good faith. It is unclear from only the titles that these videos or their creators promoted SOCE. HN10[↑] Moreover, one purpose of Section 230 is to provide interactive computer services with immunity for removing "some—but not all—offensive material from their websites." Bennett v. Google, LLC, 882 F.3d 1163, 1166, 434 U.S. App. D.C. 311 (D.C. Cir. 2018). Given the massive amount of user-generated content available on interactive [*15] platforms, imperfect exercise of content-policing discretion does not, without more, suggest that enforcement of content policies was not done in good faith. See Zeran v. Am. Online, Inc., 129 F.3d 327, 331 (4th Cir. 2017) (explaining that "[t]he amount of information communicated via interactive computer services is . . . staggering" and that Congress passed Section 230 expressly to "remove disincentives for the development and utilization of blocking and filtering technologies" (internal quotation marks omitted)).

HN11[↑] Ultimately, "Section 230(c)(2) immunizes from liability providers and users of interactive computer service who voluntarily make good faith efforts to restrict access to material they consider to be objectionable . . . ." Green v. Am. Online (AOL), 318 F.3d 465, 472 (3d Cir. 2003). Here, Vimeo has done just that. Appellants chose to ignore Vimeo's notice of their violation of Vimeo's content policy, and, as a result, Vimeo deleted their account. HN12[↑] By suing Vimeo for this, Appellants run headfirst into the CDA's immunity provision, which "allows computer service providers to establish standards of decency without risking liability for doing so." Bennett, 882 F.3d at 1168 (brackets and internal quotation marks omitted).

HN13[↑] Moreover, the district court properly dismissed Appellants' claims at the pleadings stage. "Section 230 immunity, like other forms of immunity, [*16] is generally accorded effect at the first logical point in the litigation process[,] . . . [and] immunity is an immunity from suit rather than a mere defense to liability[;] it is effectively lost if a case is erroneously permitted to go to trial." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 254 (4th Cir. 2009) (italics and internal quotation marks omitted). Although the parties raised additional arguments, there is no need to reach them.

## CONCLUSION

We conclude that CDA Section 230(c)(2) immunizes Vimeo from this lawsuit, and the district court properly dismissed Appellants' claims.

Accordingly, the judgment of the district court is **AFFIRMED**.

**End of Document**