UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-CV-20684-BLOOM/Otazo-Reyes

JOHN PAUL MAC ISSAC,

               Plaintiff,

    v.

TWITTER, INC. *et al.*,

               Defendants.

**DEFENDANTS' MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 1

    A.   The Parties ................................................................................................................ 1

    B.   The NY Post's Article Does Not Identify Plaintiff or His Business..................... 2

    C.   Twitter Applies Its Content Moderation Policies to the Article .......................... 3

    D.   Plaintiff Sues Twitter for Its Content Moderation ................................................ 4

LEGAL STANDARDS ............................................................................................................ 5

ARGUMENT ........................................................................................................................... 6

I.     PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION AGAINST
      ANY DEFENDANT ....................................................................................................... 6

    A.   Twitter's Explanations, Not Plaintiff's Characterizations, Are the Proper
        Subject of Analysis ................................................................................................ 6

    B.   Twitter's Explanations Are Not "Of and Concerning" Plaintiff........................... 7

    C.   Twitter's Explanations Are Not Defamatory Per Se............................................. 9

        1.   The Explanations do not state that Plaintiff is a hacker or criminal .......... 9

        2.   The Explanations do not state that Plaintiff may have put people in
            harm, in danger, and violated trade secret laws ...................................... 11

    D.   Plaintiff Fails to Plead Special Damages from the Alleged Defamation............. 12

    E.   Plaintiff Fails to Plead Falsity of the Explanations............................................. 13

    F.   Plaintiff Fails to Plead Publication by Twitter.................................................... 14

    G.   Twitter's Explanations Were Not Made with Actual Malice or Through
        Negligence ............................................................................................................ 15

        1.   Plaintiff Is a Limited Public Figure ......................................................... 15

        2.   Plaintiff Does Not Plead Actual Malice.................................................... 16

        3.   Plaintiff Fails to Allege that Defendants Acted Negligently ................... 18

II.    PLAINTIFF MAKES NO SUBSTANTIVE ALLEGATIONS AGAINST
      MADBITS.................................................................................................................... 18

III.   TWITTER IS ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER
      FLORIDA'S ANTI-SLAPP LAW................................................................................ 19

CONCLUSION....................................................................................................................... 20

REQUEST FOR HEARING................................................................................................. 202

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*100 Plus Animal Rescue, Inc. v. Butkus*,
   No. 17-61893, 2020 WL 5514404 (S.D. Fla. Aug. 15, 2020) ...............................................16

*Aflalo v. Weiner*,
   17-61923-CIV-MORENO, 2018 WL 3235529 (S.D. Fla. July 2, 2018)................9, 11, 14, 15

*Allen v. Ocwen Loan Servicing, LLC*,
   No: 17-60828-CIV-MARTINEZ/AOR, 2018 WL 1795460 (S.D. Fla. Feb. 16,
   2018) .........................................................................................................................................2

*Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*,
   418 F. Supp. 3d 1075 (S.D. Fla. 2019) ...................................................................................5

*Anderson v. Best Buy Stores, L.P.*,
   No. 5:20-cv-41, 2020 WL 5122781 (M.D. Fla. July 28, 2020) ..............................................20

*Army Aviation Heritage Found. & Museum, Inc. v. Buis*,
   504 F. Supp. 2d 1254 (N.D. Fla. 2007).................................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................................5

*Basile v. Prometheus Glob. Media*,
   225 F. Supp. 3d 737 (N.D. Ill. 2016) ....................................................................................10

*Bell v. Johnson Publ'g Co.*,
   No. 7:16-cv-16, 2018 WL 357888 (M.D. Ga. Jan. 10, 2018)..................................................7

*Berber v. Wells Fargo Bank, N.A.*,
   No. 16-24918, 2018 WL 10436232 (S.D. Fla. May 2, 2018).................................................18

*Berisha v. Lawson*,
   378 F. Supp. 3d 1145 (S.D. Fla. 2018) .................................................................................15

*Berisha v. Lawson*,
   973 F.3d 1304 (11th Cir. 2020) ......................................................................................16, 17

*Beverly Enters., Inc. v. Trump*,
   182 F.3d 183 (3d Cir. 1999)..................................................................................................12

*Bilinski v. Keith Haring Found., Inc.*,
   632 F. App'x 637 (2d Cir. 2015) ..........................................................................................13

*Biro v. Conde Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) ...................................................................6

*Blake v. Giustibelli,*
    182 So. 3d 881 (Fla. 4th DCA 2016) ...............................................................12

*Bond v. Baggett,*
    No. 11-61108, 2012 WL 13129567 (S.D. Fla. July 6, 2012) .........................18

*Bongino v. Daily Beast Co.,*
    477 F. Supp. 3d 1310 (S.D. Fla. 2020) ...................................................... *passim*

*Borislow v. Canaccord Genuity Grp. Inc.,*
    No. 14-80134, 2014 WL 12580259 (S.D. Fla. June 27, 2014) ........................5

*Campbell v. Air Jamaica Ltd.,*
    760 F.3d 1165 (11th Cir. 2014) .......................................................................18

*Colodny v. Iverson, Yoakum, Papiano & Hatch,*
    936 F. Supp. 917 (M.D. Fla. 1996) .............................................................10, 11

*Corsi v. Newsmax Media, Inc.,*
    20-cv-91396, 2021 WL 626855 (S.D. Fla. Feb. 12, 2021) .......................... *passim*

*Crenshaw v. Lister,*
    556 F.3d 1283 (11th Cir. 2009) .........................................................................5

*Croixland Props. Ltd. P'ship v. Corcoran,*
    174 F.3d 213 (D.C. Cir. 1999) ...........................................................................7

*Cross v. Facebook, Inc.,*
    14 Cal. App. 5th 190 (2017) .............................................................................20

*Daniels v. HSN, Inc.,*
    No. 8:18-cv-3088, 2020 WL 533927 (M.D. Fla. Feb. 3, 2020) .......................12

*Deripaska v. Associated Press,*
    282 F. Supp. 3d 133 (D.D.C. 2017) ...................................................................7

*Estes v. Rodin,*
    259 So. 3d 183 (Fla. 3d DCA 2018) ................................................................14

*Falic v. Legg Mason Wood Walker, Inc.,*
    347 F. Supp. 2d 1260 (S.D. Fla. 2004) ............................................................12

*Gertz v. Robert Welch Inc.,*
    418 U.S. 323 (1974) ..........................................................................................12

*Horsley v. Feldt*,
  304 F.3d 1125 (11th Cir. 2002) ...................................................................7

*Isaac v. Twitter, Inc.*,
  No. 1:20-cv-25264-BB (S.D. Fla.), D.E. 5 ...................................................1, 2, 4

*Jews For Jesus, Inc. v. Rapp*,
  997 So. 2d 1098 (Fla. 2008)...................................................................6

*JP Morgan Chase Bank Nat'l Ass'n v. Colletti Invs., LLC*,
  199 So. 3d 395 (Fla. 4th DCA 2016) ...................................................................12

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017) ...................................................................5

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006)...................................................................7

*Klayman v. City Pages*,
  No. 5:13-cv-143, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015) .......................................16, 17

*Klayman v. Jud. Watch, Inc.*,
  22 F. Supp. 3d 1240 (S.D. Fla. 2014) ...............................................10, 11, 13, 14

*La'Tiejira v. Facebook, Inc.*,
  272 F. Supp. 3d 981 (S.D. Tex. 2017) ...................................................................20

*Lane v. Capital Acquisitions & Mgmt., Co.*,
  No. 04-60602, 2006 WL 4590705 (S.D. Fla. Apr. 14, 2006) ..................................................18

*Laub v. Horbaczewski*,
  No. LA CV 17-06210, 2019 WL 3492402 (C.D. Cal. July 30, 2019)...................................10

*Marder v. TEGNA Inc.*,
  No. 19-81283, 2020 WL 3496447 (S.D. Fla. June 29, 2020)............................................13, 14

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...................................................................15, 17

*Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*,
  811 So. 2d 841 (Fla. 4th DCA 2002)...............................................................15, 16

*Miller v. Sawant*,
  No. C18-506, 2020 WL 7714414 (W.D. Wash. Dec. 29, 2020)................................................9

*Murray v. Pronto Installations, Inc.*,
  No. 8:20-cr-824, 2020 WL 6728812 (M.D. Fla. Nov. 16, 2020) ...........................................11

*Ortega Trujillo v. Banco Cent. Del Ecuador*,
    17 F. Supp. 2d 1334 (S.D. Fla. 1998) ...............................................................6, 9

*Parekh v. CBS Corp.*,
    820 F. App'x 827 (11th Cir. 2020) ........................................................................19

*Perruzzi v. Ferretti*,
    564 So. 2d 621 (Fla. 4th DCA 1990) .......................................................................7

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966)....................................................................................................7

*Rosenthal v. Council on Am.-Islamic Rels., Fla., Inc.*,
    No. CACE 16-021357, 2017 WL 6390102 (Fla. Cir. Ct. Nov. 8, 2017)................19

*Rubinson v. Rubinson*,
    474 F. Supp. 3d 1270 (S.D. Fla. 2020) ...............................................................9, 11

*Sang v. Hai*,
    951 F. Supp. 2d 504 (S.D.N.Y. 2013)....................................................................13

*Schiller v. Viacom, Inc.*,
    No. 1:15-cv-22129, 2016 WL 9280239 (S.D. Fla. Apr. 4, 2016)............................9

*Silvester v. Am. Broad. Cos.*,
    650 F. Supp. 766 (S.D. Fla. 1986) ...........................................................................9

*Simon v. Shearson Lehman Bros., Inc.*,
    895 F.2d 1304 (11th Cir. 1990) ..............................................................................13

*Skupin v. Hemisphere Media Grp., Inc.*,
    No. 3D19-1555, 2020 WL 6153447 (Fla. 3d DCA Oct. 21, 2020) .........................8

*Sloan v. Shatner*,
    8:17-cv-332-T-27AAS, 2018 WL 3769968 (M.D. Fla. June 22, 2018) ..............8, 15

*Song Fi, Inc. v. Google Inc.*,
    No. 14-cv-05080, 2018 WL 2215836 (N.D. Cal. May 15, 2018).........................12

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
    18 Civ. 4921, 2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019) ...................................8

*Stewart v. Sun Sentinel Co.*,
    695 So. 2d 360 (Fla. 4th DCA 1997)........................................................................5

*Thomas v. Jacksonville Tele., Inc.*,
    699 So. 2d 800 (Fla. 1st DCA 1997) ........................................................................7

*Tobinick v. Novella*,
 No. 9:14-CV-80781, 2015 WL 1191267 (S.D. Fla. Mar. 16, 2015).................................13, 15

*Turner v. Wells*,
 198 F. Supp. 3d 1355 (S.D. Fla. 2016) ........................................................... *passim*

*Turner v. Wells*,
 879 F.3d 1254 (11th Cir. 2018) .........................................................................16

*Vantassel-Matin v. Nelson*,
 741 F. Supp. 698 (N.D. Ill. 1990) .......................................................................8

*Warner v. Schmidt*,
 No. 8-11-cv-0128, 2011 WL 2784492 (M.D. Fla. July 15, 2011)..............................6

*White v. Fraternal Order of Police*,
 909 F.2d 512 (D.C. Cir. 1990) ...........................................................................9

*Wolfson v. Kirk*,
 273 So. 2d 774 (Fla. 4th DCA 1973) ...................................................................6

*WPB Residents for Integrity in Gov't, Inc. v. Materio*,
 284 So. 3d 555 (Fla. 4th DCA 2019) ..............................................................19, 20

*Yow v. Nat'l Enquirer, Inc.*,
 550 F. Supp. 2d 1179 (E.D. Cal. 2008)..................................................................7

*Zimmerman v. Buttigieg*,
 No. 8:20-cv-1077, 2021 WL 694797 (M.D. Fla. Feb. 23, 2021)..............................14

**Statutes**

Communications Decency Act § 230 (47 U.S.C. § 230) .............................................18

Florida Statute § 768.295 ............................................................................1, 20
 § 768.295(2)(a) ...................................................................................19, 20
 § 768.295(3).............................................................................................19
 § 768.295(4).............................................................................................20

Florida Statute § 770.01 ..............................................................................13

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................14, 18

Fed. R. Civ. P. 12(b)(6)........................................................................1, 5, 6

Local Rule 7.3 ......................................................................................20

2 Robert D. Sack, Sack on Defamation (5th ed. 2017) § 16.2.1 ....................................................5

David Elder, Defamation: A Lawyer's Guide § 1:30 (2020) ..........................................................7

Rodney A. Smolla, 1 Law of Defamation § 4:40.50 (2d ed. 2020) ................................................7

Defendants Twitter Inc. and Madbits, LLC, by their attorneys, hereby move, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff John Paul Mac Isaac's Complaint, and seek recovery of reasonable attorney's fees and costs under Florida's anti-SLAPP law, Fla. Stat. § 768.295.  In support of the Motion, Defendants state as follows:

## PRELIMINARY STATEMENT

Plaintiff John Paul Mac Isaac has filed, for the second time in this Court, a complaint for defamation *per se* based on Twitter's good faith decision to prevent dissemination of an October 14, 2020 article in the *NY Post* for violations of Twitter's content moderation policies.  The article reported on and reproduced documents—including personal emails and photographs—purportedly obtained from the laptop of Hunter Biden ("Mr. Biden"), son of then-presidential candidate Joe Biden.  The *NY Post* indicated that these documents originated from the owner of a computer repair shop in Delaware, who had possession of the laptop after Mr. Biden had purportedly failed to retrieve it from the shop.  Twitter explained its decision to block the article under its policies in a series of public Tweets as well as a private notification to the *NY Post*'s Twitter account holder, which Plaintiff claims defamed him.  Nothing in those explanations, however, mention Plaintiff by reference or implication, nor do they accuse him (or anyone else) of any criminal wrongdoing.

Twitter's explanations, stripped of Plaintiff's conclusory allegations and distortions, do not meet *any* of the elements required of a defamation claim.  The explanations do not concern Plaintiff or his business by name or implication.  Twitter's explanations relate to violations of its platform rules, not criminal conduct.  Moreover, Plaintiff does not plead that he suffered special damages, as required by Florida defamation law.  Finally, even accepting the Complaint's allegations as true, Plaintiff has not adequately pleaded that the explanations were false, published, or made with actual malice.  Each of these pleading failures is independently fatal to Plaintiff's claim.

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's claim with prejudice and award attorney's fees under the Florida anti-SLAPP statute, because Plaintiff's claim was filed in violation of this statute.

## BACKGROUND

### A.     The Parties

Plaintiff John Paul Mac Isaac owned The Mac Shop, Inc., a now-defunct Delaware business that repaired personal computers.  D.E. 1 ¶¶ 17, 47.  Plaintiff alleged as recently as December 2020 that he was a resident of Delaware, *see Isaac v. Twitter, Inc.*, No. 1:20-cv-25264-

BB (S.D. Fla.), D.E. 5 at 2, but now (less than two months later) claims to reside in Colorado, D.E. 1 ¶ 3. Defendant Twitter, Inc. ("Twitter") operates a global platform for public self-expression and conversation. *See* D.E. 1 ¶ 23. Twitter's mission is to give people the power to create and share ideas and information instantly and without barriers. Its platform is used by hundreds of millions of people worldwide. In order to post content on the Twitter platform, an individual must agree to Twitter's User Agreement, including its Terms of Service and the Twitter Rules. *See, e.g., id.* ¶ 38 & n.1; D.E. 1-24 (including link to Twitter Rules). Twitter enforces rules for platform content, including against violations of its User Agreement, such as the unauthorized dissemination of personal information. *See* D.E. 1-24 at 1–5. Defendant Madbits, LLC ("Madbits") is a Florida limited liability company that is wholly owned by Twitter and primarily focused on developing image search technology. D.E. 1 ¶¶ 20–21.

**B.     The *NY Post*'s Article Does Not Identify Plaintiff or His Business**

On October 14, 2020, the *NY Post* published an article entitled, "Smoking-gun email reveals how Hunter Biden introduced Ukrainian businessman to VP dad." D.E. 1-15 at 5 ("Article").[1] The Article claimed that the *NY Post* obtained unflattering emails sent by Mr. Biden to business colleagues, along with other material "extracted from the computer," including personal videos and photographs. *Id.* at 6. The Article reproduced many of these documents, including what was purported to be Mr. Biden's personal emails and email address as well as family and 'selfie' photographs. *Id.* at 6–12.

The documents were, according to the Article, allegedly "contained in a massive trove of data recovered from a laptop computer," *id.* at 5, which had been "dropped off at a repair shop in Biden's home state of Delaware in April 2019," *id.* at 6. The Article stated that the unidentified repair shop owner informed the *NY Post* that the customer who brought in the laptop "never paid for the service or retrieved [the laptop]." *Id.* It also stated that the shop owner "made a copy of the hard drive and later gave it to former Mayor Rudy Giuliani's lawyer, Robert Costello." *Id.* at

---

[1] "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ." *Allen v. Ocwen Loan Servicing, LLC*, No: 17-60828-CIV-MARTINEZ/AOR, 2018 WL 1795460, at *2 (S.D. Fla. Feb. 16, 2018) (quoting *Hoefling v. Miami*, 811 F.3d 1271, 177 (11th Cir. 2016)).

7. [2]  According to the Article, "Steven Bannon, former adviser to President Trump," informed the *NY Post* about the hard drive's existence, and Giuliani subsequently "provided The Post with a copy" of the drive.  *Id.* at 8.

Plaintiff alleges that he owned the repair shop in question, The Mac Shop.  D.E. 1 ¶¶ 17, 18.  But the Article ***never mentions Plaintiff or his store by name***, nor provides any information that would permit a reader to identify either of them.  D.E. 1-15 at 5–13.  (In contrast, the Article specifically names at least a dozen other individuals.)  Plaintiff also alleges that "a photo of the [sic] Mac Shop" appears in the *NY Post* Article, which did not "blur[] the business name," *id.* ¶ 36, but does not cite where this photo can be found or provide it as an exhibit to the Complaint.  *See, e.g.*, *id.*; D.E. 1-15 at 5–15.  Notably, the Article Plaintiff does attach to the Complaint neither shows any such photo nor contains any caption (or other text) identifying Plaintiff or his shop.  Finally, and contrary to the Complaint's allegation that Plaintiff had no knowledge that the *NY Post* "was going to publish a story about the recovered data," D.E. 1 ¶ 33, the Article cites multiple conversations between the *NY Post* and "the shop owner," D.E. 1-15 at 6–7.

### C.     Twitter Applies Its Content Moderation Policies to the Article

Concurrent with its publication of the Article on October 14, 2020, the *NY Post* "attempted to post and disseminate" the Article on the Twitter platform, using the *NY Post*'s Twitter account.  D.E. 1 ¶ 37.  That same day, Twitter determined that the dissemination of the Article violated Twitter's policy against distribution of hacked materials and Twitter's private and personal information policy, and it took several subsequent actions.

*First*, Twitter prevented re-Tweeting of the Article when users attempted to share it on Twitter.  D.E. 1 ¶ 39; D.E. 1-15 at 15.

*Second*, Twitter locked the *NY Post*'s Twitter account and issued a notification, sent directly to the holder of the *NY Post*'s Twitter account ("Private Explanation").  The Private Explanation noted that the account had violated Twitter's rules against distribution of hacked material and explained, "We don't permit the use of our services to directly distribute content obtained through hacking that contains private information, may put people in physical harm or danger, or contains trade secrets."  D.E. 1-15 at 15.  The Complaint does not explain how Plaintiff

---

[2] Plaintiff attaches a copy of the alleged contract governing the repair of the laptop.  Nowhere in the agreement does it permit or authorize disclosure of ostensibly abandoned property; the laptop owner disclaimed only "damage or loss of property," D.E. 1-20 at 1.

became aware, or obtained a copy, of the Private Explanation, which is attached to the Complaint.

*Third*, Twitter issued three public Tweets ("Public Explanation"), stating "We want to provide much needed clarity around the actions we've taken with respect to two NY Post articles that were first Tweeted this morning.  The images contained in the articles include personal and private information—like email addresses and phone numbers—which violate our rules. . . .  [W]e also currently view materials included in the articles as violations of our Hacked Materials Policy." D.E. 1-15 at 16.

### D.  Plaintiff Sues Twitter for Its Content Moderation

This is the second suit Plaintiff has brought against Twitter in connection with the subject matter at issue.  Plaintiff originally brought suit in this Court for defamation *per se* against Twitter on December 28, 2020, seeking "punitive damages equal to $500,000,000.00."  *Isaac v. Twitter, Inc.*, No. 1:20-cv-25264-BB (S.D. Fla.), D.E. 5 at 1.  The Court dismissed the suit *sua sponte* on December 29, 2020, for lack of diversity jurisdiction, as Plaintiff was a Delaware resident and Twitter a Delaware-incorporated corporation.  *Id.* at 2–3.

Plaintiff filed the instant Complaint on February 18, 2021.  Plaintiff now alleges that the Court has diversity jurisdiction because Plaintiff allegedly is no longer a Delaware resident but instead now resides in Colorado.  D.E. 1 ¶¶ 2–3.  Plaintiff also has added Madbits as a defendant, allegedly as an "alter ego of Defendant Twitter," such that "all contacts and activities of [Madbits] are imputed to [Twitter] for jurisdictional purposes."  *Id.* ¶ 11.  Plaintiff fails to allege Madbits' involvement in the conduct at issue in this case.

The Complaint alleges that Twitter made four "false and defamatory statements" about him, constituting libel *per se*, D.E. 1 ¶¶ 1, 53, which, according to Plaintiff, "spread[] the belief among its users, including Florida resident users, that the Plaintiff is a hacker," *id.* ¶ 39.  Plaintiff identifies the following "statements" as the basis for his claim:  that Twitter (1) "categoriz[ed him] as a hacker and/or a criminal," and that Twitter said that (2) he "may have put people in physical harm," (3) "may have put people in danger," and (4) "may have violated trade secret laws."  *Id.* ¶ 53. Twitter did not make any of these statements.  Instead, these statements represent Plaintiff's mistaken reformulation and inaccurate characterization of Twitter's actual explanations.  *Compare id. with id.* n.2 (cross-referencing actual explanations by Twitter).

The Complaint does not allege that Plaintiff is or ever has been a Florida resident; that he has any personal or business connection to Florida; or that any of the customers of his Delaware

business were Florida residents.  D.E. 1 ¶¶ 3, 17.  Instead, his alleged connection to Florida is that Plaintiff allegedly received negative reviews from Florida residents "as a direct result" of Twitter's Explanations, particularly on Yelp.  *Id.* ¶ 46.  Yet not one of the "one-star" Yelp reviews he attaches as an exhibit to the Complaint mentions Twitter or its Explanations.  *See* D.E. 1-23. Indeed, many of these negative reviews claim to have learned of Plaintiff's involvement from *Plaintiff's own* discussions with the media.  *See, e.g.*, D.E. 1-23 at 8, 19.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to state a facially plausible claim for relief.  *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But "[w]hile a court must accept well-pleaded factual allegations as true, 'conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations.'"  *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016) (quoting *Randall v. Scott*, 610 F.3d 701, 709– 10 (11th Cir. 2010)).  "Moreover, courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1080 (S.D. Fla. 2019) (citation and quotation marks omitted).  And "[i]t is the law in this Circuit that 'when the [complaint] exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'"  *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (citation omitted).

"Courts in this jurisdiction and elsewhere routinely dismiss defamation claims on motions to dismiss."  *Borislow v. Canaccord Genuity Grp. Inc.*, No. 14-80134, 2014 WL 12580259, at *1 (S.D. Fla. June 27, 2014).  Defamation suits are uniquely suited to early dismissal on a motion to dismiss:  First, "unlike in most litigation, in a libel suit the central event—the communication about which suit has been brought—is ordinarily before the judge at the pleading stage."  2 Robert D. Sack, Sack on Defamation § 16.2.1 (5th ed. 2017).  Second, early dismissal on the pleadings is "especially appropriate because of the chilling effect these cases have on freedom of speech." *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997) (citation omitted); *see Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) ("[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.").  "Rule 12(b)(6) should play a particularly important role in testing the plausibility of a plaintiff's defamation

claim," to "protect[] against the costs of meritless litigation" where "First Amendment rights" are at stake. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013).

## ARGUMENT

### I.   PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION AGAINST ANY DEFENDANT

Plaintiff brings a claim for defamation *per se*.  D.E. 1 ¶ 1.  To state such a claim, a plaintiff must plead (1) publication, of a (2) false and (3) defamatory statement, (4) about the plaintiff, (5) with the requisite degree of fault, and (6) that the falsity of the statement caused injury to the plaintiff.  *See Turner*, 198 F. Supp. 3d at 1364–65; *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  Plaintiff must plead facts "that would support *all* of the elements of defamation . . . in accordance with the *Iqbal* standard."  *Warner v. Schmidt*, No. 8-11-cv-0128, 2011 WL 2784492, at *2 (M.D. Fla. July 15, 2011) (emphasis added).  As Plaintiff does not and cannot sufficiently plead *any* of these elements, this Court should dismiss the claim with prejudice.

### A.   Twitter's Explanations, Not Plaintiff's Characterizations, Are the Proper Subject of Analysis

To begin with, clarity is required regarding what statements are actually at issue.  Plaintiff frames his entire Complaint around four purported "false and defamatory statements" by Twitter, D.E. 1 ¶ 53, but none of these alleged statements were actually made by Twitter, *compare id. with id.* n.2.  Plaintiff's own cross-reference to Twitter's *actual* statements—the Explanations, *id.*— makes clear that the "statements" alleged by Plaintiff are not statements by Twitter but instead Plaintiff's *inaccurate characterization* of Twitter's statements.  For purposes of defamation, however, what matters are the *actual* statements at issue.  *See Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) ("When determining whether a published statement constitutes libel per se, an arbiter of fact may consider only the 'four corners' of the publication."); *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973) ("Florida cases have held that written defamation must be construed as per se . . . without reference to anything except the words used.").  Accordingly, the ensuing analysis pertains to Twitter's statements, not Plaintiff's own self-serving mischaracterizations of those statements.  *Bongino*, 477 F. Supp. 3d at 1318–19 (defamation analysis turns on a "plain reading of the article" at issue, not plaintiff's "insinuation"); *Turner*, 198 F. Supp. 3d at 1373 (plaintiff's "allegation" of what "Defendants falsely stated" not credited where "directly contradicted by the Report" at issue).

### B.      Twitter's Explanations Are Not "Of and Concerning" Plaintiff

The complaint must be dismissed because Plaintiff fails to allege that Twitter's statements are "of and concerning" Plaintiff.  "[D]efamation is personal."  *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 144 (D.D.C. 2017) (citation omitted); *Perruzzi v. Ferretti*, 564 So. 2d 621, 622 (Fla. 4th DCA 1990) (Anstead, J. concurring) ("The general rule is that a cause of action for defamation is personal to the one allegedly defamed.").  An allegedly defamatory statement must therefore be "of and concerning" plaintiff to be actionable.  *See, e.g.*, *Rosenblatt v. Baer*, 383 U.S. 75, 80–83 (1966); *Thomas v. Jacksonville Tele., Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997). "The 'of and concerning' requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them," *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399–400 (2d Cir. 2006), particularly by foreclosing defamation claims by "those who merely complain of nonspecific statements that they believe cause them some hurt," *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1187 (E.D. Cal. 2008).[3]

To meet this element, "[t]he [allegedly] defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff."  *Horsley v. Feldt*, 304 F.3d 1125, 1136 (11th Cir. 2002).  Specifically, the statement must refer to the plaintiff either by name or by "ascertainable implication."  *Id.*  An actionable implication must "lead the [reader] to conclude that the speaker is referring to the plaintiff by description," *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 216 (D.C. Cir. 1999) (citing *Peck v. Tribune Co.*, 214 U.S. 185, 188–90 (1909)), for instance, if the statement includes the plaintiff's address, picture, specific job, or relationship to a named person, *see* David Elder, Defamation: A Lawyer's Guide § 1:30 (2020). But a plaintiff "cannot rely on rumor, innuendo, and extraneous circumstances to create an inference" of identity.  *Horsley*, 304 F.3d at 1136; *see Bell v. Johnson Publ'g Co.*, No. 7:16-cv-16, 2018 WL 357888, at *3 (M.D. Ga. Jan. 10, 2018) ("An innuendo cannot make the person certain which was uncertain before.").

---

[3] This Motion generally cites Florida law; because the "of and concerning" requirement has been treated as "not merely a venerable common-law doctrine," but also a rule of federal "constitutional dimension," cases from other jurisdictions are cited illustratively.  Rodney A. Smolla, 1 Law of Defamation § 4:40.50 (2d ed. 2020) (citing, *inter alia*, *Rosenblatt v. Baer*, 383 U.S. 75, 82 (1966)).

Here, the challenged Explanations do not refer to Plaintiff—either expressly or by implication.  The plain words of the Explanations do not name Plaintiff or his business, and Plaintiff does not allege otherwise.[4]  Nor do the Explanations permit a reasonable inference or "ascertainable implication" that they were about Plaintiff.  Though Plaintiff alleges that the *NY Post* "published a photo of the [sic] Mac Shop without blurring the business name," he does not allege that the Twitter Explanations themselves included such a photo.  D.E. 1 ¶ 36.  Tellingly, the *NY Post* Article at issue, which he *attaches* as a Complaint exhibit, D.E. 1-15 at 5, does not contain any photo of Plaintiff's store.[5]  Because the Complaint is bereft of allegations that the Twitter Explanations mention "Plaintiff, his business, or identifying characteristics[,] [f]or this reason alone, Plaintiff fails to plead that the [Explanations] w[ere] 'of and concerning' him."  *Sloan v. Shatner*, 8:17-cv-332-T-27AAS, 2018 WL 3769968, at *6 (M.D. Fla. June 22, 2018).

Nor can Plaintiff's identity be implied based on an impermissible series of inferences and cross-references.  Plaintiff seems to incorrectly suggest that even though Twitter's Explanations (concerning how the *NY Post* Article violated its terms of service) do not refer to *any* individual (let alone Plaintiff), readers could infer Plaintiff's identity based on a reference to the name of his store, "The Mac Shop," in a photo in the *NY Post* Article to which Twitter's Explanations were directed.  D.E. 1 ¶¶ 36, 38–39, 43.  To be clear—*no such photo or reference even exists in the Article*.  *See supra* at 3.  But even if it did, a publication does not "concern" a plaintiff if it requires a separate publication from a different source for the reader to make the inferential leap.  *See, e.g.*, *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 18 Civ. 4921, 2019 WL 1434719, at *11 (S.D.N.Y. Mar. 31, 2019); *Vantassel-Matin v. Nelson*, 741 F. Supp. 698, 710 (N.D. Ill. 1990) (statements in other articles not "ascribable" to defendant cannot be "context" for "of and concerning" analysis).  Rather, any implication that a statement concerns a plaintiff must come from an "intrinsic reference" in the statement itself; extrinsic evidence "cannot be used to alter or extend the words"

---

[4] As noted, the Explanations state that (a) the *NY Post*'s "account has been locked [for] [v]iolating our rules against distribution of hacked materials," in the Private Explanation, and (b) that "images contained in the [NY Post] articles include personal and private information," and that "materials included in the articles [were] violations of our Hacked Materials Policy," in the Public Explanation.  D.E. 1 ¶ 38 & n.1.

[5] It is the "plain meaning" of the "[e]xhibits attached to the complaint [that] are controlling"; "the conclusions of the pleader, as to the meaning of exhibits attached to the complaint, are not binding on the court."  *Skupin v. Hemisphere Media Grp., Inc.*, No. 3D19-1555, 2020 WL 6153447, at *1 (Fla. 3d DCA Oct. 21, 2020).

or "impermissibly alter the meaning of the otherwise non-individualized statements." *Miller v. Sawant*, No. C18-506, 2020 WL 7714414, at *4 (W.D. Wash. Dec. 29, 2020) (alterations omitted).

### C.       Twitter's Explanations Are Not Defamatory *Per Se*

Plaintiff fails to allege that Twitter's statements are defamatory *per se*, requiring dismissal. "A written publication" constitutes libel *per se* under Florida law "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime [*i.e.*, a felony]; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Aflalo v. Weiner*, 17-61923-CIV-MORENO, 2018 WL 3235529, at *2 (S.D. Fla. July 2, 2018) (citation omitted).

A statement must be reasonably susceptible of the defamatory meaning alleged.  Whether a statement is "not defamatory" is an inquiry "made by the court in the first instance." *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 770 (S.D. Fla. 1986).  First, "[w]hen determining whether a published statement constitutes libel per se, an arbiter of fact may consider only the 'four corners' of the publication." *Ortega Trujillo*, 17 F. Supp. 2d at 1339.  The precise words must be "injurious in and of themselves"; when "'extrinsic facts and innuendo are needed to prove the defamatory nature of the words,' the statements are not defamatory *per se*." *Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1277 (S.D. Fla. 2020) (citation omitted).   Second, within the four corners, defamation "turns on 'all the words used, not merely a particular phrase or sentence'" at the expense of context. *Bongino*, 477 F. Supp. 3d at 1319 (citation omitted).  Plaintiff cannot "cherry pick" a particular phrase or sentence "out of context," *id.*, or rely on "tortured interpretation," *Schiller v. Viacom, Inc.*, No. 1:15-cv-22129, 2016 WL 9280239, at *8 (S.D. Fla. Apr. 4, 2016); *see White v. Fraternal Order of Police*, 909 F.2d 512, 519 (D.C. Cir. 1990) ("[C]ourts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning.").

Under these controlling standards, Plaintiff fails to plead that Twitter's Explanations are defamatory *per se*.  The language within the Explanations' four corners is not defamatory; indeed, as discussed *supra*, Plaintiff focuses not on the Explanations themselves, but on his own mistaken interpretation of them. *See* D.E. 1 ¶ 53 & 53 n.2.  Nor are the Explanations reasonably susceptible of the meaning that Plaintiff seeks to ascribe to them.

### 1.       The Explanations do not state that Plaintiff is a hacker or criminal

Plaintiff first alleges that Twitter said that "Plaintiff [is] a hacker," D.E. 1 ¶ 42 and "a

criminal," *id.* ¶ 53.  The Explanations say no such thing.  In addition to not referencing Plaintiff at all, the Explanations state that the *NY Post* articles contained "violations of our Hacked Materials *Policy*," *id.* ¶ 38 n.1 (emphasis added)—not that there had been any "hack" or "hacker."  Because Plaintiff's characterization is based on "cherry pick[ing]" a particular phrase "out of context," it cannot support his claim.  *Bongino*, 477 F. Supp. 3d at 1319.[6]

Even assuming, *arguendo*, that Twitter's Explanations had stated that a hack had occurred and identified Plaintiff in that context, this *would still fail* to state a claim for defamation *per se*— a "hack" as defined in Twitter's policy is not synonymous with criminal conduct.  To be defamatory *per se*, a statement must "actually indicate that the person has *committed* a crime." *Basile v. Prometheus Glob. Media*, 225 F. Supp. 3d 737, 742 (N.D. Ill. 2016); *see also Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 922 (M.D. Fla. 1996) (under Florida law, criticizing work as "fraud" does not "charge" the work's author himself with criminal fraud).  The Explanations at no point allege that Plaintiff committed a crime, only that a violation of Twitter's *policies* occurred.  As the court held in *Basile*, a statement listing a plaintiff's name "in conjunction" with a cyberattack but that "does not attribute criminal activity to" the plaintiff, is not defamation *per se*.  *Basile*, 225 F. Supp. 3d at 742–43.  And here, unlike in *Basile*, Plaintiff does not even allege that the Explanations named or identified him at all.

Also baseless is Plaintiff's claim that Twitter called him a "criminal."  Nothing in the Explanations refers to anyone or anything as "criminal."  To the extent Plaintiff's theory is a reference to a "hack" or "hacker" is necessarily a reference to criminal conduct, *see* D.E. 1 ¶ 62 n.3 (directing Court to "[s]ee generally Florida Statutes Chapter 815 'Computer Related Crimes'"), as noted, the Explanations do not reference a "hack" or "hacker" or indicate that Plaintiff is such a person.  Moreover, a colloquial reference to some malfeasance that "does not list any aggravating factors indicative of a felony or otherwise characterize the offense as a felony . . . lacks sufficient detail for a reader to conclude" that it refers to an infamous crime.  *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1248 (S.D. Fla. 2014); *see Colodny*, 936 F. Supp. 3d at 925 (charge of "fraud" "do[es] not suggest to the ordinary reader that [plaintiff] committed a crime").

---

[6] The Explanations also do not mention or attribute any distribution of materials *to Plaintiff*.  A publication is not "reasonably susceptible to a meaning that is defamatory" if Plaintiff relies on a separate article written by a different author to piece together defamation, *Laub v. Horbaczewski*, No. LA CV 17-06210, 2019 WL 3492402, at *10 (C.D. Cal. July 30, 2019), or on a "'tortured and extreme' interpretation" to read himself into a publication, *Turner*, 198 F. Supp. 3d at 1376.

Plaintiff fares no better with his allegations that "hacked materials"—the words used in the Explanations—can be read as characterizing Plaintiff as a felon, if viewed in combination with (a) a definition of "hacker" from Merriam-Webster's Dictionary, D.E. 1 ¶ 43, and (b) the entirety of Florida's "Computer Related Crimes" statutory chapter, *id.* ¶ 62 n.3. Such a chain of inferences cannot support a claim of defamation *per se*. *See Klayman*, 22 F. Supp. 3d at 1248 ("[I]t is the purportedly defamatory statement that must impute the criminal offense amounting to a felony, [and] whether the underlying facts actually support a felony offense is not relevant.").[7]

## 2. The Explanations do not state that Plaintiff may have put people in harm, in danger, and violated trade secret laws

Plaintiff next alleges that Twitter's Private Explanation said that Plaintiff may have put people in harm, in danger, and violated trade secret laws. D.E. 1 ¶ 53. The Private Explanation says no such thing and is not susceptible to any such interpretation. First, and as the actual Private Explanation makes clear, Twitter's Private Explanation does not accuse *Plaintiff* of anything. The Private Explanation was directed to the *NY Post*'s—"Your"—Twitter account, and it addressed the *NY Post* "distribut[ing] content" as the reason for locking the *NY Post*'s account. Its plain language contains no reference to Plaintiff, explicit, implicit, or otherwise.

Second, Twitter's Private Explanation—which lists a number of possible harms that generally can result from distribution of hacked materials—cannot reasonably be interpreted as characterizing any person, including Plaintiff, of personally causing each and every illustrative harm listed. A social media platform's reference or link to site guidelines, which "list a multitude of possible offenses that could have resulted in the removal of the" post, is not susceptible of the reading that the platform alleges the user committed each and every offense. *Song Fi, Inc. v.*

---

[7] Plaintiff also conclusorily alleges that the Explanations "impute to the Plaintiff conduct, characteristics, and/or conditions incompatible with the proper exercise of Plaintiff's lawful business, trade, and/or profession" and subjected Plaintiff to "distrust, scorn, ridicule, hatred, and contempt." D.E. 1 ¶¶ 61–62. Because the Explanations "do not mention [Plaintiff's name]," and may not "even [be] about" Plaintiff, "they do not constitute defamation *per se*" under these prongs. *Murray v. Pronto Installations, Inc.*, No. 8:20-cr-824, 2020 WL 6728812, at *3 (M.D. Fla. Nov. 16, 2020). Plaintiff also again impermissibly relies on his own twisted characterizations rather than the Explanations themselves. In any event, Plaintiff fails to sufficiently allege either prong: he does not allege his "profession is directly invoked, the statement overtly reflects negatively on [P]laintiff's professional capacity, or the statement was made directly to [P]laintiff's clients or employers." *Rubinson*, 474 F. Supp. 3d at 1277, and a conclusory allegation of scorn or ridicule, without more, "fail[s] to convincingly plead that the [Explanations]" "engender[s] the type of hatred . . . required to succeed under this prong," *Aflalo*, 2018 WL 3235529, at *4.

*Google Inc.*, No. 14-cv-05080, 2018 WL 2215836, at *4 (N.D. Cal. May 15, 2018). For instance, in *Bartholomew v. YouTube, LLC*, plaintiff brought a defamation claim against YouTube for posting a removal notice on his video, with a link to an illustrative list of potential violations that included "Dangerous Illegal Acts," "Hate Speech," and "Privacy." 17 Cal. App. 5th 1217, 1222 (2017). The court dismissed the claim, holding that "an Internet user . . . would have understood that the list on the Community Guideline Tips page is in fact general" and "no one particular offense could be reasonably read to apply to" the offending post. *Id.* at 1229.

### D.    Plaintiff Fails to Plead Special Damages from the Alleged Defamation

Plaintiff's complaint should also be dismissed because it fails to allege that Twitter's statements caused special damages. When a statement is defamatory *per se*, a plaintiff ordinarily "need not provide 'proof of special damages.'" *Corsi v. Newsmax Media, Inc.*, 20-cv-91396, 2021 WL 626855, at *4 (S.D. Fla. Feb. 12, 2021) (citation omitted). "However, Florida law applies the Supreme Court's ruling from the well-known First Amendment defamation case of *Gertz v. Robert Welch Inc.*, [418 U.S. 323 (1974)], which eliminates presumed damages for defamation *per se* actions against media defendants." *Id.* at *4. "[A]fter *Gertz*, in libel cases involving media defendants, fault and proof of damages must always be established." *Blake v. Giustibelli*, 182 So. 3d 881, 884–85 (Fla. 4th DCA 2016) (emphasis added). Thus, a plaintiff must plead "special damages"—that is, "actual, out of pocket losses," *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004), "capable of being estimated in money, established by specific instances such as actual loss due to withdrawal of trade of particular customers," *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 188 (3d Cir. 1999).

Special damages must be pleaded with particularity. Sack on Defamation § 10.3.2; *JP Morgan Chase Bank Nat'l Ass'n v. Colletti Invs., LLC*, 199 So. 3d 395, 399 (Fla. 4th DCA 2016). Mere allegations that a statement damaged a plaintiff's reputation fail to plead special damages. *Daniels v. HSN, Inc.*, No. 8:18-cv-3088, 2020 WL 533927, at *6 (M.D. Fla. Feb. 3, 2020). And a plaintiff must "show his special damages proximately resulted from the defamation." *Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1259 (N.D. Fla. 2007) (citation omitted). He must therefore "point to evidence showing that" specific, identifiable lost customers "knew about" the allegedly defamatory statement. *Daniels*, 2020 WL 533927, at *5.

Under Florida's defamation laws, a "media defendant" is an entity that "initiat[es] 'uninhibited, robust, and wide-open debate on public issues'"—regardless of whether its role is

"impartially disseminat[ing] information" or issuing its own "commentary." *Tobinick v. Novella*, No. 9:14-CV-80781, 2015 WL 1191267, at *8–9 (S.D. Fla. Mar. 16, 2015) (citing Florida Stat. § 770.01). Plaintiff's pleadings are premised on Twitter being a "media defendant," D.E. 1-15 at 2, and yet, Plaintiff has not met the resulting burden to plead special damages: he alleges no specific pecuniary damages, and he alleges no proximate relationship between any specific economic damage and Twitter's Explanations. The Complaint merely states, "As a direct and proximate result of the defamatory statements made by Defendants, Plaintiff has suffered, and continues to suffer, substantial damages." D.E. 1 ¶ 63. "[C]onclusory" allegations, let alone general estimates of specific damages, are not sufficient "to satisfy the requirement that special damages be stated in detail." *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 642–43 (2d Cir. 2015). Plaintiff also alleges negative reviews and the loss of his business, D.E. 1 ¶¶ 46, 47, but special damages require more than conclusory allegations of lost business. *See Sang v. Hai*, 951 F. Supp. 2d 504, 525 (S.D.N.Y. 2013) (To plead special damages from defamation, "[t]he individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized."). Plaintiff also failed to plead any nonconclusory allegation that Twitter was "a substantial factor in bringing about the harm[s]," Restatement (Second) of Torts § 622, and that the Explanations "figured prominently in the minds" of the lost customers, *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1318 (11th Cir. 1990). None of the negative reviews attached to the Complaint cited Twitter's Explanations as the basis for their disapproval, or that they were even authored by potential customers. Such allegations are plainly insufficient.

### E. Plaintiff Fails to Plead Falsity of the Explanations

Plaintiff's claim also must be dismissed for failure to allege that Twitter's statements were false. "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Klayman*, 22 F. Supp. 3d at 1253 (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983)). In determining whether falsity has been sufficiently alleged, the court compares the text of the statement at issue to the truth as alleged in the Complaint and its exhibits; it does not use the plaintiff's unsupported characterizations as the baseline. *Turner*, 198 F. Supp. 3d at 1373–74 (disregarding plaintiff's "allegation" of what "the Defendants falsely stated" where "directly contradicted by the" publication itself); *Marder v. TEGNA Inc.*, No. 19-81283, 2020 WL 3496447, at *2 (S.D. Fla. June 29, 2020) (falsity analysis does not credit characterization of statements "in a vacuum").

Under these standards, Plaintiff has failed to allege falsity. Twitter stated that the *NY Post* Article "[v]iolat[ed] our rules against distribution of hacked material," and "violat[ed] our Hacked Materials Policy," because the materials were "obtained through hacking that contains private information . . . ." D.E. 1 ¶ 38 n.1; D.E. 1-15 at 15–16. Twitter "defines a 'hack' as 'an intrusion or access of a computer, network, or electronic device that was unauthorized or exceeded authorized access.'" D.E. 1 ¶ 41; D.E. 1-24 at 2. Based on this definition, none of Twitter's Explanations are false. Plaintiff's own allegations indicate that his alleged contract with Mr. Biden disclaimed only "damage or loss of property" of ostensibly abandoned property, D.E. 1-20 at 1. Nowhere did this contract authorize Plaintiff to discuss or send Mr. Biden's private data to another private citizen. Thus, when the *NY Post* Article included screenshots alleged to be Mr. Biden's private correspondence, photographs, and documents, Twitter reasonably concluded this material was in contravention of its policy, as obtained via access that "exceeded authoriz[ation]." *See* D.E. 1-15 at 5–13. In short, Twitter's Explanations were not false, for "[h]ad the reader known the truth" as alleged by Plaintiff, it "would not have produced a different effect on the reader than [Twitter's Explanations]." *Marder*, 2020 WL 3496447, at *5 (granting 12(b)(6) motion).

### F.     Plaintiff Fails to Plead Publication by Twitter

Plaintiff fails to allege publication, which is independently fatal to his claim. An allegedly defamatory statement must be published to be actionable, including the "dissemination of a false statement to a person other than the defamed person." *Klayman*, 22 F. Supp. 3d at 1251 (citing *Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1016 (Fla. 2001)); *see Corsi*, 2021 WL 626855, at *5. The plaintiff must "allege the '*identity* of the particular person to whom the remarks were made with a reasonable degree of certainty.'" *Aflalo*, 2018 WL 3235529, at *4 (emphasis added) (citation omitted). Failure to plead this "essential element of publication" beyond conclusory allegations is fatal to a defamation claim. *Estes v. Rodin*, 259 So. 3d 183, 191 (Fla. 3d DCA 2018).

The Complaint does not contain any allegation of publication, failing to identify a single person who read the Explanations. Plaintiff's threadbare recital of the publication element itself— that Twitter's "statement" was "published . . . to third parties, including thousands (or more) of Florida residents," D.E. 1 ¶ 55—fails to meet basic Rule 8 pleading standards. *See Zimmerman v. Buttigieg*, No. 8:20-cv-1077, 2021 WL 694797, at *8 (M.D. Fla. Feb. 23, 2021) (The "mere fact that the material was accessible in Florida is not enough to plead the publication element of defamation . . . .") *Aflalo* is instructive: plaintiff alleged that the defendants "posted" a statement

"on his Facebook page for all to see including persons living in Florida."  2018 WL 3235529, at *4.  The court granted the defendants' motion to dismiss given plaintiff's failure to allege publication: "Plaintiff's assertion that the Statement was put on Defendants' Facebook wall 'for all to see' fails to identify those persons to whom the Facebook post was published with a reasonable degree of certainty."  *Id.*

Nor is publication shown by Plaintiff's purported identification of five Florida individuals who Plaintiff alleges wrote "internet posts . . . referring directly to Defendant Twitter's actions . . . ."  D.E. 1 ¶ 9.  Plaintiff does not allege that any referred to Twitter's Explanations, and Plaintiff's own exhibits to the Complaint (D.E. 1-9–D.E. 1-13) show that not a single one of these users referred to, quoted from, or even were aware of, Twitter's Explanations.  *Sloan*, 2018 WL 3769968, at *3 ("[A] plaintiff's attempt to plead a viable cause of [defamation] may be defeated by his own evidence.").  In short, Plaintiff has not alleged that a single, identifiable Florida resident read the text of Twitter's Explanations.

### G.   Twitter's Explanations Were Not Made with Actual Malice or Through Negligence

The Complaint should also be dismissed because Plaintiff does not and cannot plead facts demonstrating that Defendants acted with the requisite degree of fault.  Plaintiff is a limited public figure and thus must meet the "daunting" actual malice standard.  He fails to do so.[8]  Nor does he even state a claim under the lesser (and inapplicable) negligence standard.

#### 1.   Plaintiff Is a Limited Public Figure

Defamation law identifies two different types of public figure plaintiffs who must plead actual malice: general public figures (who, based on their position of power or influence, are always public figures), or "limited public figure[s]," who are central to a "particular public controvers[y]."  *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1156 (S.D. Fla. 2018) (quoting *Tobinick v. Novella*, 848 F.3d 935, 945 n.9 (11th Cir. 2017)).  "[T]he 'public figure status' of a defamation claimant is a question of law to be determined by the court."  *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citation omitted).  Once "the existence of a public controversy is established," the court asks (a) "whether the individual played a central role

---

[8] A public figure's failure to plead actual malice warrants dismissal on a 12(b)(6) motion.  *See, e.g.*, *Corsi*, 2021 WL 626855, at *7–8; *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702, 706 (11th Cir. 2016) (collecting cases).

in the controversy," and (b) "whether the alleged defamation was germane to the individual's role in the controversy." *Berisha*, 378 F. Supp. 3d at 1156 (quoting *Turner v. Wells*, 879 F.3d 1254, 1272–73 (11th Cir. 2018)).

Plaintiff is a limited public figure in the circumstances alleged here. The release of information attributed to Mr. Biden's laptop less than a month before the 2020 U.S. presidential election, *see* D.E. 1 ¶ 57, is undoubtedly a matter of "public controversy." *See 100 Plus Animal Rescue, Inc. v. Butkus*, No. 17-61893, 2020 WL 5514404, at *6 (S.D. Fla. Aug. 15, 2020) (A public controversy entails "any topic upon which sizeable segments of society have different, strongly held views.") (citation omitted). Plaintiff, by his own allegations, had a "central role in the controversy"—he alleges that he was the but-for cause of the release of Mr. Biden's laptop data, D.E. 1 ¶ 43, and its subsequent media coverage, *id.* ¶¶ 31–32. He was therefore a central figure in a public controversy, for reasons having nothing to do with Twitter. And the "alleged defamation was germane" to Plaintiff's "role in the controversy," because Plaintiff claims that Twitter essentially labelled him a "hacker" for his part in the release of Mr. Biden's laptop data. *Id.* ¶ 39; *see Berisha*, 378 F. Supp. 3d at 1160 (holding prong met because Plaintiff's "involve[ment] in the controversy *was* the alleged defamation").

Plaintiff cannot avoid application of the limited public figure doctrine with his conclusory allegation that he "is not a public figure, nor is he a limited public figure for purposes of defamation analysis." D.E. 1 ¶ 56. Nor do Plaintiff's allegations that he "did not authorize the disclosure of his identity" or "use [of] his name" have any bearing on whether he is a limited public figure. D.E. 1 ¶¶ 34–35. "[F]ederal courts have long made clear that one may occasionally become a public figure even if one doesn't choose to be." *Berisha v. Lawson*, 973 F.3d 1304, 1311 (11th Cir. 2020) (citation omitted); *see Turner*, 879 F.3d at 1273 (It is "possible for someone to become a public figure through no purposeful action of their own." (quoting *Friedgood v. Peters Pub'g Co.*, 521 So. 2d 236, 239 (Fla. 4th DCA 1988)).

### 2.   Plaintiff Does Not Plead Actual Malice

Because he is a limited public figure, Plaintiff must satisfy the "daunting" actual malice standard. *Klayman v. City Pages*, No. 5:13-cv-143, 2015 WL 1546173, at *13 (M.D. Fla. Apr. 3, 2015). He fails to do so. To satisfy this standard, Plaintiff must show, "by clear and convincing evidence," that Defendants published a defamatory statement either with actual knowledge of its falsity or with a 'high degree of awareness' of its 'probable falsity.'" *Berisha*, 973 F.3d at 1312

(quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)).  Actual malice is a subjective test, asking whether the publisher "*in fact* entertained serious doubts as to the truth of his publication." *Berisha*, 973 F.3d at 1312 (citation omitted).

Plaintiff does not plead any specific facts to establish or even suggest that Twitter acted with actual malice.  Instead, Plaintiff relies on the formulaic allegations that "TWITTER acted with malicious intent to harm the Plaintiff by publishing the defamatory statement," D.E. 1 ¶ 48, and, "[t]he defamatory statements were made . . . with knowledge of their falsity; and/or with reckless disregard for the truth," *id.* ¶ 54.  These allegations fail.  "As an initial matter, the Court disregards the portion of the Complaint where [Plaintiff] alleges, in a purely conclusory fashion, that the [] Defendants knew that the statements made . . . were false, or at a minimum, acted with recklessness as to their truthfulness." *Corsi*, 2021 WL 626855, at *7; *see Michel*, 816 F.3d at 702 ("[P]lausibility pleading standard applies to the actual malice standard in defamation proceedings.").  Absent his threadbare conclusions, Plaintiff makes no specific allegation that Twitter knew its Explanations were false or recklessly disregarded the truth.

The Complaint's tangent on the congressional testimony of Twitter CEO Jack Dorsey does nothing to salvage Plaintiff's claim.  As discussed in Defendants' Response to the Order to Show Cause, Plaintiff simply misstates Mr. Dorsey's testimony.  D.E. 27 at 3–4.  For example: Plaintiff asserts that Mr. Dorsey stated that he and Twitter "recognize [the suppression and labeling of the information] as a mistake," but Plaintiff has inserted misleading language in brackets.  D.E. 1 ¶ 44. Plaintiff attaches Mr. Dorsey's testimony as an exhibit, which makes clear that Mr. Dorsey was responding to Senator Cornyn's question as to whether Twitter regrets "taking down that story"; Mr. Dorsey responded that the *removal of the post* was the mistake.  D.E. 1-25 at 16.  Nowhere does Mr. Dorsey discuss the "labeling" of the *NY Post*'s tweets; Plaintiff has simply contorted Mr. Dorsey's language to suggest what it does not say.  *See Michel*, 816 F.3d at 704 ("[C]onclusory statement" of actual malice not credited where "rebutted by . . . an exhibit to the complaint.").  In any event, a mere mistake would not be enough to allege that Twitter acted with actual knowledge or recklessness as to whether its Explanations were false.  *See Klayman*, 2015 WL 1546173, at *15 ("[A]ctual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false," let alone from a mistake on its own.); *Berisha*, 973 F.3d at 1314–16 (allegations of mistake do not demonstrate actual malice).

### 3.      Plaintiff Fails to Allege that Defendants Acted Negligently

Even if Plaintiff were not characterized as a limited public figure, he has still failed to plead any non-conclusory allegation of negligence.  Plaintiff again relies on a threadbare and conclusory recitation of the element to plead negligence—"Alternatively, Defendant TWITTER was grossly negligent in publishing the defamatory statement about the Plaintiff," D.E. 1 ¶ 49.   This is insufficient.  *See Corsi*, 2021 WL 626855, at *7.  Moreover, the facts alleged in the Complaint demonstrate that Twitter acted with diligence and in line with professional standards: it applied its User Agreement, found a violation, and provided the Explanations for its decisions.  *See* D.E. 1 ¶¶ 37, 38.  For the reasons stated above, the testimony of Mr. Dorsey is not to the contrary.  Plaintiff fails to plead any specific facts demonstrating that Twitter failed to use ordinary care.[9]

## II.   PLAINTIFF MAKES NO SUBSTANTIVE ALLEGATIONS AGAINST MADBITS

The Complaint is devoid of *any* substantive reference to Madbits or any connection between Madbits and the alleged defamation.  Indeed, the only Madbits reference other than in the statement of Parties, Jurisdiction & Venue is an allegation that it "is wholly controlled by Defendant TWITTER . . . ."  D.E. 1 ¶ 21.  This pleading failure independently requires dismissal of the claims against Madbits.  *See Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1170 (11th Cir. 2014) (dismissing claims where the complaint "names [the defendant] in the case heading" but "at no other point" mentions the defendant); *Bond v. Baggett*, No. 11-61108, 2012 WL 13129567, at *3 n.3, *5 (S.D. Fla. July 6, 2012) (dismissing, *inter alia*, defamation claims when the "only time [defendant] is mentioned is in the caption and the opening paragraph listing the Defendants")).[10] Plaintiff includes Madbits in the Complaint as a jurisdictional hook for his claim against Twitter.  The Court should not condone this gamesmanship.  *Berber v. Wells Fargo Bank, N.A.*, No. 16-

---

[9] As Twitter set forth in its Response to the Order to Show Cause, § 230 of the Communications Decency Act (47 U.S.C. § 230) also supports dismissal of this action.  D.E. 27.  Given the multiple, independent grounds for dismissal of Plaintiff's defamation claim, the Court can resolve this Motion and dismiss the complaint without reaching the issue of § 230 immunity.

[10] Plaintiff's single attempt to lump Twitter and Madbits together as "Defendants," who "made" "defamatory statements," D.E. 1 ¶ 63, is not only internally contradictory, *see id.* ¶¶ 52, 59–62, 64 (citing Twitter *alone* for false statements), it is legally meaningless.  To avoid dismissal, Plaintiff must make allegations distinguishing each Defendant's specific conduct; in failing to do so, Plaintiff likewise "fails to satisfy the minimum standard of Rule 8."  *Lane v. Capital Acquisitions & Mgmt., Co.,* No. 04-60602, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006).

24918, 2018 WL 10436232, at *4 (S.D. Fla. May 2, 2018) (dismissing case against "sham defendant" added only to defeat subject matter jurisdiction).

## III.   TWITTER IS ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER FLORIDA'S ANTI-SLAPP LAW

Finally, Twitter is entitled to its attorney's fees and costs under Florida's anti-SLAPP statute.  In order to protect defendants from being "dragged through the courts because of an exercise of constitutional rights," *Rosenthal v. Council on Am.-Islamic Rels., Fla., Inc.*, No. CACE 16-021357, 2017 WL 6390102, at *3 (Fla. Cir. Ct. Nov. 8, 2017), the Florida anti-SLAPP statute prohibits a plaintiff from filing a lawsuit that is (a) "*without merit*" and (b) brought "*primarily because [the defendant] has exercised the constitutional right of free speech in connection with a public issue,*" *Corsi*, 2021 WL 626855, at *11 (emphasis in original) (quoting Fla. Stat. § 768.295(3)).   This latter prong is broad, including any written statement "made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work."  Fla. Stat. § 768.295(2)(a); *see WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 561 (Fla. 4th DCA 2019) (Gross, J., concurring) ("[S]ection 768.295(2)(a) . . . demand[s] an expansive interpretation.").  If the court determines plaintiff's suit falls within the anti-SLAPP statute, "the statute awards a defendant fees and costs."  *Bongino*, 477 F. Supp. 3d at 1321.  "At bottom, Florida's [anti-SLAPP] statute is a garden variety fee shifting provision," used to vindicate the "fundamental state policy" of deterring frivolous suits and the burdensome costs of litigation at the expense of free speech.  *Id.* at 1323.[11]

Plaintiff's case violates the anti-SLAPP statute.  *First*, Plaintiff's suit is without merit: as held in *Bongino*, *Corsi*, and *Parekh*, which each granted attorney's fees and costs to defendants, a defamation suit that fails to state a claim as a matter of law on a motion to dismiss is likewise "without merit" under § 768.295(3).  *Bongino*, 477 F. Supp. 3d at 1322 ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute 768.295(3)."); *Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020) (affirming award); *Corsi*, 2021 WL 626855, at *11.  So too here has Plaintiff failed to state a claim for the reasons discussed in this

---

[11] Florida's anti-SLAPP fee-shifting provision "does not conflict with any Federal Rules of Civil Procedure and thus may apply in a federal court exercising diversity jurisdiction."  *Bongino*, 477 F. Supp. 3d at 1324; *see Corsi*, 2021 WL 626855, at *11–12.

Motion.  *Second*, Plaintiff's suit arises out of Twitter's free speech rights.  "[H]osting and moderating . . . matters of public concern" is the expression of the "constitutional right of free speech in connection with a public issue" for purposes of Florida's anti-SLAPP statute.  *Corsi*, 2021 WL 626855, at \*11.[12]  And further, Twitter's Explanations were specifically made "in connection with" a "magazine article" or "news report," here, the *NY Post* article.  Fla. Stat. § 768.295(2)(a); *see WPB Residents*, 284 So. 3d at 561 (Gross, J., concurring) ("[S]tatements made 'in connection with' an enumerated work" is a broadly sweeping "catchall phrase" separate from the enumerated works themselves.).

This lawsuit therefore sits squarely within the text of § 768.295, and an award of attorney's fees is mandatory under the statute.  Fla. Stat. § 768.295(4) ("The Court *shall award* the prevailing party reasonable attorney fees and costs . . . (emphasis added).); *Anderson v. Best Buy Stores, L.P.*, No. 5:20-cv-41, 2020 WL 5122781, at \*4 (M.D. Fla. July 28, 2020) ("[A]n award of attorney's fees and costs incurred in connection with the SLAPP motion itself is mandated.").[13]

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice and award Defendants their reasonable attorneys' fees and costs.

---

[12] Courts across the country have specifically held that, for purpose of anti-SLAPP analysis, a social media platform's content-moderation decisions arise out of or are made in connection with constitutional free speech. *See, e.g.*, *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (applying Texas anti-SLAPP law to Facebook's moderation practices); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 201–02 (2017) (same under California anti-SLAPP law).

[13] In the event this Court finds that Plaintiff's case violates the anti-SLAPP statute, Defendants will file a fees motion pursuant to the formal requirements of S.D. Fla. Local Rule 7.3.

Dated: April 20, 2021

By: /s/ *Kathleen R. Hartnett*
Kathleen R. Hartnett
California Bar No.: 314267
Email: khartnett@cooley.com
Admitted Pro Hac Vice
Kyle C. Wong
California Bar No.: 224021
Email: kwong@cooley.com
Admitted Pro Hac Vice
**COOLEY LLP**
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

-and-

Alexander J. Kasner
California Bar No.: 310637
Email: akasner@cooley.com
Admitted Pro Hac Vice
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 843 7400

-and-

By: /s/ *Jennifer Olmedo-Rodriguez*
Jennifer Olmedo-Rodriguez
Florida Bar No. 605158
Email: jennifer.olmedo-rodriguez@bipc.com
A. Sheila Oretsky
Florida Bar No. 31365
Email: sheila.oretsky@bipc.com
**BUCHANAN INGERSOLL & ROONEY PC**
2 South Biscayne Blvd, Suite 1500
Miami, FL  33131-1822
Telephone: 305 347 5900
Facsimile: 305 347 4089

*Attorneys for Defendants*

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request oral argument on this Motion. The Motion is potentially case dispositive and raises a number of important considerations as to the First Amendment and defamation law, and Defendants therefore believe that oral argument would assist the Court's decision-making process.  Defendants estimate that a total of one hour will be required for argument.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on April 20, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

By: *<u>/s/ Jennifer Olmedo-Rodriguez</u>*
        BUCHANAN INGERSOLL & ROONEY PC

4830-4531-4790, v. 1