**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:21-CV-20684-BLOOM/Otazo-Reyes**

JOHN PAUL MAC ISAAC,

                Plaintiff,

v.

TWITTER, INC*., et.al.,*

                Defendants.

_____/

**AMENDED**
**COMPLAINT FOR DEFAMATION**

COMES NOW, PLAINTIFF JOHN PAUL MAC ISAAC (hereinafter, "Plaintiff"), by and through undersigned counsel hereby sues DEFENDANTS, MADBITLS, LLC and TWITTER, INC. for defamation for making false and damaging statements and alleges as follows:

**A.  PARTIES, JURISDICTION & VENUE**

1.      This is an action for Defamation (Libel Per Se) and damages in excess of seventy-five thousand and 00/100 dollars ($75,000.00).

2.      This court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332(a).

3.      Plaintiff JOHN PAUL MAC ISAAC ("Plaintiff") is an individual over the age of 18 who is *sui juris*, resides in, and is a citizen of Lakewood, Colorado.

4.      Defendant MADBITS, LLC (hereinafter, "Defendant MADBITS") is a Limited Liability Company organized under the laws of the State of Florida with its principal place of business at 1355 Market Street Ste 900, San Francisco, CA 94103.  The Articles of Organization for Defendant MADBITS, LLC filed with the Florida Division of Corporations "Sunbiz" website on

1

November 30, 2012, is attached as EXHIBIT A. The 2020 Annual Report for Defendant

MADBITS, LLC showing its primary place of business is attached hereto as EXHIBIT B.

5.      Defendant TWITTER, INC. ("Defendant TWITTER") is a Corporation

incorporated under the laws of the State of Delaware with its principal place of business in 1355

Market Street Ste 900, San Francisco, CA 94103. A copy of the incorporation documents from the

Delaware Secretary of State is attached hereto as EXHIBIT C.

6.      General jurisdiction over Defendant MADBITS is proper as MADBITS is "at

home" in Florida, is a Florida limited liability company, upon information and belief, employs

Florida residents, and performs substantial commercial activities with residents in the State of

Florida. A copy of the Dun and Bradstreet Report on Defendant MADBITS is attached hereto as

EXHIBIT D.

7.      Personal jurisdiction over Defendant MADBITS is proper as per Florida Statute

§48.193(1)(a)(1) due to the fact that Defendant MADBITS is a Florida limited liability company,

upon information and belief, employs Florida residents, and performs substantial commercial

activities with residents in the State of Florida. *See* EXHIBIT D.

8.      General jurisdiction over Defendant TWITTER is proper as Defendant TWITTER

is registered as a foreign entity authorized to do business in the State of Florida, upon information

and belief, employs Florida residents, and performs substantial commercial activities with residents

in the State of Florida. A copy of Defendant TWITTER's authorization to do business in the State

of Florida attached hereto as EXHIBIT E.

9.      Personal jurisdiction over Defendant TWITTER is proper as per Florida Statute

§48.193(1)(a)(1) due to the fact that Defendant TWITTER is registered to do business in the State

of Florida, has maintained an office in Florida since 2015 (*see* disclosure on EXHIBIT E), upon

information and belief, employs Florida residents, and performs substantial commercial activities with residents in the State of Florida.

10.     Personal jurisdiction over Defendant TWITTER is proper as per Florida Statute §48.193(1)(a)(2) due to the fact that Defendant TWITTER posted defamatory materials concerning the Plaintiff on their website and through their mobile app, which materials were accessed in Florida, constituting the tortious act of defamation. Defendant TWITTER has committed intentional torts aimed at Plaintiff, the effects of which were suffered in Florida. Copies of internet posts showing access by Florida residents referring directly to Defendant TWITTER's actions are attached hereto as follows:

>   a.     Florida Resident and Twitter user "Celeta Quinn", attached hereto as EXHIBIT F.
>
>   b.     Florida Resident and Twitter user "Linda Norway", attached hereto as EXHIBIT G.
>
>   c.     Florida Resident and Facebook user "Fred Barnard", attached hereto as EXHIBIT H.
>
>   d.     Florida Resident and Facebook user "Susie Turner Kilpatrick", attached hereto EXHIBIT I.
>
>   e.     Florida Resident and Facebook user "Toby Kennedy", attached hereto as EXHIBIT J.

11.     Personal jurisdiction over Defendant TWITTER is proper as per Florida Statute §48.193(1)(a)(6)(a) due to the fact that Defendant TWITTER caused injury to Plaintiff with its defamatory materials while Defendant TWITTER was engaged in the solicitation and service of Florida residents, by means of advertising and otherwise, within the state of Florida. Defendant TWITTER reached beyond the borders of its state of incorporation and/or principal place of

business into Florida to conduct business and enter into contracts with residents of Florida that involve the knowing and repeated transmission of computer files over the internet. Copies of webpages from Defendant TWITTER showing that Defendant TWITTER's social media platform allows users to directly target paid advertising to Florida residents and accepts payment for doing so are attached hereto as EXHIBIT K.

12.     General and personal jurisdiction over Defendant TWITTER is also proper as Defendant MADBITS is the alter ego of Defendant TWITTER and, as such, all contacts and activities of Defendant MADBITS are imputed to Defendant TWITTER for jurisdictional purposes.

13.     Based on their intentional torts, office space, commercial activities, solicitations, and service in the State, Defendants should have reasonably anticipated being hailed into this Court, and therefore its Due Process has been observed and satisfied.

14.     Venue is proper in this District as, upon information and belief, Defendant TWITTER maintains an office at 78 SW 7th Street, Miami, Florida 33130.

15.     All conditions precedent to this action have been performed. Specifically, although not actually required to do so, Plaintiff provided Defendants with pre-suit notice pursuant to Florida Statute §770.01, *et seq*, copies of which is attached hereto as EXHIBIT L.

## B. STATEMENT OF CASE

16.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 15.

17.     Plaintiff is a private citizen who currently resides in Lakewood, Colorado and is a citizen of the State of Colorado.

18.     Plaintiff owned a small business named The Mac Shop, Inc. (the "Mac Shop") which was a Delaware corporation.

19.     Plaintiff was in the business of repairing Mac computers.

20.      Plaintiff is not and never has been a user/subscriber of the social media platform owned and operated by Defendant TWITTER.

21.      Defendant MADBITS is a single-member limited liability company wholly owned by Defendant TWITTER. Defendant MADBITS has no website of its own, lists the offices of Defendant TWITTER as its principal office, and the Secretary of Defendant MADBITS, as listed with the Florida Division of Corporations, is Vijaya Gadde, the "Legal, Policy and Trust & Safety Lead @Twitter." Upon information and belief, Defendant TWITTER makes all financial decisions for Defendant MADBITS. *See* EXHIBIT B. A copy of the Twitter page of Vijaya Gadde is attached hereto as EXHIBIT M.

22.      Upon information and belief, Defendant MADBITS is wholly controlled by Defendant TWITTER, to the point where Defendant MADBITS filed "Articles of Dissolution" with the Florida Secretary of State on January 13, 2015, listing as the "occurrence that resulted in the limited liability company's dissolution" that "LLC GOT ACQUIRED BY A PUBLIC COMPANY IN JULY 28, 2014. NO LONGER EXISTS AS SEPARATE ENTITY." A copy of said Articles of Dissolution is attached hereto as EXHIBIT N. Defendant MADBITS filed a Statement of Revocation of Dissolution on February 1, 2015, a copy of which is attached hereto as EXHIBIT O.

23.      It is Plaintiff's belief that Defendant MADBITS exists solely as Defendant TWITTER's alter ego in the State of Florida.

24.      Defendant TWITTER is a company that developed and maintains a social media platform used by more than 340 million people worldwide, 78 million of whom purportedly reside in the United States of America. Twitter Demographics as of October 28, 2020 from www.omnicoreagency.com attached as EXHIBIT P.

25.     On or about April 12, 2019, Plaintiff was asked to recover information from damaged Mac computers allegedly owned by Mr. Hunter Biden ("BIDEN"). Copy of Repair Authorization attached as EXHIBIT Q.

26.     On or about April 13, 2019, at Plaintiff's request, BIDEN returned to the Mac Shop with a Western Digital external hard drive to which Plaintiff could transfer the recovered data.

27.     Later that same day, on or about April 13, 2019, Plaintiff completed the recovery and called BIDEN to notify him of such and to request that he retrieve his recovered data.

28.     On or about April 17, 2019, Plaintiff sent an electronic invoice to BIDEN in the amount of $85.00. Copy of electronic invoice attached as EXHIBIT R.

29.     Plaintiff attempted to contact BIDEN at least one more time thereafter to request that he pay his invoice and retrieve his recovered data.

30.     BIDEN never returned to the Mac Shop to retrieve his recovered data nor did he pay his invoice.

31.     Pursuant to the terms of the Repair Authorization signed by BIDEN, "[e]quipment left with the Mac Shop after 90 days of notification of completed service will be treated as abandoned and you agree to hold the Mac Shop harmless for any damage or loss of property." *See* EXHIBIT Q.

32.     Starting in late July 2019 to October 14, 2020, Plaintiff had multiple interactions with the Federal Bureau of Investigation (the "FBI"), U.S. Congressional staff members, and Mr. Robert Costello, Esquire ("COSTELLO"), attorney for Rudolph Giuliani, Esquire ("GIULIANI").

33.     On or about December 9, 2019, the FBI served a federal grand jury subpoena on Plaintiff requiring he turn over the laptop and hard drive, which Plaintiff did on that day. Copy of subpoena attached as EXHIBIT S.

34.     In August 2020, Plaintiff connected with COSTELLO to whom he provided a copy of the recovered data.

35.     Plaintiff specifically asked COSTELLO to not identify him when discussing the recovered data with GIULIANI as Plaintiff desired to remain anonymous.

36.     Plaintiff never spoke with GIULIANI but was assured by COSTELLO that he had conveyed Plaintiff's wish to remain anonymous to GIULIANI.

37.     After August 26, 2020 but prior to October 14, 2020, upon information and belief, GIULIANI provided information from the recovered data to the New York Post newspaper ("NY POST").

38.     On October 13, 2020, Plaintiff received a call from Mr. George Mesires,[1] identifying himself as BIDEN's attorney, asking if Plaintiff still had possession of his client's laptop and following up thereafter with an email to the Plaintiff. See copy of follow-up email from Mr. Mesires to Plaintiff attached as EXHIBIT T.

39.     On October 14, 2020, at approximately 5:00 AM, the NY POST published an exposé about the contents of BIDEN's recovered data. Shortly thereafter, the NY Post "updated" the online version of the exposé. A copy of updated NY POST exposé, as it currently appears on the NY Post website, is attached as EXHIBIT U.

40.     Plaintiff was not involved in the disclosure of the recovered data to the NY POST, did not promote the disclosure in any way, nor did the Plaintiff authorize the disclosure.

41.     While Plaintiff verified how he came into possession of the recovered data to the NY POST, Plaintiff was unaware of the details of the NY POST exposé, when the NY POST

---

[1] George Mesires is a partner in the Chicago office of Faegre Drinker Biddle & Reath LLP.

exposé was going to be published, and Plaintiff explicitly told the NY POST that he did not want to be identified.

42.     Plaintiff did not authorize the disclosure of his identity by GIULIANI, COSTELLO, or the NY POST, did not authorize the disclosure of the information, nor was he involved in any determinations or strategy regarding the disclosure of the information.

43.     Plaintiff was not explicitly identified in the NY POST exposé but was, instead, referred to as the Delaware computer repair shop "store's owner."

44.     NY POST, as part of its exposé and without the consent of Plaintiff, published a photo of the Repair Authorization identified in EXHIBIT Q without blurring the business name thereby notifying the public where BIDEN had dropped off his laptop. Copies of archive version of NY Post exposé and source codes showing original picture compared with source codes showing current version of picture attached as Composite EXHIBIT V.[2]

45.     Also on October 14, 2020, as a result of the NY POST's mistaken disclosure, Plaintiff's identity was revealed by media outlets, including writers from the Daily Beast purportedly investigating the NY POST exposé. Copy of Daily Beast article about Plaintiff attached as EXHIBIT W.[3]

46.     In an attempt to clarify the inaccuracies about the Plaintiff published in the article by the Daily Beast, Plaintiff's counsel wrote a statement and approached media outlets with that

---

[2] As Plaintiff files this Amended Complaint without the benefit of being permitted third party discovery, for purposes of informing the Court of the materials contained in the original NY Post exposé the Plaintiff includes in Composite Exhibit Q, a collection of documents proving that the article banned by Defendant directly and ascertainably identified Plaintiff.

[3] The Daily Beast article was the result of Plaintiff being accosted by a group of journalists asking him questions about his involvement in the NY Post exposé. Plaintiff, concerned about his and his family's wellbeing, attempted to respond in ways that would protect them but, not having ever been the subject of media inquiry, his responses come across as confused and contradictory. In fact, his seemingly confused and contradictory statements were made as a result of his inexperience with the media and his lifelong status as a private figure.

statement. The Wall Street Journal did not return communications from Plaintiff's counsel and the Washington Post responded that they do not think it "would be a good fit" for the news organization.  Copy of clarifying statement by Plaintiff's counsel attached as <u>EXHIBIT X</u> and email from Washington Post attached as <u>EXHIBIT Y</u>.

47.     On October 14, 2020, Defendant locked the NY POST's account as the NY POST attempted to post and disseminate its exposé on the social media platform owned and operated by Defendant.

48.     In addition to locking the NY POST's account, Defendant TWITTER published a statement that it was blocking dissemination of the NY POST's story because it violated Defendant TWITTER's rules against "distribution of hacked material."[4] Notifications by Defendant TWITTER directly related to the NY POST story attached as <u>EXHIBIT Z</u>.

49.     Defendant TWITTER published its statement to a third-party, the New York Post. *See* <u>EXHIBIT Z</u>.

50.     Further actions taken by Defendant TWITTER in response to the NY POST's exposé included limiting the distribution of the exposé by others on its social media platform while

---

[4] Specifically, the Defendant TWITTER's statement said:

      a.   "YOUR ACCOUNT HAS BEEN LOCKED.
           What happened?

           Violating our rules against distribution of hacked materials.

           We don't permit the use of services to directly distribute content obtained through hacking that
           contains private information, may put people in physical harm or danger, or contains trade secrets."

      b.   "We want to provide much needed clarity around the actions we've taken this morning with respect to
          two NY Post articles that were first tweeted this morning."

      c.   "The images contained in the articles include personal and private information – like email address
          and phone numbers – which violate our rules."

      d.   "As noted this morning, we also currently view materials included in the articles as violations of our
          Hacked Materials Policy. We don't condone attempts to compromise or infiltrate computer systems **for**
          **malicious purposes**." (**emphasis added**)

notifying its worldwide users that the material contained in the NY POST exposé is in violation of its "hacked materials policy" or as being "potentially harmful" thereby further spreading the belief among its users, upon information and belief, including Florida resident users, that the Plaintiff is a hacker. Copies of examples attached as EXHIBIT AA.

51.     Defendant TWITTER also blocked the dissemination of the NY Post exposé notifying the third-party user that the "Tweet couldn't be sent because this link has been identified by Twitter or our partners as being potentially harmful." See example attached as EXHIBIT BB.

52.     Defendant TWITTER continued to publish is false statements after Plaintiff had been identified as the source of the recovered data.

53.     Defendant TWITTER's publications to its third-party users were intended to be and actually were accessible to its users worldwide, including those users of its social media platform located in the State of Florida. *See* time of publication of Daily Beast article at EXHIBIT W (3:52 PM ET) and time of publication of Defendant's statement to users at EXHIBIT Z (7:44 PM ET).

54.     Defendant TWITTER was and continues to be able to publish information on its platform that is accessible to a worldwide audience.

55.     Plaintiff, on the other hand, was unable to utilize most members of the mainstream media sources to defend himself.

56.     Defendant TWITTER's Distribution of Hacked Materials Policy ("Hacked Materials Policy") defines a "hack" as "an intrusion or access of a computer, network, or electronic device that was unauthorized or exceeded authorized access." Copy of Defendant TWITTER's Distribution of Hacked Material's Policy attached as EXHIBIT CC.

57.     The Hacked Materials Policy further defines "hacked materials" as "information obtained through a hack." *See* EXHIBIT CC.

58.     Plaintiff was the individual who obtained the information published by the NY POST which was identified as "hacked material" by Defendant TWITTER.

59.     Despite request, Defendant TWITTER has not issued a statement of any kind indicating that Defendant TWITTER does not believe Plaintiff is a hacker.

60.     On November 17, 2020, during testimony before the United States Senate Judiciary Committee, the Chief Executive Officer of Defendant TWITTER, Mr. Jack Dorsey ("DORSEY"), made the following statements specifically relating to the Defendant TWITTER's actions toward the NY POST's account on its social media platform (Copy of Testimony attached as EXHIBIT DD):

a.     "We did an under our terms of service, which as you know, everyone agrees to when they sign up for Twitter. This was a policy around distribution of hacked materials. We did not want Twitter to be a distribution point for hacked materials." *See* Testimony at 55:55.

b.     "We realize that and we recognize [the suppression and labeling of the information] as a mistake that we made both in terms of the intention of the policy and also the enforcement action of not allowing people to share it publicly or privately, which is why we corrected it within 24 hours." *See* Testimony at 56:21.

c.     "It was a business decision." *See* Testimony at 57:42.

d.     "Our policy was focused on distribution of the actual hack materials and the New York Times…" *See* Testimony at 2:06:42.

e.     "And in the New York Times case, we interpreted as reporting about the hacked materials, not distribution of [inaudible 02:06:58]." *See* Testimony at 2:06:51.

f.     "No. And that account is not suspended, it fell afoul of the hacked materials policy, we realized that there was an error in that policy and the enforcement and we corrected that within 24 hours." *See* Testimony at 2:08:51.

11

61.     Defendant TWITTER's actions and statements had the specific intent to communicate to its users, including, upon information and belief, its Florida resident users, that Plaintiff is a hacker and/or hacked the published materials.

62.     The term "hacker" is widely viewed by people in society as disparaging and as a criminal act.

63.     According to Merriam-Webster, a "hacker" is "a person who illegally gains access to and sometimes tampers with information in a computer system."

64.     Plaintiff is not a hacker and the information obtained from the computer does not constitute hacked materials because Plaintiff lawfully gained access to the computer, first with the permission of its owner, BIDEN, and then, after BIDEN failed to retrieve the recovered data despite Plaintiff's requests, in accordance with the Mac Shop's abandoned property policy.

65.     Plaintiff, as a direct result of Defendant TWITTER's actions and statements, is now widely considered a hacker and, beginning on the same day Defendant TWITTER categorized the Plaintiff as a hacker, Plaintiff began to receive negative reviews regarding his business practices as well as threats to his person and property. Yelp reviews and personal threats attached as EXHIBIT EE.

66.     Further evidence of the harm suffered by Plaintiff as a direct result of Defendant TWITTER's false statements is that the Plaintiff had to close his business.

67.     Defendant TWITTER seemingly makes policy decisions based on whether the topic impacts a more liberal-leaning topic versus a more conservative-leaning topic which includes, but is certainly not limited to: (a) New York Times article, "Long-Concealed Records Show Trump's Chronic Losses and Years of Tax Avoidance," published on September 27, 2020 (article attached as EXHIBIT FF); (b) The Guardian article, "US Police and Public Officials Donated to Kyle Rittenhouse, Data Breach Reveals," published on April 16, 2021 (article attached as EXHIBIT GG);

USA Today article, "Insurrection Fundraiser: Capitol Riot Extremists, Trump Supporters Raise Money for Lawyer Bills Online," published on March 27, 2021 (article attached as EXHIBIT HH); (d) false identification and doxing of Mr. Peter Weinberg for alleged assault of young girl handing out BLM flyers on Capital Crescent Trail in Bethesda (article about the doxing allowed by Defendant attached as EXHIBIT II); (e) NY Post article, "Marxist BLM Leader Buys $1.4 Million Home in Ritzy LA Enclave," published April 10, 2021 (copy of article attached as EXHIBIT JJ); (f) doxing of Sam Johnson, CEO of VisuWell, for allegedly harassing a teen for wearing a dress (doxing also includes the name of his spouse, Jill Johnson, who was not involved in the incident) (copy of doxing tweet by Kathy Griffin attached as EXHIBIT KK); (g) allowing racial slur "#uncletim" in reference to Senator Tim Scott to "trend" before blocking the trend as a result of backlash (copy of article attached as EXHIBIT LL); and (h) false identification of retired firefighter, David Quintaville, as being an active participant in the Capitol insurrection (copy of article attached as EXHIBIT MM).

68.     Based on what seems to be a selective enforcement of its policies, upon information and belief, Defendant TWITTER acted with malicious intent to harm the Plaintiff by publishing the defamatory statement.

69.     Alternatively, upon information and belief, Defendant TWITTER was grossly negligent in publishing the defamatory statement about the Plaintiff.

70.     Defendant TWITTER knew or should have known that its publication that the NY POST's story contains hacked materials would cause harm to the Plaintiff, the identified source of the information.

## C. COUNT 1: DEFAMATION AND DEFAMATION PER SE

71.     Plaintiff incorporates by reference all allegations contained in Paragraphs 1 – 70.

72.     Defendant TWITTER, through its social media platform, has published false and defamatory statements concerning Plaintiff without privilege to do so.

73.     The false and defamatory statements included, but are not limited to, allegations that:[5]

    a.   the information published by NY POST, which originally came from the Plaintiff, constitutes hacked materials thereby identifying the Plaintiff as a hacker;

    b.   the Plaintiff may have put people in physical harm;

    c.   the Plaintiff may have put people in danger;

    d.   the Plaintiff may have violated trade secret laws

74.     The defamatory statements made by Defendant TWITTER were made negligently; without reasonable care as to their truth or falsity; with knowledge of their falsity; and/or with reckless disregard for the truth.

75.     The defamatory statements made by Defendant TWITTER were published without privilege to third parties, including, upon information and belief, thousands (or more) of Florida residents.

76.     The Plaintiff is not a public figure, nor is he a limited public figure for purposes of defamation analysis.

77.     Defendant TWITTER's statements allege that Plaintiff committed crimes including (but not limited to) computer hacking of the son of Democratic Party nominee, now President, Joseph Biden, thereby implying that Plaintiff was part of an attempt to undermine American democracy and the 2020 Presidential election.

78.     Defendant TWITTER's statements are of the kind that would tend to, and in fact did, prejudice the Plaintiff in the eyes of a substantial and respectable minority of his profession and the community at large, including those located in Florida.

---

[5] *See* Footnote 5 on pages 7 and 8 of this Amended Complaint.

79.     Upon information and belief, Defendant TWITTER made the false statements about Plaintiff with the malicious intent to harm the Plaintiff or, alternatively, with reckless disregard for the harm the false statements would cause to the Plaintiff.

80.     Defendant TWITTER, through its social media platform, published and/or communicated the falsehoods to third parties.

81.     Defendant TWITTER knew or should have known such false statements would likely result in material and substantial injury to Plaintiff and his business practices, as the statements call into question the security and proper operation of Plaintiff's business. Additionally, the above statements have subjected and continue to subject the Plaintiff to distrust, scorn, ridicule, hatred, and contempt. As such, the defamatory statements constitute defamation *per se*.

82.     Defendant TWITTER's false statements impute to the Plaintiff conduct, characteristics, and/or conditions incompatible with the proper exercise of Plaintiff's lawful business, trade, and/or profession, and that Plaintiff has committed an infamous crime[6].

83.     As a direct and proximate result of the defamatory statements made by Defendant TWITTER, Plaintiff has suffered, and continues to suffer, substantial damages.

84.     Upon information and belief, Defendant TWITTER intended to harm the Plaintiff with the false statements.

85.     Based on the statements made by Defendant TWITTER and DORSEY, *supra*, upon information and belief, Defendant TWITTER had actual knowledge of the wrongfulness of their conduct and understood the high probability that injury or damage would result to Plaintiff and, despite such knowledge, have issued no retraction or rehabilitation of Plaintiff such as would repair that damage. Accordingly, and in conformity with Florida Statute §768.72, Plaintiff will seek leave of

---

[6] See generally Florida Statutes Chapter 815 "Computer Related Crimes". Computer-related crimes carry felony charges in Florida.

Court to seek an award of punitive damages against Defendant. In the alternative, Plaintiff will seek leave of court to seek punitive damages under Florida Statute §768.72 because Defendant TWITTER'S actions, as described above, were so reckless or wanting in care that they constituted a conscious disregard or indifference to the rights of Plaintiff.

86.     Plaintiff has suffered special damages including but not limited to educational expenses, due to losing his old career and requiring retraining, in the current amount of $2,621,11. An invoice for tuition costs attached as EXHIBIT NN.

### *Prayer for Relief*

WHEREFORE, the Plaintiff JOHN PAUL MAC ISAAC prays for judgment against the Defendants as follows:

(a)     Awarding Plaintiff all compensatory damages including consequential and incidental damages as a result of Defendant TWITTER's wrongdoing in an amount to be determined at Trial; and Plaintiff reserves the right to seek leave of Court to seek punitive damages against Defendant TWITTER in accordance with the facts and claims stated herein and established through discovery.

(b)     Awarding Plaintiff all attorneys' fees and costs associated with litigating this case.

(c)     Requiring Defendant TWITTER to make a public retraction of all false statements and to issue a public apology to Plaintiff.

(d)     Such further relief as this Court deems just and proper.

### D.  DEMAND FOR A JURY TRIAL

Plaintiff prays for a Jury Trial on all issues so triable.

Respectfully submitted this **10th day of May, 2021**,

/s/ *Brian R. Della Rocca*

Brian R. Della Rocca, Esquire
Compass Law Partners
51 Monroe Street, Suite 408
Rockville, Maryland 20850
Ph: (240) 454-1013
Fax: (301) 740-2297
bdellarocca@compass-law.com

*Motion to Appear Pro Hac Vice to be filed*

/s/ *Wesley R. Harvin II*

Wesley R. Harvin, II, Esquire
Fla Bar ID #52706
Harvin & Harvin LLP
900 E. Ocean Blvd. Suite 210B
Stuart, FL 34994
(772) 286-3630
wesharvin@gmail.com

*Attorneys for John Paul Mac Isaac*