UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-CV-20684-BLOOM/Otazo-Reyes

JOHN PAUL MAC ISSAC,

               Plaintiff,

    v.

TWITTER, INC.,

               Defendant.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................. 2

    A.    The Parties ........................................................................................... 2

    B.    The *NY Post* Article ............................................................................ 2

    C.    Twitter Applies Its Content Moderation Policies to the Article .......................... 3

    D.    Plaintiff Sues Twitter for Its Content Moderation ................................. 3

LEGAL STANDARDS ................................................................................................... 4

ARGUMENT .................................................................................................................. 5

I.      PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION ................................... 5

    A.    Twitter's Explanations, Not Plaintiff's Characterizations, Are the Proper
Subject of Analysis ............................................................................ 5

    B.    Twitter's Explanations Are Not "Of and Concerning" Plaintiff ........................... 6

    C.    Twitter's Explanations Are Not Defamatory *Per Se* ............................................ 8

        1.    The Explanations do not state that Plaintiff is a hacker or criminal .......... 9

        2.    The Explanations do not state that Plaintiff may have put people in
harm, in danger, and violated trade secret laws ...................................... 10

    D.    Plaintiff Fails to Plead Special Damages from the Alleged Defamation ............ 11

    E.    Plaintiff Fails to Plead Falsity of the Explanations ............................................ 13

    F.    Plaintiff Fails to Plead Publication by Twitter .................................................... 14

    G.    Twitter's Explanations Were Not Made with Actual Malice or Through
Negligence ........................................................................................ 15

        1.    Plaintiff Is a Limited Public Figure ......................................... 15

        2.    Plaintiff Does Not Plead Actual Malice ..................................... 17

II.    PLAINTIFF'S CLAIM SHOULD BE DISMISSED WITH PREJUDICE .................... 18

III.   TWITTER IS ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER
FLORIDA'S ANTI-SLAPP LAW ................................................................... 19

CONCLUSION ............................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*100 Plus Animal Rescue, Inc. v. Butkus,*
    2020 WL 5514404 (S.D. Fla. Aug. 15, 2020)...........................................................................16

*Aflalo v. Weiner,*
    2018 WL 3235529 (S.D. Fla. July 2, 2018)..........................................................8, 10, 14, 15

*Allen v. Ocwen Loan Servicing, LLC,*
    2018 WL 1795460 (S.D. Fla. Feb. 16, 2018) ........................................................................2

*Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.,*
    418 F. Supp. 3d 1075 (S.D. Fla. 2019) ................................................................................5

*Anderson v. Best Buy Stores, L.P.,*
    2020 WL 5122781 (M.D. Fla. July 28, 2020) ....................................................................20

*Army Aviation Heritage Found. & Museum, Inc. v. Buis,*
    504 F. Supp. 2d 1254 (N.D. Fla. 2007)...............................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..............................................................................................................4

*Bartholomew v. YouTube, LLC,*
    17 Cal. App. 5th 1217 (2017) ..............................................................................................11

*Basile v. Prometheus Glob. Media,*
    225 F. Supp. 3d 737 (N.D. Ill. 2016) ...............................................................................9, 10

*Bell v. Johnson Publ'g Co.,*
    2018 WL 357888 (M.D. Ga. Jan. 10, 2018) .........................................................................7

*Berisha v. Lawson,*
    378 F. Supp. 3d 1145 (S.D. Fla. 2018) ...................................................................15, 16, 18

*Berisha v. Lawson,*
    973 F.3d 1304 (11th Cir. 2020) .............................................................................16, 17, 18

*Blake v. Giustibelli,*
    182 So. 3d 881 (Fla. 4th DCA 2016)...................................................................................11

*Bongino v. Daily Beast Co.,*
    477 F. Supp. 3d 1310 (S.D. Fla. 2020) ...................................................................... *passim*

## <u>TABLE OF AUTHORITIES</u>
(cont'd)

**Page(s)**

*Borislow v. Canaccord Genuity Grp. Inc.*,
   2014 WL 12580259 (S.D. Fla. June 27, 2014) ........................................................5

*Bryant v. Dupree*,
   252 F.3d 1161 (11th Cir. 2001) ...........................................................................18

*Colodny v. Iverson, Yoakum, Papiano & Hatch*,
   936 F. Supp. 917 (M.D. Fla. 1996) ...............................................................9, 10

*Corsi v. Newsmax Media, Inc.*,
   2021 WL 626855 (S.D. Fla. Feb. 12, 2021) ................................................ *passim*

*Costa v. Celebrity Cruises, Inc.*,
   768 F. Supp. 2d 1237 (S.D. Fla. 2011) ...............................................................18

*Cox Texas Newspapers, L.P. v. Penick*,
   219 S.W.3d 425 (Tex. Ct. App. 2007) ...................................................................8

*Crenshaw v. Lister*,
   556 F.3d 1283 (11th Cir. 2009) .............................................................................5

*Croixland Props. Ltd. P'ship v. Corcoran*,
   174 F.3d 213 (D.C. Cir. 1999) ..............................................................................6

*Cross v. Facebook, Inc.*,
   14 Cal. App. 5th 190 (2017) ................................................................................20

*Daniels v. HSN, Inc.*,
   2020 WL 533927 (M.D. Fla. Feb. 3, 2020) .........................................................12

*Deripaska v. Associated Press*,
   282 F. Supp. 3d 133 (D.D.C. 2017) ......................................................................6

*Don King Prods., Inc. v. Walt Disney Co.*,
   40 So. 3d 40 (Fla. 4th DCA 2010) ......................................................................17

*Donald J. Trump for President Inc. v. CNN Broad., Inc.*,
   500 F. Supp. 3d 1349 (N.D. Ga. 2020) ...............................................................18

*Early v. Toledo Blade*,
   720 N.E.2d 107 (Ohio App. 1998) ........................................................................8

*Estes v. Rodin*,
   259 So. 3d 183 (Fla. 3d DCA 2018) ...................................................................14

### TABLE OF AUTHORITIES
(cont'd)

**Page(s)**

*Falic v. Legg Mason Wood Walker, Inc.*,
    347 F. Supp. 2d 1260 (S.D. Fla. 2004) ..................................................................11, 13

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)......................................................................................................17

*Gertz v. Robert Welch Inc.*,
    418 U.S. 323 (1974)....................................................................................................11

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) ................................................................................6, 7

*Isaac v. Twitter, Inc.*,
    No. 1:20-cv-25264-BB (S.D. Fla.)........................................................................2, 3, 4

*Jews For Jesus, Inc. v. Rapp*,
    997 So. 2d 1098 (Fla. 2008).........................................................................................5

*JP Morgan Chase Bank Nat'l Ass'n v. Colletti Invs., LLC*,
    199 So. 3d 395 (Fla. 4th DCA 2016) .........................................................................11

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
    856 F.3d 106 (D.C. Cir. 2017)......................................................................................5

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006).........................................................................................6

*Klayman v. City Pages*,
    2015 WL 1546173 (M.D. Fla. Apr. 3, 2015) ............................................................17

*Klayman v. Jud. Watch, Inc.*,
    22 F. Supp. 3d 1240 (S.D. Fla. 2014) ...........................................................10, 13, 14

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) .......................................................................20

*Laub v. Horbaczewski*,
    2019 WL 3492402 (C.D. Cal. July 30, 2019) .............................................................9

*Leavitt v. Cole*,
    291 F. Supp. 2d 1338 (M.D. Fla. 2003)......................................................................12

*Marder v. TEGNA Inc.*,
    2020 WL 3496447 (S.D. Fla. June 29, 2020) ..........................................................5, 14

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Masson v. New Yorker Mag., Inc.*,
   501 U.S. 496 (1991)..................................................................................................17

*McDougal v. Fox News Network, LLC*,
   489 F. Supp. 3d 174 (S.D.N.Y. 2020)......................................................................18

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .............................................................................15, 17

*Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*,
   811 So. 2d 841 (Fla. 4th DCA 2002) .......................................................................15

*Miller v. Sawant*,
   2020 WL 7714414 (W.D. Wash. Dec. 29, 2020) ......................................................8

*Murray v. Pronto Installations, Inc.*,
   2020 WL 6728812 (M.D. Fla. Nov. 16, 2020) ........................................................10

*Ortega Trujillo v. Banco Cent. Del Ecuador*,
   17 F. Supp. 2d 1334 (S.D. Fla. 1998) .......................................................................6

*Parekh v. CBS Corp.*,
   820 F. App'x 827 (11th Cir. 2020) ..........................................................................19

*Peck v. Tribune Co.*,
   214 U.S. 185 (1909).....................................................................................................7

*Perruzzi v. Ferretti*,
   564 So. 2d 621 (Fla. 4th DCA 1990) .........................................................................6

*In re Phila. Newspapers, LLC*,
   2011 WL 13192725 (E.D. Pa. July 20, 2011)............................................................7

*Randall v. Scott*,
   610 F.3d 701 (11th Cir. 2010) ...................................................................................4

*Readon v. WPLG, LLC*,
   2021 WL 1395240 (Fla. 3d DCA Apr. 14, 2021) ....................................................13

*Rosenblatt v. Baer*,
   383 U.S. 75 (1966).......................................................................................................6

*Rosenthal v. Council on Am.-Islamic Rels., Fla., Inc.*,
   2017 WL 6390102 (Fla. Cir. Ct. Nov. 8, 2017).......................................................19

## TABLE OF AUTHORITIES
(cont'd)

Page(s)

*Rubinson v. Rubinson*,
    474 F. Supp. 3d 1270 (S.D. Fla. 2020) ....................................................9, 10

*Schiller v. Viacom, Inc.*,
    2016 WL 9280239 (S.D. Fla. Apr. 4, 2016) ............................................9

*Schwartz v. NCL (Bahamas), Ltd.*,
    2009 WL 1591230 (S.D. Fla. June 4, 2009) ..........................................12

*Scott v. Experian Info. Sols., Inc.*,
    2018 WL 3360754 (S.D. Fla. June 29, 2018) ....................................4, 16

*Silvester v. Am. Broad. Cos.*,
    650 F. Supp. 766 (S.D. Fla. 1986) ..........................................................8

*Simon v. Shearson Lehman Bros., Inc.*,
    895 F.2d 1304 (11th Cir. 1990) ............................................................12

*Sloan v. Shatner*,
    2018 WL 3769968 (M.D. Fla. June 22, 2018) ....................................7, 15

*Song Fi, Inc. v. Google Inc.*,
    2018 WL 2215836 (N.D. Cal. May 15, 2018) ......................................11

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*,
    2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019) ........................................8

*Stewart v. Sun Sentinel Co.*,
    695 So. 2d 360 (Fla. 4th DCA 1997) ....................................................5

*Thomas v. Jacksonville Tele., Inc.*,
    699 So. 2d 800 (Fla. 1st DCA 1997) ....................................................6

*Tobinick v. Novella*,
    2015 WL 1191267 (S.D. Fla. Mar. 16, 2015) ......................................12

*Tobinick v. Novella*,
    848 F.3d 935 (11th Cir. 2017) ..............................................................15

*Turner v. Wells*,
    198 F. Supp. 3d 1355 (S.D. Fla. 2016) ......................................... *passim*

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ............................................................16

# TABLE OF AUTHORITIES
(cont'd)

**Page(s)**

*Vantassel-Matin v. Nelson,*
  741 F. Supp. 698 (N.D. Ill. 1990) ........................................................8

*Warner v. Schmidt,*
  2011 WL 2784492 (M.D. Fla. July 15, 2011) ........................................5

*Wolfson v. Kirk,*
  273 So. 2d 774 (Fla. 4th DCA 1973) ....................................................8

*WPB Residents for Integrity in Gov't, Inc. v. Materio,*
  284 So. 3d 555 (Fla. 4th DCA 2019) ..............................................19, 20

*Yahav Enters. LLC v. Beach Resorts Suites LLC,*
  2016 WL 111361 (S.D. Fla. Jan. 11, 2016) ........................................19

*Yow v. Nat'l Enquirer, Inc.,*
  550 F. Supp. 2d 1179 (E.D. Cal. 2008) ................................................6

*Zimmerman v. Buttigieg,*
  2021 WL 694797 (M.D. Fla. Feb. 23, 2021) ......................................15

**Statutes**

Communications Decency Act § 230 (47 U.S.C. § 230) ........................18

Fla. Stat.
  § 768.295(2)(a) ....................................................................19, 20
  § 768.295(3) ...............................................................................19
  § 768.295(4) ...............................................................................20
  § 770.01.......................................................................................12
  § 815...........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................15

Fed. R. Civ. P. 12(b)(6).....................................................................1, 4

S.D. Fla. Local Rule 7.3 ....................................................................20

2 Robert D. Sack, Sack on Defamation § 16.2.1 (5th ed. 2017)............5

David Elder, Defamation: A Lawyer's Guide § 1:30 (2020).................7

Rodney A. Smolla, 1 Law of Defamation § 4:40.50 (2d ed. 2020)........6

Defendant Twitter, Inc. ("Twitter") hereby moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff John Paul Mac Isaac's Amended Complaint (the "AC"), D.E. 44, with prejudice, and seeks recovery of reasonable attorney's fees and costs under Florida's anti-SLAPP law.

## PRELIMINARY STATEMENT

For the third time, Plaintiff, the former owner of a computer repair shop in Delaware, has filed a nonviable complaint for defamation *per se* against Twitter based on its good faith decision to prevent dissemination of an October 14, 2020 *New York Post* ("*NY Post*") article for violations of Twitter's content moderation policies.  Twitter previously filed a motion to dismiss (D.E. 39) identifying multiple, independent grounds for dismissal.  Plaintiff's AC fails to cure these defects. Put simply, Plaintiff cannot plead defamation where no defamation exists.

The underlying *NY Post* article at issue reported on and reproduced documents purportedly obtained from the laptop of Hunter Biden ("Mr. Biden"), son of then-presidential candidate Joe Biden.  The *NY Post* indicated that these documents originated from the unidentified owner of a computer repair shop in Delaware who had possession of the laptop.  Plaintiff claims that Twitter defamed him in three public Tweets that explained its decision to block the article on its platform ("Public Explanation"), and in a private notification to the Twitter account holder who published the content ("Private Explanation") (collectively, "Explanations").

The AC largely repeats the prior Complaint's allegations, with the addition of a few tangential details about the *NY Post* article and Plaintiff's alleged interaction with Mr. Biden; concessions of Plaintiff's voluntary engagement with the media; and deficient information about claimed damages.  These new allegations do not cure the fatal defects Twitter identified in its original motion to dismiss.  Rather, the AC should be dismissed with prejudice because Twitter's Explanations do not meet ***any*** of the elements required of a defamation claim.  The Explanations do not concern or identify Plaintiff or his business by name or implication.  They relate to violations of Twitter's platform rules, not criminal conduct.  Plaintiff does not adequately plead the requisite special damages.  And Plaintiff has not adequately pleaded that the Explanations were false, published, or made with actual malice.  Each of these failures is independently fatal.

Accordingly, Twitter respectfully requests that the Court dismiss Plaintiff's AC with prejudice and award it attorney's fees under Florida's anti-SLAPP statute.

## BACKGROUND

### A.      The Parties

Plaintiff John Paul Mac Isaac owned The Mac Shop, Inc., a now-defunct Delaware business that repaired personal computers.  D.E. 44 ¶¶ 18–19.  Plaintiff alleged as recently as December 2020 that he was a resident of Delaware, *see Isaac v. Twitter, Inc.*, No. 1:20-cv-25264-BB (S.D. Fla.), D.E. 5 at 2, but now claims to reside in Colorado, D.E. 44 ¶ 3.

Twitter operates a global platform for public self-expression and conversation.  *See* D.E. 44 ¶ 24.  Twitter's mission is to give people the power to create and share ideas and information instantly and without barriers.  Its platform is used by hundreds of millions of people worldwide. *Id.*  In order to post content on the Twitter platform, an individual must agree to Twitter's User Agreement, including its Terms of Service and the Twitter Rules.  *See, e.g.*, *id.* ¶ 48 & n.4; D.E. 44-29 (including link to Twitter Rules).  Twitter enforces rules for platform content, including violations of its User Agreement, such as the unauthorized dissemination of personal information. *See* D.E. 44-29 at 2–6.

### B.      The *NY Post* Article

On October 14, 2020, the *NY Post* published an article entitled, "Smoking-gun email reveals how Hunter Biden introduced Ukrainian businessman to VP dad."  D.E. 44-21 at 2 ("Article").[1]   The Article claimed the *NY Post* had obtained materials "extracted from the computer" of Mr. Biden, *id.* at 3, and purported to reproduce many of these documents, including Mr. Biden's business and personal emails, contact information, and family and personal photographs. *Id.* at 3–10.  The documents were, according to the Article, "contained in a massive trove of data recovered from a laptop computer," which had been "dropped off at a repair shop in Biden's home state of Delaware in April 2019."  *Id.* at 3.  The Article stated that the repair shop owner (unnamed in the Article) informed the *NY Post* that the customer "never paid for the service or retrieved [the laptop]," *id.*, and that the shop owner "made a copy of the hard drive and later gave it to former Mayor Rudy Giuliani's lawyer, Robert Costello."  *Id.* at 5.[2]   The Article further

---

[1] "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."  *Allen v. Ocwen Loan Servicing, LLC*, 2018 WL 1795460, at *2 (S.D. Fla. Feb. 16, 2018).   Unless otherwise indicated, all internal case citations are omitted.

[2] Plaintiff attaches the alleged contract governing the repair, which does not authorize disclosure of abandoned property but rather only disclaims "damage or loss of property."  D.E. 44-17 at 2.

stated that "Steve Bannon, former adviser to President Trump," informed the *NY Post* about the hard drive's existence, and Giuliani then "provided The Post with a copy" of the drive. *Id.* at 5.

Later that same day, Plaintiff spoke for nearly an hour with a "group of reporters," including a journalist for *The Daily Beast*. D.E. 44-23 at 2–7. *The Daily Beast* reported that Plaintiff confirmed he was the "shop owner" from the *NY Post* Article, had a "medical condition that prevented him from actually seeing who dropped off the laptop," and had "made a copy of the hard drive for the purposes of personal protection." *Id.*

### C.   Twitter Applies Its Content Moderation Policies to the Article

Concurrent with its publication of the Article on October 14, 2020, the *NY Post* "attempted to post and disseminate" the Article using the *NY Post*'s Twitter account. D.E. 44 ¶ 47. That same day, Twitter determined that the dissemination of the Article (and information from the laptop) violated Twitter's policy against distribution of hacked materials and Twitter's private and personal information policy, and it took several subsequent actions:

*First*, Twitter prevented retweeting of the Article when users attempted to share it on Twitter's platform. D.E. 44 ¶ 51; D.E. 44-26 at 2. As a result, Twitter users could not access, distribute, or share the Article on the platform. D.E. 44 ¶¶ 48–51.

*Second*, Twitter locked the *NY Post*'s Twitter account and issued the Private Explanation— a notification, sent directly and exclusively to the holder of the *NY Post*'s Twitter account. The Private Explanation noted that the account had violated Twitter's rules against distribution of hacked material and explained, "We don't permit the use of our services to directly distribute content obtained through hacking that contains private information, may put people in physical harm or danger, or contains trade secrets." D.E. 44-26 at 2.

*Third*, Twitter issued the Public Explanation in three Tweets:

> We want to provide much needed clarity around the actions we've taken with respect to two NY Post articles that were first Tweeted this morning. The images contained in the articles include personal and private information—like email addresses and phone numbers—which violate our rules. . . . [W]e also currently view materials included in the articles as violations of our Hacked Materials Policy. *Id.* at 3.

### D.   Plaintiff Sues Twitter for Its Content Moderation

The AC is the ***third*** complaint Plaintiff has filed against Twitter in connection with this subject matter. Plaintiff first sued Twitter for defamation on December 28, 2020, seeking "punitive damages equal to $500,000,000.00." *Isaac*, No. 1:20-cv-25264-BB, D.E. 5 at 1. The Court

dismissed that suit *sua sponte* on December 29, 2020, for lack of diversity jurisdiction.  *Id.* at 2–3.  Plaintiff filed again on February 18, 2021, against Twitter and a subsidiary, Madbits LLC.  D.E. 1.  Defendants timely moved to dismiss.  D.E. 39.  Plaintiff then filed the instant AC on May 10, 2021, D.E. 44, and subsequently voluntarily dismissed Madbits LLC as a defendant, D.E. 48.

The AC alleges that Twitter made four "false and defamatory statements" about him, constituting libel *per se*.  D.E. 44 ¶¶ 1, 73.  According to Plaintiff, those statements "spread[] the belief among its users, upon information and belief, including Florida resident users, that the Plaintiff is a hacker."  *Id.* ¶ 50.  Plaintiff identifies the following "statements" as the basis for his claim:  that Twitter (1) "identifi[ed him] as a hacker," and that Twitter said that (2) he "may have put people in physical harm," (3) "may have put people in danger," and (4) "may have violated trade secret laws."  *Id.* ¶ 73.  Notably, ***Twitter did not make any of these statements***.  Instead, these alleged "statements" represent Plaintiff's inaccurate characterization of Twitter's Explanations.  *Compare id. with id.* n.5 (cross-referencing actual Explanations by Twitter).

The AC also ***confirms*** that Plaintiff was the shop owner from the *NY Post* Article, D.E. 44 ¶ 18, and that he had pre-publication conversations with the *NY Post*, D.E. 44 ¶ 41; D.E. 44-21 at 3, 5 (citing conversations with "the shop owner").  Plaintiff further concedes the Article does not mention him by name.  D.E. 44 ¶ 43.  He rather alleges that "a photo of the Repair Authorization" appears in the Article, "without blurring the business name."  *Id.* ¶ 44.  Plaintiff does not provide this version of the Article, and he does not allege when this version was replaced with the current version that redacts his business's name.  *Id.* ¶ 44; D.E. 44-21 at 4.  Plaintiff also acknowledges that *The Daily Beast* story—which was published on October 14, ***after*** Twitter blocked the *NY Post* Article—was ultimately responsible for revealing his identity.  D.E. 44 ¶ 45.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts sufficient to state a facially plausible claim for relief.  *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1315 (S.D. Fla. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While a court must accept well-pleaded factual allegations as true, 'conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations.'"  *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016) (quoting *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010)).  Mere "allegations stated upon information and belief" likewise "fail to meet the *Twombly* standard."  *Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S.D. Fla.

June 29, 2018).  "Moreover, courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1080 (S.D. Fla. 2019).  And "in this Circuit[,] 'when the [complaint] exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'"  *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

"Courts in this jurisdiction and elsewhere routinely dismiss defamation claims on motions to dismiss."  *Borislow v. Canaccord Genuity Grp. Inc.*, 2014 WL 12580259, at *1 (S.D. Fla. June 27, 2014).  Defamation suits are uniquely suited to early dismissal:  First, "unlike in most litigation, in a libel suit the central event—the communication about which suit has been brought—is ordinarily before the judge at the pleading stage."  2 Robert D. Sack, Sack on Defamation § 16.2.1 (5th ed. 2017).  Second, early dismissal is "'especially appropriate' because of the chilling effect these cases have on freedom of speech."  *Marder v. TEGNA Inc.*, 2020 WL 3496447, at *3 (S.D. Fla. June 29, 2020) (quoting *Stewart v. Sun Sentinel Co.*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997)); *see Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) ("[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.").

## ARGUMENT

### I.   PLAINTIFF FAILS TO STATE A CLAIM FOR DEFAMATION

To state a claim for defamation *per se*, a plaintiff must plead: (1) publication of (2) a false and (3) defamatory statement, (4) about the plaintiff, (5) with the requisite degree of fault, and (6) that the falsity of the statement caused injury to the plaintiff.  *See Turner*, 198 F. Supp. 3d at 1364–65; *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  Plaintiff must plead facts "that would support **all** of the elements of defamation . . . in accordance with the *Iqbal* standard." *Warner v. Schmidt*, 2011 WL 2784492, at *2 (M.D. Fla. July 15, 2011) (emphasis added).  Plaintiff does not and cannot sufficiently plead **any** of these elements, warranting dismissal with prejudice.

### A.   Twitter's Explanations, Not Plaintiff's Characterizations, Are the Proper Subject of Analysis

To begin with, clarity is required regarding the statements at issue.  Plaintiff frames his entire AC around four purported "false and defamatory statements" by Twitter, D.E. 44 ¶ 73, but *none of these alleged statements were actually made by Twitter*, compare *id.*, with *id.* n.5, *and id.* ¶ 48 n.4.  Plaintiff's own cross-reference to Twitter's **actual** statements (*i.e.*, the Explanations)

makes clear the "statements" alleged by Plaintiff are not Twitter's statements but Plaintiff's *inaccurate characterization* of them. For purposes of defamation, however, what matters are the *actual* statements at issue. *See Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) ("When determining whether a published statement constitutes libel per se, an arbiter of fact may consider only the 'four corners' of the publication."). The ensuing analysis thus pertains to Twitter's statements, not Plaintiff's self-serving mischaracterizations. *Bongino*, 477 F. Supp. 3d at 1318–19 (defamation analysis turns on a "plain reading of the article" at issue, not plaintiff's "insinuation"); *Turner*, 198 F. Supp. 3d at 1373 (plaintiff's "allegation" of what "Defendants falsely stated" not credited where "directly contradicted by the Report" at issue).

### B.    Twitter's Explanations Are Not "Of and Concerning" Plaintiff

The AC must be dismissed with prejudice because Plaintiff fails to allege that Twitter's statements are "of and concerning" him. "[D]efamation is personal." *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 144 (D.D.C. 2017); *Perruzzi v. Ferretti*, 564 So. 2d 621, 622 (Fla. 4th DCA 1990) (Anstead, J. concurring) ("[A] cause of action for defamation is personal to the one allegedly defamed."). An allegedly defamatory statement must therefore be "of and concerning" the plaintiff to be actionable. *See Rosenblatt v. Baer*, 383 U.S. 75, 80–83 (1966); *Thomas v. Jacksonville Tele., Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997). "The 'of and concerning' requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them," *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399–400 (2d Cir. 2006), foreclosing defamation claims by "those who merely complain of nonspecific statements that they believe cause them some hurt," *Yow v. Nat'l Enquirer, Inc.*, 550 F. Supp. 2d 1179, 1187 (E.D. Cal. 2008).[3]

To meet this element, "[t]he [allegedly] defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff." *Horsley v. Feldt*, 304 F.3d 1125, 1136 (11th Cir. 2002). Specifically, the statement must refer to the plaintiff either by name or by "ascertainable implication." *Id.* An actionable implication must "lead the [reader] to conclude that the speaker is referring to the plaintiff by description," *Croixland Props. Ltd. P'ship v.*

---

[3] This Motion generally cites Florida law. Because the "of and concerning" requirement has been treated as "not merely a venerable common-law doctrine," but also a rule of federal "constitutional dimension," cases from other jurisdictions are cited illustratively. Rodney A. Smolla, 1 Law of Defamation § 4:40.50 (2d ed. 2020) (citing, *inter alia*, *Rosenblatt v. Baer*, 383 U.S. 75, 82 (1966)).

*Corcoran*, 174 F.3d 213, 216 (D.C. Cir. 1999) (citing *Peck v. Tribune Co.*, 214 U.S. 185, 188–90 (1909))—for instance, if the statement includes the plaintiff's address, picture, specific job, or relationship to a named person, *see* David Elder, Defamation: A Lawyer's Guide § 1:30 (2020). But a plaintiff "cannot rely on rumor, innuendo, and extraneous circumstances to create an inference" of identity, *Horsley*, 304 F.3d at 1136, or "make the person certain which was uncertain before," *Bell v. Johnson Publ'g Co.*, 2018 WL 357888, at *3 (M.D. Ga. Jan. 10, 2018).

Here, the challenged Explanations do not refer to Plaintiff—either expressly or by implication. The Explanations do not name Plaintiff or his business, and Plaintiff does not allege otherwise.[4] Nor do the Explanations permit an "ascertainable implication" that they were about Plaintiff. Plaintiff alleges that the *NY Post* "published a photo of the [Biden laptop] Repair Authorization . . . without blurring the business name," but this is not an allegation that the ***Explanations*** included such a photo. D.E. 44 ¶ 44. Because the AC is bereft of allegations that the Explanations mention "Plaintiff, his business, or identifying characteristics[,] [f]or this reason alone, Plaintiff fails to plead that the [Explanations] w[ere] 'of and concerning' him." *Sloan v. Shatner*, 2018 WL 3769968, at *6 (M.D. Fla. June 22, 2018); *see In re Phila. Newspapers, LLC*, 2011 WL 13192725, at *1 n.1 (E.D. Pa. July 20, 2011) ("Appellants cannot credibly claim that the . . . article itself defamed them because the article does not mention or identify Appellants at all.").

Nor can Plaintiff's identity be implied from the Explanations by way of a series of cross-references. Plaintiff seems to incorrectly suggest that even though the Explanations do not refer to ***any*** individual (let alone Plaintiff), readers could infer Plaintiff's identity based on a reference to the name of his store, "The Mac Shop," in a photo in the *NY Post* Article to which the Explanations were directed. D.E. 44 ¶¶ 43–45, 52.[5] Plaintiff does not dispute, however, that the ***Explanations*** themselves did not link, endorse, or direct the reader to ***any*** version of the *NY Post* Article. D.E. 44 ¶¶ 48–51; D.E. 44-26. Moreover, even setting aside the implausibility of the

---

[4] The Private Explanation states that (a) the *NY Post*'s "account has been locked for [v]iolating our rules against distribution of hacked materials[;]" and the Public Explanation states that (b) "images contained in the [NY Post] articles include personal and private information," and that "materials included in the articles [were] violations of our Hacked Materials Policy." D.E. 44 ¶ 48 & n.4; *see supra* Background § C.

[5] Plaintiff does not provide such a version of the Article as an exhibit. *See supra* p. 4. Instead, he relies on an inscrutable "composite" exhibit comparing two Google Images with the Article's alleged "source code," to imply what the Article ***might*** have previously looked like. D.E. 44-22.

inference Plaintiff presses, a publication does not "concern" a plaintiff if it requires a separate publication from a different source for the reader to make the inferential leap.  *See, e.g.*, *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 2019 WL 1434719, at *11 (S.D.N.Y. Mar. 31, 2019); *Vantassel-Matin v. Nelson*, 741 F. Supp. 698, 710 (N.D. Ill. 1990) (statements in other articles not "ascribable" to defendant cannot be "context" for "of and concerning" analysis).[6]  Rather, any implication that a statement concerns a plaintiff must come from an "intrinsic reference" in the statement itself; extrinsic evidence "cannot be used to alter or extend the words" or "impermissibly alter the meaning of the otherwise non-individualized statements."  *Miller v. Sawant*, 2020 WL 7714414, at *4 (W.D. Wash. Dec. 29, 2020) (alterations omitted).

Finally, Plaintiff's own allegations defeat his "of and concerning" theory.  Plaintiff concedes that "Plaintiff's identity was revealed" not by the *NY Post* or by Twitter, but by "media outlets, including writers from the Daily Beast purportedly investigating the NY POST exposé," D.E. 44 ¶ 45, after ***Plaintiff voluntarily participated*** in an interview with those media outlets, D.E. 44-23 at 4.  Twitter plainly had nothing to do with the *Daily Beast* article, and Plaintiff does not (and cannot) allege otherwise.

### C.     Twitter's Explanations Are Not Defamatory *Per Se*

The AC must also be dismissed because Plaintiff fails to allege that Twitter's statements are defamatory *per se*.  "A written publication" constitutes libel *per se* under Florida law "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime [*i.e.*, a felony]; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession."  *Aflalo v. Weiner*, 2018 WL 3235529, at *2 (S.D. Fla. July 2, 2018).  A statement must be "reasonably susceptible" of the defamatory meaning alleged.  *Wolfson v. Kirk*, 273 So. 2d 774, 778-79 (Fla. 4th DCA 1973).  It is for the court to decide "in the first instance" whether a statement is "not defamatory."  *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 770 (S.D. Fla. 1986).  First, "[w]hen determining whether a published statement constitutes libel per se, an arbiter of fact may consider only the 'four corners' of the publication."  *Ortega Trujillo*, 17 F. Supp. 2d at 1339.  The precise words must be "injurious in and of

---

[6] Likewise, state courts applying U.S. Supreme Court precedent have held that a "related publication[]" cannot "transform" the at-issue publication, "which never mentions the [plaintiff], into one that is 'of and concerning' him."  *Cox Texas Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 436–37 (Tex. Ct. App. 2007); *see Early v. Toledo Blade*, 720 N.E.2d 107, 122 (Ohio App. 1998) (article not "of and concerning" plaintiff by virtue of subsequent article naming plaintiff).

themselves"; if "'extrinsic facts and innuendo are needed to prove the defamatory nature of the words,' the statements are not defamatory *per se*." *Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1277 (S.D. Fla. 2020). Second, within the four corners, defamation "turns on 'all the words used, not merely a particular phrase or sentence'" at the expense of context. *Bongino*, 477 F. Supp. 3d at 1319. Plaintiff cannot "cherry pick" a particular phrase, *id.*, or rely on "tortured interpretation," *Schiller v. Viacom, Inc.*, 2016 WL 9280239, at *8 (S.D. Fla. Apr. 4, 2016).

Under these controlling standards, Plaintiff fails to plead that Twitter's Explanations are defamatory *per se*. The language within the Explanations' four corners is not defamatory; indeed, as discussed *supra*, Plaintiff focuses not on the Explanations themselves, but on his own mistaken interpretation of them. *See* D.E. 44 ¶ 73 & 73 n.5. Nor are the Explanations reasonably susceptible of the meaning that Plaintiff seeks to ascribe to them.

### 1. The Explanations do not state that Plaintiff is a hacker or criminal

Plaintiff first alleges that Twitter labeled "Plaintiff [as] a hacker," D.E. 44 ¶¶ 61, 73, and that "Plaintiff committed crimes," *id.* ¶ 77. The Explanations say no such thing. In addition to not referencing Plaintiff at all, the Explanations state that the *NY Post* articles contained "violations of our Hacked Materials ***Policy***," *id.* ¶ 48 n.4 (emphasis added)—not that there had been any "hacker." Because Plaintiff's characterization is based on "cherry pick[ing]" a particular phrase "out of context," it cannot support his claim. *Bongino*, 477 F. Supp. 3d at 1319.[7]

Even assuming, *arguendo*, that Twitter's Explanations had stated that a hack had occurred and identified Plaintiff in that context, this ***would still fail*** to state a claim for defamation *per se*— a "hack" as defined in Twitter's policy is not synonymous with criminal conduct. To be defamatory *per se*, a statement must "actually indicate that the person has ***committed*** a crime." *Basile v. Prometheus Glob. Media*, 225 F. Supp. 3d 737, 742 (N.D. Ill. 2016); *see Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 922 (M.D. Fla. 1996) (under Florida law, criticizing work as "fraud" does not "charge" the work's author himself with criminal fraud). The Explanations at no point allege that Plaintiff committed a crime, only that a violation of Twitter's ***policies*** occurred. As the court held in *Basile*, a statement listing a plaintiff's name "in

---

[7] The Explanations also do not mention or attribute any distribution of materials ***to Plaintiff***. A publication is not "reasonably susceptible to a meaning that is defamatory" if Plaintiff relies on a separate article written by a different author to piece together defamation, *Laub v. Horbaczewski*, 2019 WL 3492402, at *10 (C.D. Cal. July 30, 2019), or on a "'tortured and extreme' interpretation" to read himself into a publication, *Turner*, 198 F. Supp. 3d at 1376.

conjunction" with a cyberattack but that "does not attribute criminal activity to" the plaintiff is not defamation *per se*. *Basile*, 225 F. Supp. 3d at 742–43. And here, unlike in *Basile*, Plaintiff does not even allege (nor can he) that the Explanations named or identified him at all.

Also baseless is Plaintiff's claim that Twitter "allege[d] that Plaintiff committed crimes." D.E. 44 ¶ 77; *see id.* ¶¶ 62; 82. Nothing in the Explanations refers to anyone or anything as "criminal." If Plaintiff's theory is that a reference to a "hacker" necessarily implies criminal conduct, *see* D.E. 44 ¶¶ 73, 77, 82, as noted, the Explanations **do not reference** a "hacker" or indicate that Plaintiff is such a person. And a colloquial reference to some malfeasance that "does not list any aggravating factors indicative of a felony or otherwise characterize the offense as a felony [ ] lacks sufficient detail for a reader to conclude" that it refers to an infamous crime. *Klayman v. Jud. Watch, Inc.*, 22 F. Supp. 3d 1240, 1248 (S.D. Fla. 2014); *see Colodny*, 936 F. Supp. 3d at 925 (charge of "fraud" "do[es] not suggest to the ordinary reader that [plaintiff] committed a crime"). Plaintiff fares no better with his allegations that "hacked materials"—the words used in the Explanations—characterizes Plaintiff as a felon, if viewed in combination with (a) a dictionary definition of "hacker," D.E. 44 ¶ 63, and (b) the entirety of Florida's "Computer Related Crimes" statutory chapter, *id.* ¶ 82 n.6 (citing "Florida Statutes Chapter 815"). Such a chain of inferences cannot support a claim of defamation *per se*. *Klayman*, 22 F. Supp. 3d at 1248 ("[I]t is the purportedly defamatory statement that must impute the criminal offense amounting to a felony, [and] whether the underlying facts actually support a felony offense is not relevant.").[8]

### 2. The Explanations do not state that Plaintiff may have put people in harm, in danger, and violated trade secret laws

Plaintiff next alleges that Twitter's Explanations said that Plaintiff may have put people in

---

[8] Plaintiff also conclusorily alleges that the Explanations "impute to the Plaintiff conduct, characteristics, and/or conditions incompatible with the proper exercise of Plaintiff's lawful business, trade, and/or profession" and subjected Plaintiff to "distrust, scorn, ridicule, hatred, and contempt." D.E. 44 ¶¶ 81–82. Because the Explanations "do not mention [Plaintiff's name]," and may not "even [be] about" Plaintiff, "they do not constitute defamation *per se*" under these prongs. *Murray v. Pronto Installations, Inc.*, 2020 WL 6728812, at *3 (M.D. Fla. Nov. 16, 2020). Plaintiff also again impermissibly relies on his own twisted characterizations rather than the Explanations themselves. In any event, Plaintiff fails to sufficiently allege either prong: he does not allege his "profession is directly invoked, the statement overtly reflects negatively on [P]laintiff's professional capacity, or the statement was made directly to [P]laintiff's clients or employers." *Rubinson*, 474 F. Supp. 3d at 1277. Further, a conclusory allegation of scorn or ridicule, without more, "fail[s] to convincingly plead" that the Explanations "engender the type of hatred . . . required to succeed under this prong." *Aflalo*, 2018 WL 3235529, at *4.

harm, in danger, and violated trade secret laws.  D.E. 44 ¶ 73.  This appears to be based on the Private Explanation, but that statement said no such thing and is not susceptible to any such interpretation.  First, the text of the Private Explanation clearly does not accuse ***Plaintiff*** of anything.  The Private Explanation was directed to the *NY Post*'s Twitter account, and it addressed the *NY Post* "distribut[ing] content" as the reason for locking the *NY Post*'s account.  D.E. 44-26 at 2.  Its plain language contains no reference to Plaintiff, explicit, implicit, or otherwise.

Second, Twitter's Private Explanation—which lists a number of possible harms that generally can result from distribution of hacked materials—cannot reasonably be interpreted as characterizing any person, including Plaintiff, of personally causing each and every illustrative harm listed.  A social media platform's reference or link to site guidelines, which "list a multitude of possible offenses that could have resulted in the removal of the" post, is not susceptible of the reading that the platform alleges the user committed each and every offense.  *Song Fi, Inc. v. Google Inc.*, 2018 WL 2215836, at *4 (N.D. Cal. May 15, 2018).  For instance, in *Bartholomew v. YouTube, LLC*, plaintiff brought a defamation claim against YouTube for posting a removal notice on his video, with a link to an illustrative list of potential violations that included "Dangerous Illegal Acts," "Hate Speech," and "Privacy."  17 Cal. App. 5th 1217, 1222 (2017).  The court dismissed the claim, holding that "an Internet user . . . would have understood that the list on the Community Guideline Tips page is in fact general" and "no one particular offense could be reasonably read to apply to" the offending post.  *Id.* at 1229.

### D.     Plaintiff Fails to Plead Special Damages from the Alleged Defamation

Plaintiff's AC should also be dismissed with prejudice because it fails to allege that Twitter's statements caused special damages.  When a statement is defamatory *per se*, a plaintiff ordinarily "need not provide 'proof of special damages.'"  *Corsi v. Newsmax Media, Inc.*, 2021 WL 626855, at *4 (S.D. Fla. Feb. 12, 2021).  "However, Florida law applies the Supreme Court's ruling from the well-known First Amendment defamation case of *Gertz v. Robert Welch Inc.*, [418 U.S. 323 (1974)], which eliminates presumed damages for defamation *per se* actions against media defendants."  *Id.* at *4.  "[A]fter *Gertz*, in libel cases involving media defendants, fault and proof of damages must always be established."  *Blake v. Giustibelli*, 182 So. 3d 881, 884–85 (Fla. 4th DCA 2016).  Thus, a plaintiff must plead "special damages"—that is, "actual, out of pocket losses."  *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004).  Special damages must be pleaded with particularity.  *JP Morgan Chase Bank Nat'l Ass'n v. Colletti*

*Invs., LLC*, 199 So. 3d 395, 399 (Fla. 4th DCA 2016).  Mere allegations that a statement damaged a plaintiff's reputation do not suffice.  *Daniels v. HSN, Inc.*, 2020 WL 533927, at *6 (M.D. Fla. Feb. 3, 2020).  Further, a plaintiff must "show his special damages proximately resulted from the defamation."  *Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1259 (N.D. Fla. 2007).  In alleging lost business, the plaintiff must therefore "point to evidence showing that" specific, identifiable lost customers "knew about" the allegedly defamatory statement. *Daniels*, 2020 WL 533927, at *5.

Under Florida's defamation laws, a "media defendant" is an entity that "initiat[es] 'uninhibited, robust, and wide-open debate on public issues'"—regardless of whether its role is "impartially disseminat[ing] information" or issuing its own "commentary."  *Tobinick v. Novella*, 2015 WL 1191267, at *8–9 (S.D. Fla. Mar. 16, 2015) (citing Florida Stat. § 770.01).  Plaintiff's pleadings are premised on Twitter being a "media defendant," *see* D.E. 44-12 at 2, yet Plaintiff has not met his resulting burden to plead the Explanations proximately caused any alleged special damages.  Indeed, the AC illustrates that the alleged damages are ***self-inflicted***.

To begin, Plaintiff alleges no proximate relationship between any specific economic damage and Twitter's Explanations, which alone is dispositive.  Plaintiff merely alleges that "[a]s a direct and proximate result of the defamatory statements made by Defendant TWITTER, Plaintiff has suffered, and continues to suffer, substantial damages."  D.E. 44 ¶ 83.  Such "conclusory" allegations are not sufficient to meet the "require[ment] [that] such a claim [] be specifically stated."  *Schwartz v. NCL (Bahamas), Ltd.*, 2009 WL 1591230, at *1 (S.D. Fla. June 4, 2009). Plaintiff also alleges negative reviews and the loss of his business, D.E. 44 ¶¶ 65, 66, but pleading special damages requires far more.  *See Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1343 (M.D. Fla. 2003) ("[T]he customers names" "whose business was lost" or "specific allegations showing a decline in an established business' receipts" "should be pleaded.").  Nowhere does the AC allege the Explanations "figured prominently in the minds" of the lost customers.  *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1318 (11th Cir. 1990).  None of the negative reviews attached to the AC cited Twitter's Explanations as the basis for their disapproval, or that they were even authored by potential customers.  D.E. 44-31.  Such allegations are plainly insufficient.

In addition to being conclusory, Plaintiff's causal theory is implausible.  According to *The Daily Beast* article (attached as an exhibit to the AC), Plaintiff voluntarily gave an hour-long interview to numerous media outlets on the same day as the *NY Post* Article, in which ***he identified***

*himself* as the owner of The Mac Store and the man responsible for handing Mr. Biden's information to Giuliani. D.E. 44-23 at 4. It is therefore not plausible that Twitter's Explanations—which were directed at the *NY Post* and did not identify Plaintiff or his business—were the proximate cause of harm to Plaintiff's business rather than the stories themselves, which Plaintiff admits he willingly participated in. This is particularly true given that many of the allegedly negative "reviews" cited Plaintiff's *own* discussions with the media. *E.g.*, D.E. 44-31 at 7, 10, 11.

Finally, Plaintiff's new allegation that he has suffered "special damages" in the form of "educational expenses, due to losing his old career and requiring retraining, in the current amount of $2,621[.]11," is wholly lacking. D.E. 44 ¶ 86. At the outset, Plaintiff has again failed to plead that his loss of his old career, let alone the educational expenses themselves, "result[ed] *directly and immediately*" from Twitter's Explanations. *Falic*, 347 F. Supp. 2d at 1268–69. Plaintiff also altogether fails to mention any specifics of his retraining; the exhibit of Plaintiff's tuition costs does not include Plaintiff's new field, course of study, or educational institution. D.E. 44-40 at 2. A dollar figure presented without context and lacking any causal connection to the Explanations does not meet the pleading threshold for special damages.

### E.    Plaintiff Fails to Plead Falsity of the Explanations

Plaintiff's claim also must be dismissed with prejudice for failure to allege that Twitter's Explanations were false. "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Klayman*, 22 F. Supp. 3d at 1253. In determining whether a plaintiff has sufficiently pleaded falsity, the court compares the text of the statement at issue to the truth as alleged in the complaint and exhibits; a plaintiff's unsupported characterizations are not the baseline. *Turner*, 198 F. Supp. 3d at 1373–74 (disregarding "allegation" of what "the [d]efendants falsely stated" where "directly contradicted by the" publication itself). A statement is not false if "substantially correct"—"a statement does not have to be perfectly accurate if the 'gist'" is true. *Readon v. WPLG, LLC*, 2021 WL 1395240, at *2 (Fla. 3d DCA Apr. 14, 2021).

On his third attempt, Plaintiff still fails to allege falsity. Twitter stated that the *NY Post* Article "[v]iolat[ed] our rules against distribution of hacked material," and "violat[ed] [] our Hacked Materials Policy," because the materials were "obtained through hacking that contains private information . . . ." D.E. 44 ¶ 48 n.4; D.E. 44-12 at 15–16. Twitter "defines a 'hack' as 'an intrusion or access of a computer, network, or electronic device that was unauthorized or exceeded authorized access.'" D.E. 44 ¶ 56; D.E. 44-29 at 3. Based on this definition, none of Twitter's

Explanations were false.  Indeed, Plaintiff's own allegations indicate that his alleged contract with Mr. Biden disclaimed only "damage or loss of property" of ostensibly abandoned property.  D.E. 44-17 at 2.  Nowhere did this contract authorize Plaintiff to discuss or send Mr. Biden's private data to another private citizen.  But Plaintiff concedes he distributed Mr. Biden's laptop to others, D.E. 44-24 at 2–3, not based on the Repair Authorization, but instead on Plaintiff's own view that Mr. Biden altogether "relinquish[ed his] privacy rights."  D.E. 44-24 at 3.

Thus, when the *NY Post* Article published screenshots alleged to be Mr. Biden's private correspondence, photographs, and documents, Twitter reasonably concluded this material was being disseminated in contravention of its policy; namely, it was obtained via "access" that "exceeded authoriz[ation]."  *See* D.E. 44-29 at 3.  Plaintiff's allegations that he is certain it was Mr. Biden who dropped off the laptop, D.E. 44 ¶¶ 26, 38, are therefore irrelevant:  Twitter's Explanations did not challenge that Mr. Biden dropped off the laptop, only that the broad dissemination of his personal material appeared to be unauthorized.  In short, Twitter's Explanations were not false, for "[h]ad the reader known the truth" as alleged by Plaintiff, it "would not have produced a different effect on the reader than [Twitter's Explanations]."  *Marder*, 2020 WL 3496447, at *5 (granting 12(b)(6) motion).

### F.    Plaintiff Fails to Plead Publication by Twitter

Plaintiff fails to allege publication of the Public Explanation, which is independently fatal to his claim.  An allegedly defamatory statement is only actionable if published, that is, "disseminat[ed] . . . to a person other than the defamed person."  *Klayman*, 22 F. Supp. 3d at 1251; *see Corsi*, 2021 WL 626855, at *5.  The plaintiff must "allege the 'identity of the particular person to whom the remarks were made with a reasonable degree of certainty.'"  *Aflalo*, 2018 WL 3235529, at *4.  Allegations falling short of that fail to establish the "essential element of publication."  *Estes v. Rodin*, 259 So. 3d 183, 191 (Fla. 3d DCA 2018).

The AC fails to identify a single person who read the Public Explanation.[9]  Plaintiff's threadbare recital of the publication element itself—that Twitter's "statement[]" was "published

---

[9] As for the Private Explanation, the AC alleges that Twitter "published" its Private Explanation "to a third-party, the New York Post."  D.E. 44 ¶ 49.  Even assuming this threadbare allegation could establish publication, Plaintiff does not allege the Private Explanation in fact led Plaintiff to suffer any harm; rather, he alleges that it was only the Public Explanation that was communicated to users and the public at large.  *Id.* ¶¶ 48, 53, 65.

. . . to third parties, including, upon information and belief, thousands (or more) of Florida residents," D.E. 44 ¶ 75—fails to meet basic Rule 8 pleading standards.  *See Zimmerman v. Buttigieg*, 2021 WL 694797, at *8 (M.D. Fla. Feb. 23, 2021) (The "mere fact that the material was accessible in Florida is not enough to plead the publication element of defamation . . . .").  *Aflalo* is instructive: plaintiff alleged that the defendants "posted" a statement "on his Facebook page for all to see including persons living in Florida."  2018 WL 3235529, at *4.  The court granted the defendants' motion to dismiss given plaintiff's failure to allege publication: "[p]laintiff's assertion that the Statement was put on [d]efendants' Facebook wall 'for all to see' fails to identify those persons to whom the Facebook post was published with a reasonable degree of certainty."  *Id.*

Nor is publication shown by Plaintiff's purported identification of five Florida individuals who allegedly wrote "internet posts . . . referring directly to Defendant Twitter's actions . . . ." D.E. 44 ¶ 10.  Plaintiff does not allege that any referred to Twitter's Explanations, and Plaintiff's own exhibits (D.E. 44-6–D.E. 44-10) show that not one of these users referred to or even were aware of Twitter's Explanations.  *Sloan*, 2018 WL 3769968, at *3 ("[A] plaintiff's attempt to plead a viable cause of [defamation] may be defeated by his own evidence.").  In short, Plaintiff has not alleged that a single, identifiable Florida resident read the text of Twitter's Explanations.

## G.  Twitter's Explanations Were Not Made with Actual Malice or Through Negligence

The AC should also be dismissed with prejudice because Plaintiff does not and cannot plead facts demonstrating that Twitter acted with the requisite degree of fault.  Plaintiff is a limited public figure and thus must meet the actual malice standard.  He fails to do so.[10]  Nor does he even state a claim under the lesser (and inapplicable) negligence standard.

### 1.  Plaintiff Is a Limited Public Figure

Defamation law identifies two types of public figure plaintiffs who must plead actual malice: general public figures (based on their position or influence), or "limited public figure[s]," who are central to a "particular public controvers[y]."  *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1156 (S.D. Fla. 2018) (quoting *Tobinick v. Novella*, 848 F.3d 935, 945 n.9 (11th Cir. 2017)). "[T]he 'public figure status' of a defamation claimant is a question of law to be determined by the court."  *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002).

---

[10] Failure to plead actual malice warrants dismissal on a 12(b)(6) motion.  *See Corsi*, 2021 WL 626855, at *7–8; *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702, 706 (11th Cir. 2016).

Once "the existence of a public controversy is established," the court asks: (a) "whether the individual played a central role in the controversy," and (b) "whether the alleged defamation was germane to the individual's role in the controversy." *Berisha*, 378 F. Supp. 3d at 1156 (quoting *Turner v. Wells*, 879 F.3d 1254, 1272–73 (11th Cir. 2018)).

Plaintiff is a limited public figure in the circumstances alleged here. The release of information attributed to Mr. Biden's laptop less than a month before the 2020 U.S. presidential election, *see* D.E. 44 ¶ 77, is undoubtedly a matter of "public controversy." *See 100 Plus Animal Rescue, Inc. v. Butkus*, 2020 WL 5514404, at *6 (S.D. Fla. Aug. 15, 2020) (A public controversy entails "any topic upon which sizeable segments of society have different, strongly held views."). Moreover, by his own allegations, Plaintiff had a "central role in the controversy," as he was the catalyst for the release of Mr. Biden's laptop data, D.E. 44 ¶ 64, and its subsequent media coverage, *id.* ¶¶ 41–42. Indeed, Plaintiff voluntarily inserted himself into the controversy, choosing to conduct a "nearly hour-long question and answer session" with "a group of reporters," D.E. 44-23 at 4, and giving statements to the *Wall Street Journal* and the *Washington Post*, D.E. 44 ¶ 46. "[C]ommissioning a response" and "mak[ing] a statement to the press" after a story makes national news are established ways a plaintiff may "insert[] himself into the controversy" and become a limited public figure. *Turner*, 879 F.3d at 1273; *see Berisha v. Lawson*, 973 F.3d 1304, 1311 (11th Cir. 2020) (Plaintiff was limited public figure, as he "contacted a group of 'media representatives' to request that they publish a statement presenting what he called the 'truth [of] the accusations against me.'").[11] Finally, the "alleged defamation was germane" to Plaintiff's "role in the controversy," as Plaintiff claims that Twitter essentially labelled him a "hacker" for his part in the release of the laptop data, D.E. 44 ¶ 50. *Berisha*, 378 F. Supp. 3d at 1160 (prong met where "involve[ment] in the controversy *was* the alleged defamation").[12]

---

[11] Plaintiff's actions contradict his conclusory allegation that he "is not a public figure, nor is he a limited public figure for purposes of defamation analysis." D.E. 44 ¶ 76. And Plaintiff's allegation that he "did not authorize the disclosure of his identity" has no bearing on whether he is a limited public figure. *Id.* ¶ 42. "[F]ederal courts have long made clear that one may occasionally become a public figure even if 'one doesn't choose to be.'" *Berisha*, 973 F.3d at 1311.

[12] Even if Plaintiff were not characterized as a limited public figure, he has still failed to plead any non-conclusory allegation of negligence. Plaintiff again relies on a threadbare and conclusory recitation of the element—"Alternatively, upon information and belief, Defendant TWITTER was grossly negligent in publishing the defamatory statement about the Plaintiff," D.E. 44 ¶ 69. This is legally insufficient. *See Corsi*, 2021 WL 626855, at *7; *Scott*, 2018 WL 3360754, at *6 ("[A]llegations stated upon information and belief," without more, do not suffice.).

### 2.      Plaintiff Does Not Plead Actual Malice

Because he is a limited public figure, Plaintiff must satisfy the "daunting" actual malice standard. *Klayman v. City Pages*, 2015 WL 1546173, at \*13 (M.D. Fla. Apr. 3, 2015). To do so, Plaintiff must show, "by clear and convincing evidence," that Twitter published a defamatory statement either with actual knowledge of its falsity or with a 'high degree of awareness' of its 'probable falsity.'" *Berisha*, 973 F.3d at 1312 (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Actual malice is a subjective test, asking whether the publisher "***in fact*** entertained serious doubts as to the truth of his publication." *Berisha*, 973 F.3d at 1312. It is altogether distinct from the "concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991).

Plaintiff does not plead any specific facts to establish or even suggest that Twitter acted with actual malice. Plaintiff first alleges that "TWITTER acted with malicious intent to harm the Plaintiff by publishing the defamatory statement," D.E. 44 ¶ 68; not only is this conclusory, it also commits the common pleading error of "confus[ing]" "actual malice" with malicious intent. *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010) (quoting *Masson*, 501 U.S. at 510). Plaintiff's next allegation—that "[t]he defamatory statements were made . . . with knowledge of their falsity; and/or with reckless disregard for the truth," D.E. 44 ¶ 74—is also impermissibly conclusory: "[T]he Court disregards the portion of the Complaint where [Plaintiff] alleges, in a purely conclusory fashion, that the [] Defendants knew that the statements made . . . were false, or at a minimum, acted with recklessness as to their truthfulness." *Corsi*, 2021 WL 626855, at \*7; *see Michel*, 816 F.3d at 702 ("[P]lausibility pleading standard applies to the actual malice standard in defamation proceedings."). Absent his threadbare conclusions, Plaintiff makes no allegation that Twitter knew its Explanations were false or recklessly disregarded the truth.

The AC's digression into the congressional testimony of Twitter CEO Jack Dorsey does nothing to salvage Plaintiff's claim. As discussed more fully in Defendants' Response to the Order to Show Cause, Plaintiff simply misstates Mr. Dorsey's testimony. D.E. 27 at 3–4. For example: Plaintiff asserts that Mr. Dorsey stated that he and Twitter "recognize [the suppression and labeling of the information] as a mistake," but Plaintiff has inserted misleading language in brackets. D.E. 44 ¶ 60. The testimony in fact shows Mr. Dorsey stated Twitter's ***removal of the post*** was the mistake as it only increased user attention. D.E. 44-30 at 17. Nowhere does Mr. Dorsey discuss the "labeling" of the *NY Post*'s tweets or that Twitter's Explanations were a mistake; this is, once

again, Plaintiff's concoction.  In any event, a mere mistake would be insufficient to allege that Twitter acted with actual knowledge or recklessness as to whether its Explanations were false.  *See Berisha*, 973 F.3d at 1314–16 (allegations of mistake do not demonstrate actual malice).

Plaintiff also alleges that Twitter acted with actual malice by "selective[ly] enforc[ing]" its "policies," "based on whether the topic impacts a more liberal-leaning topic versus a more conservative-leaning topic . . . ."  D.E. 44 ¶¶ 67–68.  Plaintiff bases this charge on a random list of news articles, none of which are alleged to involve Plaintiff or Twitter's Hacked Materials policy. *Id.* ¶ 67.  If Plaintiff is alleging Twitter failed to enforce its policies, Plaintiff fails to do so coherently; further, any alleged lapse in enforcing "'[publishing] standards' does not necessarily rise to the level of actual malice."  *Berisha*, 973 F.3d at 1312 (alteration in original).  As for Plaintiff's concoction of actual malice from unsupported claims of anti-conservative bias, this "conspiracy theory falls far short of establishing actual malice."  *Berisha*, 378 F. Supp. 3d at 1161. In short, "speculative allegations" of "improper political or personal biases do not establish actual malice"; a plaintiff must still plead that "the speaker otherwise had knowledge of the falsity of his statements."  *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185–87 (S.D.N.Y. 2020).  The AC should be dismissed for failure to allege "actual malice in the constitutional sense"—that Twitter made the Explanations with "knowledge" or "reckless disregard" of falsity. *Donald J. Trump for President Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357 (N.D. Ga. 2020) (alleged political bias shown by "tweet and previous articles" irrelevant to actual malice).[13]

## II.   PLAINTIFF'S CLAIM SHOULD BE DISMISSED WITH PREJUDICE

A court may dismiss a claim with prejudice where amendment would be futile.  *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).  Plaintiff has now had ***three*** opportunities to adequately plead its single cause of action for defamation.  The AC adds 21 paragraphs and 15 additional exhibits, *compare* D.E. 44, *with* D.E. 1, and still fails to adequately plead ***any*** of the elements, despite Twitter's prior motion to dismiss.  *See Costa v. Celebrity Cruises, Inc.*, 768 F. Supp. 2d 1237, 1242 (S.D. Fla. 2011) (dismissing complaint with prejudice where Plaintiff had chance to amend complaint in the face of a "similar" motion to dismiss).  Because "Plaintiff has

---

[13] As Twitter sets forth in its Response to the Order to Show Cause, § 230 of the Communications Decency Act (47 U.S.C. § 230) also supports dismissal of this action.  D.E. 27.  Given the multiple, independent grounds for dismissal, the Court can dismiss the AC without reaching the issue of § 230 immunity.

already amended its complaint once in response to the pleading deficiencies highlighted by Defendants in their initial motion to dismiss," yet still fails to address these pleading deficiencies, the Court should dismiss the AC with prejudice. *Yahav Enters. LLC v. Beach Resorts Suites LLC*, 2016 WL 111361, at *4 (S.D. Fla. Jan. 11, 2016) ("Plaintiff's perfunctory attempts at amendment do not warrant granting an additional 'bite at the apple'").

## III.   TWITTER IS ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER FLORIDA'S ANTI-SLAPP LAW

Finally, Twitter is entitled to its reasonable attorney's fees and costs under Florida's anti-SLAPP statute. This is the third substantively identical complaint filed by Plaintiff, and the second time Twitter has had to expend substantial resources in moving to dismiss Plaintiff's claim. In order to protect defendants from being "dragged through the courts because of an exercise of constitutional rights," *Rosenthal v. Council on Am.-Islamic Rels., Fla., Inc.*, 2017 WL 6390102, at *3 (Fla. Cir. Ct. Nov. 8, 2017), the Florida anti-SLAPP statute prohibits a plaintiff from filing a lawsuit that is (a) "***without merit***" and (b) brought "***primarily*** because [the defendant] has exercised the constitutional right of free speech in connection with a public issue," *Corsi*, 2021 WL 626855, at *11 (quoting Fla. Stat. § 768.295(3)). This latter prong broadly includes any written statement "made in or in connection with," among many items, a "magazine article . . . news report, or other similar work." Fla. Stat. § 768.295(2)(a); *see WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 561 (Fla. 4th DCA 2019) (Gross, J., concurring) (Section 768.295(2)(a) "demand[s] an expansive interpretation."). When a plaintiff's suit falls within the anti-SLAPP statute, "the statute awards a defendant fees and costs." *Bongino*, 477 F. Supp. 3d at 1321. "At bottom, Florida's [anti-SLAPP] statute is a garden variety fee shifting provision," used to vindicate the "fundamental state policy" of deterring frivolous suits. *Id.* at 1323.[14]

Plaintiff's case violates the anti-SLAPP statute. *First*, Plaintiff's suit is without merit: as held in *Bongino*, *Corsi*, and *Parekh*, which each granted defendants their attorney's fees, a defamation suit that fails to state a claim on a motion to dismiss is likewise "without merit" under § 768.295(3). *Bongino*, 477 F. Supp. 3d at 1322 ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute 768.295(3)."); *Parekh v. CBS Corp.*, 820

---

[14] Florida's anti-SLAPP fee-shifting provision "does not conflict with any Federal Rules of Civil Procedure and thus may apply in a federal court exercising diversity jurisdiction." *Bongino*, 477 F. Supp. 3d at 1324; *see Corsi*, 2021 WL 626855, at *11–12.

F. App'x 827, 836 (11th Cir. 2020) (affirming award); *Corsi*, 2021 WL 626855, at *11. So too here has Plaintiff failed to state a claim for the reasons discussed in this Motion. *Second*, Plaintiff's suit arises out of Twitter's exercise of its free speech rights. "[H]osting and moderating . . . matters of public concern" is the expression of the "constitutional right of free speech in connection with a public issue" for purposes of Florida's anti-SLAPP statute. *Corsi*, 2021 WL 626855, at *11.[15] And further, Twitter's Explanations were specifically made "in connection with" a "magazine article" or "news report," here, the *NY Post* Article. Fla. Stat. § 768.295(2)(a); *see WPB Residents*, 284 So. 3d at 561 (Gross, J., concurring) ("[S]tatements made 'in connection with' an enumerated work" is a broadly sweeping "catchall phrase" separate from the enumerated works themselves.).

This lawsuit therefore sits squarely within the text of § 768.295, and an award of attorney's fees is mandatory thereunder. Fla. Stat. § 768.295(4) ("The Court ***shall award*** the prevailing party reasonable attorney fees and costs . . . (emphasis added).); *Anderson v. Best Buy Stores, L.P.*, 2020 WL 5122781, at *4 (M.D. Fla. July 28, 2020) ("[A]n award of attorney's fees and costs incurred in connection with the SLAPP motion itself is mandated.").[16]

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court dismiss Plaintiff's AC with prejudice and award Defendant its reasonable attorney's fees and costs, together with such other and further relief the Court deems just and proper.

---

[15] Courts across the country have specifically held that, for purpose of anti-SLAPP analysis, a social media platform's content-moderation decisions arise out of or are made in connection with constitutional free speech. *See, e.g.*, *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (applying Texas anti-SLAPP law to Facebook's moderation practices); *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 201–02 (2017) (same under California anti-SLAPP law).

[16] In the event this Court finds that Plaintiff's case violates the anti-SLAPP statute, Defendant will file a fees motion pursuant to the formal requirements of S.D. Fla. Local Rule 7.3.

Dated: June 7, 2021

By: */s/ Kathleen R. Hartnett*
Kathleen R. Hartnett
California Bar No.: 314267
Email: khartnett@cooley.com
Admitted Pro Hac Vice
Kyle C. Wong
California Bar No.: 224021
Email: kwong@cooley.com
Admitted Pro Hac Vice
**COOLEY LLP**
3 Embarcadero Center, 20th Floor
San Francisco, CA  94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

-and-

Alexander J. Kasner
California Bar No.: 310637
Email: akasner@cooley.com
Admitted Pro Hac Vice
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304
Telephone: +1 650 843 5000
Facsimile: +1 650 843 7400

-and-

By: */s/ Jennifer Olmedo-Rodriguez*
Jennifer Olmedo-Rodriguez
Florida Bar No. 605158
Email: jennifer.olmedo-rodriguez@bipc.com
A. Sheila Oretsky
Florida Bar No. 31365
Email: sheila.oretsky@bipc.com
**BUCHANAN INGERSOLL & ROONEY PC**
2 South Biscayne Blvd, Suite 1500
Miami, FL  33131-1822
Telephone: 305 347 5900
Facsimile: 305 347 4089

*Attorneys for Defendant*

**REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Defendant respectfully requests oral argument on this Motion.    The Motion is potentially case dispositive and raises a number of important considerations as to the First Amendment and defamation law, and Defendant therefore believes that oral argument would assist the Court's decision-making process.   Defendant estimates that a total of one hour will be required for argument.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 7, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

By: */s/ Jennifer Olmedo-Rodriguez*
BUCHANAN INGERSOLL & ROONEY PC