UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: **1:21-CV-20684-BLOOM/Otazo-Reyes**

JOHN PAUL MAC ISAAC,

       Plaintiff,

v.

TWITTER, INC.,

       Defendant.

_____/

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| I. | Preliminary Statement | 1 |
| II. | Applicable Law | 1 |
| III. | Pleading Defamation and Defamation Per Se | 2 |
| IV. | "Of and Concerning" the Plaintiff | 3 |
| V. | Limited Purpose Public Figure | 6 |
| VI. | Anti-SLAPP | 8 |
| VII. | Federal Rule 12(d) | 10 |
| VIII. | Failure to Abide by Word Count Limitation | 10 |

# **TABLE OF AUTHORITIES**

Cases

*Accord Warford v. Lexington Herald-Leader Co.*, 789 S.W.2d 758 (Ky. 1990) .............................7
*Aflalo v. Weiner*, No. 17-61923-CIV, 2018 U.S. Dist. LEXIS 110134, (S.D. Fla. July 2, 2018)....3
*Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016) ...................................................2
*Anyanwu v. Columbia Broadcasting System, Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y.1995)............4
*Armscorp of Am. v. Daugherty*, 191 Ga. App. 19 (1989).................................................................4
*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..........................2
*Bair v. Clark*, 397 So. 2d 926 (Fla. 4th DCA 1981)........................................................................6
*Baird v. Mason Classical Acad., Inc.*, 2D20-2550, 2021 WL 1323519 (Fla. 2d DCA Apr. 9, 2021) ............................................................................................................................................8
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...........2
*Bell v. Johnson Publ'g Co., LLC*, Civil Action No. 7:16-CV-16 (HL), 2018 WL 357888 (M.D. Ga. Jan. 10, 2018) .........................................................................................................................4
*Bongino v. The Daily Beast Company, LLC*, Case 2:19-cv-14472-JEM (S. D. Fl. August 6, 2020) .........................................................................................................................................................8
*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) .............................................2
*Bright v. Gallia Cty.*, 753 F.3d 639, 652 (6th Cir. 2014).................................................................2
*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997).......................10
*Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016) ..............................................1
*Campbell v. Jacksonville Kennel Club Inc.*, 66 So.2d 495 (Fla. 1953)..........................................3
*Cf. Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213 (D.C. Cir. 1999)...............................5
*Cf. DiNapoli v. Yelp Inc.*, 355 F. Supp. 3d 101 (D. Mass. 2019) ..................................................8
*Cf. Parekh v. CBS Corp.*, 820 F. App'x 827 (11th Cir. 2020) .......................................................9
*Cross v. Facebook, Inc.*, 222 Cal. Rptr. 3d 250 (Ct. App. 2017) ...................................................9
*Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921 (2d Cir. 1987).........................................5
*Davis v. Wells Fargo*, 824 F.3d 333, 350 (3d Cir. 2016)...............................................................1
*Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610 (E.D.N.Y. 2018)........................5
*Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72 (Fla. 4th DCA 1986).................................7
*Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.9 (9th Cir. 2018)......................................2
*Exner v. American Medical Ass'n*, 529 P.2d 863 (Wash. Ct. App. 1974) .................................. 6, 7
*Frank v. Nat'l Broad. Co.*, 119 A.D.2d 252, 261 (2d Dept 1986)..................................................2
*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ..................................................................... 7, 8
*Giovanno v. Fabec*, 804 F.3d 1361 (11th Cir. 2015) ..................................................................11
*Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) ..............................2
*Harwood v. Bush*, 223 So. 2d 359 (Fla. 4th DCA 1969)........................................................... 5, 6
*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)..........................................................................4
*Hurd v. District of Columbia, Government*, 864 F.3d 671 (D.C. Cir. 2017) ...............................10
*In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2021 U.S. Dist. LEXIS 84049 (S.D. Fla. May 4, 2021) ............................................................................................................11
*Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) .................................................3

*Jones v. Am. Broad. Cos.*, 694 F. Supp. 1542 (M.D. Fla. 1988) ............................................................ 3
*Kaufman v. Time Warner*, 836 F.3d 137, 152 (2d Cir. 2016).................................................................2
*Keller v. Miami Herald Publishing Co.*, 778 F.2d 711, 716 (11th Cir. 1985) .................................... 3
*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) .............................................. 2
*La Luna Enterprises, Inc. v. CBS Corp.*, 74 F. Supp. 2d 384 (S.D.N.Y. 1999) ........................... 3, 4
*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017)..................................................... 9
*Magluta v. Samples*, 375 F.3d 1269 (11th Cir. 2004) ........................................................................... 1
*McGriff v City of Miami Beach*, No. 1:20-cv-22583-UU, 2020 U.S. Dist. LEXIS 254879 at *12 (S.D. Fla. Nov 30, 2020) .......................................................................................................... 10
*McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) ................................................................................ 2
*Mile Marker, Inc. v. Peterson Publishing*, 811 So. 2d 841 (Fla. Dist. Ct. App. 2002)..................... 7
*Miller v. Sawant*, No. C18-506 MJP, 2020 WL 7714414 (W.D. Wash. Dec. 29, 2020).................. 4
*Morgan v. Tice*, 862 F.2d 1495 (11th Cir. 1989) .................................................................................. 8
*Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, at 1472 (S.D. Fla 1987) .................................. 8
*Oliver v. Roquet, 858 F.3d 180, 189 (3rd Cir. 2017)*............................................................................2
*Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019) .......................................................... 2, 10
*Pinero v. Corp. Cts. At Miami Lakes*, 389 F. App'x 886, 889 (11th Cir. 2010) ...............................11
*Purvis v. Bremer'S, Inc.*, 54 Wn.2d 743 (1959) ................................................................................... 4
*Raymond v. Avectus Healthcare Solutions, LLC*, 859 F.3d 381, 383 (6th Cir. 2017)....................... 1
*Ross v. Lamberti*, No. 09-61123-CIV, 2010 U.S. Dist. LEXIS 151620, 2010 WL 11505214, at *5 (S.D. Fla. July 16, 2010)..........................................................................................................11
*Sanchez v. United States Department of Energy, 870 F.3d 1185, 1199 (10th Cir. 2017)* .................2
*Scobie v. Taylor*, No. 13-60457-CIV-Scola, 2013 U.S. Dist. LEXIS 99786, 2013 WL 3776270 (S.D. Fla. July 17, 2013)................................................................................................................ 3
*Silvester v. American Broadcasting Companies*, 839 F.2d 1491 (11th Cir. 1988) ............................ 7
*Snook v. Trust Co. of Georgia Bank of Savannah*, N.A., 859 F.2d 865, 870 (11th Cir. 1988) ...... 10
*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 18CIV.4921(PGG)(KHP), 2019 WL 1434719 (S.D.N.Y. Mar. 31, 2019)............................................................................................................... 5
*Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481  (5th Cir. 2013)................................................. 8
*United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003).................................................11
*Vantassell-Matin v. Nelson*, 741 F. Supp. 698 (N.D. Ill. 1990)........................................................... 5
*Wolfson v. Kirk*, 273 So. 2d 774 (Fla. Dist. Ct. App. 1973) ................................................................ 4
*WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555 (Fla. 4th DCA 2019) ......... 9
*Yong Li v. Yanling Zeng*, 159 N.E.3d 199 (Mass. App. Ct. 2020) ...................................................... 6

## Statutes

Section 230 of the Communications Decency Act. 47 U.S.C. §230................................................. 1, 9
Strategic Lawsuits Against Public Participation, § 768.295, Fla. Stat. Ann .............................. 8, 9, 10

## Rules

Federal Rules of Civil Procedure Rule 12(d).............................................................................................10
Federal Rules of Civil Procedure Rule 16(f)(1)(C)...................................................................................10

Federal Rules of Civil Procedure Rule 56 ................................................................................................10

Plaintiff John Paul Mac Isaac (hereinafter, "Plaintiff"), by and through undersigned counsel, hereby responds to Defendant's Motion to Dismiss as follows:

## I. **Preliminary Statement**

Put simply, this case is before this Court after Defendant Twitter, Inc. ("Twitter") published statements about the Plaintiff in its attempt to block the free expression of thoughts and ideas by users (i.e., New York Post) on its social media platform. Twitter, in its Motion to Dismiss ("MTD") tries to deflect from their own bad faith actions by characterizing the Plaintiff as a willing participant in the actions giving rise to its defamatory statement and as the one who is trying to suppress Twitter's free speech rights. This is simply not true and this response will rebut Twitter's lackluster MTD explaining why this Court should deny the MTD and dismiss, with prejudice, Twitter's attempt to use Florida's Anti-SLAPP law as a means of intimidation toward the Plaintiff and any future potential plaintiff.

While Twitter has the authority to block the dissemination of information that violates its policies, it must do so in good faith to comply with the requirements of Section 230 of the Communications Decency Act. 47 U.S.C. §230. There is no requirement that a content provider like Twitter must explain its good faith decision. Twitter's explanation of its actions was unnecessary and self-serving. On October 14, 2020, Twitter announced that the content of the New York Post ("NY Post") article included information that allegedly violated its hacked materials policy. By providing this explanation, it defamed the Plaintiff. Had Twitter simply blocked the content in good faith without explanation, arguably Plaintiff would have no case as it was the publication of Twitter's reasoning that defamed the Plaintiff.

## II. **Applicable Law**

"Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Generally, under Rule 12(b)(6) the moving party bears the burden of showing that no adequate claim for relief has been presented. *Raymond v. Avectus Healthcare Solutions, LLC*, 859 F.3d 381, 383 (6th Cir. 2017); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 n.11 (3d Cir. 2016); *Davis v. Wells Fargo*, 824 F.3d 333, 350 (3d Cir. 2016).

A complaint must allege sufficient facts to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In its evaluation, a Court must start with the elements that must be plead to state a claim. *Oliver v. Roquet, 858 F.3d 180, 189 (3rd Cir. 2017)*; see *Iqbal* at 675 ("we begin by taking note of the elements a plaintiff must plead to state a claim"). The court then assumes that any remaining "well-pleaded factual allegations" are true; and determines whether these allegations "plausibly give rise to an entitlement to relief." *Iqbal*, at 679; *Sanchez v. United States Department of Energy, 870 F.3d 1185, 1199 (10th Cir. 2017)*; *Bright v. Gallia Cty., 753 F.3d 639, 652 (6th Cir. 2014)* ("we must accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible claim for relief"). Further, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. The court is obligated to accept as true all reasonable inferences that can be drawn from the well-pleaded facts and construe these as well in the light most favorable to the claimant. *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017); *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). Please note also that "[t]he plausibility standard is not akin to a 'probability requirement'. …" *Iqbal* at 678; *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019); *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.9 (9th Cir. 2018).

As such, "it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled give the defendant fair notice of what the claim is and the grounds upon which it rests." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (internal quotation marks omitted); see *Kaufman v. Time Warner*, 836 F.3d 137, 152 (2d Cir. 2016); *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

### III.     Pleading Defamation and Defamation Per Se

The complaint in a defamation action cannot be dismissed unless the court determines that the contested language is incapable of a defamatory meaning as a matter of law. *See*, e.g., *Frank v. Nat'l Broad. Co.,* 119 A.D.2d 252, 261 (2d Dept 1986). It is the Court's role to determine initially, as a matter of law, if the statements in this broadcast are "reasonably capable of a defamatory interpretation." A statement may be defamatory if it "tends to subject one to hatred,

distrust, ridicule, contempt or disgrace." *Keller v. Miami Herald Publishing Co.*, 778 F.2d 711, 716 (11th Cir. 1985).

Under Florida law, the elements of defamation are: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). A "written publication" constitutes libel *per se* under Florida law "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime [i.e., a felony]; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Aflalo v. Weiner*, No. 17-61923-CIV, 2018 U.S. Dist. LEXIS 110134, at *4 (S.D. Fla. July 2, 2018). Florida courts have found that the harm that stems from a defamatory statement as objectively interpreted by a "substantial and respectable" minority of the community is entitled to protection. *Jews for Jesus, Inc.*, 1114-15.

It is the Court's role to determine initially, as a matter of law, if the statements are "reasonably capable of a defamatory interpretation." The Court must examine how a reasonable person would have interpreted the statements. The language of the publication should not be given a tortured interpretation but should be construed as the common mind would understand the statement. *Jones v. Am. Broad. Cos.*, 694 F. Supp. 1542, 1552 (M.D. Fla. 1988) (citations omitted). "In a *per se* action, the injurious nature of the statement is apparent from the words in the statement itself and the court consequently takes notice of that fact." *Scobie v. Taylor*, No. 13-60457-CIV-Scola, 2013 U.S. Dist. LEXIS 99786, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013) (citing *Campbell v. Jacksonville Kennel Club Inc.*, 66 So.2d 495, 497 (Fla. 1953)).

Plaintiff has correctly alleged that Twitter's written publication created the belief, among a substantial and respectable minority of the community as that community would normally understand it, that the Plaintiff (1) committed a crime (hacking); (2) was subject to hatred, distrust, ridicule, contempt, or disgrace (death threats, threats of bodily harm, negative business reviews); and (3) was injured in his trade or business (business had to close).

**IV.    "Of and Concerning" the Plaintiff**

Twitter incorrectly applies the "of and concerning" standard. Applying Florida law, the Court in *La Luna Enterprises, Inc. v. CBS Corp.*, 74 F. Supp. 2d 384 (S.D.N.Y. 1999), stated:

3

> "The 'of and concerning' requirement, although it is 'generally a question of fact for the jury, ... can be decided as a matter of law where the statements 'are incapable of supporting a jury's finding that the allegedly libelous statements refer to a plaintiff.' *Anyanwu v. Columbia Broadcasting System, Inc.*, 887 F. Supp. 690, 692 (S.D.N.Y.1995) (Sweet, J.) (citation omitted).….
> As a matter of law, a 'defamed person need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the persons receiving the communication.' *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. Dist. Ct. App. 1973).

74 F. Supp. 2d at 390-91.

A key aspect of Twitter's arguments is that Twitter did not specifically name the Plaintiff, and that no extrinsic evidence may be presented in order to show that the tweets were referring to him. However, Twitter relies mostly on out-of-state case law for that proposition. *E.g., Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002) (Georgia law); *Bell v. Johnson Publ'g Co., LLC*, Civil Action No. 7:16-CV-16 (HL), 2018 WL 357888 (M.D. Ga. Jan. 10, 2018) (Georgia law); *Miller v. Sawant*, No. C18-506 MJP, 2020 WL 7714414 (W.D. Wash. Dec. 29, 2020) (Washington law). Moreover, Twitter's cases are factually distinguishable or do not establish an absolute rule against using extrinsic evidence to show that a statement was "of and concerning" a particular person. For example, in *Bell*, the court stated:

> 'The test is whether persons who knew or knew of the plaintiff could reasonably have understood that' the allegedly defamatory statement refers to the plaintiff. [*Armscorp of Am. v. Daugherty*, 191 Ga. App. 19 (1989)] 'It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that she is the person meant." *Id.* (alterations adopted).2018 WL 357888, at *3–4.

The *Miller* court indicated that some extrinsic facts may be used to show the circumstances surrounding the publication:

> "While the reasonable meaning of published words cannot be altered or extended by the pleading of innuendo, the pleader may be able to add meaning to words by a pleading of the circumstances surrounding the publication." *Purvis* [*v. Bremer'S, Inc.*], 54 Wn.2d 743, 751-52 (1959)]; *see* Memorandum at 5 n.3.

2020 WL 7714414, at *3.[1]

In a New York case that Twitter cites, the court did not establish a blanket rule against using extrinsic evidence, and the court indicated that a statement is "of and concerning" if "someone knowledgeable" about the plaintiff would understand that the statement was a reference to him:

---

[1] The *Miller* case is currently on appeal.

4

> "Courts have allowed claims where the statement did not identify the plaintiff, but named an individual who was understood to represent that plaintiff." *Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 632 (E.D.N.Y. 2018) (statement about a company—Daytree—was "of and concerning" two individuals—the Datres—because "(1) the Datres were the only principals of Daytree, and 'as the owners of such [a] closely-held corporation,' their 'personal reputations are inseparably intertwined,' (2) '"Daytree" is a homophone for "Datre,"' and (3) '[p]ublic response ... [demonstrated that the Datres and Daytree] received equal and distinctly separate harm'); *see also Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 923 (2d Cir. 1987) (finding statement identifying plaintiff by her maiden name and address qualified as "of and concerning" plaintiff because the audience "need[ed] only believe that it was about her").

*Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, 18CIV.4921(PGG)(KHP), 2019 WL 1434719, at *11 (S.D.N.Y. Mar. 31, 2019).

Twitter cites an Illinois case that refers to a "meticulous" speaker:

> [W]here a speaker is meticulous enough to preserve the anonymity of an individual about whom damaging information is given, the speaker should not be exposed to liability for defamation because someone else ferrets out the identity of the individual and couples it with the speaker's statement in a later publication. In that scenario the speaker's words cannot be characterized as having been "of and concerning" the plaintiffs.

*Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 710 (N.D. Ill. 1990).

However, Twitter was not "meticulous" in trying to keep Plaintiff's identity anonymous. By reading both the NY Post article and Twitter's tweets, a typical reader would know that Twitter was referring to the repair shop's owner as the person who initially "hacked" into the laptop computer. The article clearly states that the shop owner initially accessed the data and then gave it to Rudolph Giuliani's lawyer, who gave it to the newspaper. Since the originally published article contained a photo of the repair authorization containing the name of the repair shop, a reader could easily identify the alleged "hacker" as the shop's owner, even if the owner's name was not disclosed in the article or in Twitter's tweets. *Cf. Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213 (D.C. Cir. 1999) (under law of District of Columbia, lobbyists' statements suggesting that owner of dog racing facility had ties to organized crime could be defamatory, even if lobbyists misidentified owner of facility and never referenced true owner by name, because statements could suggest either affiliation between identified owner and true owner or that owner, whoever it may be, had ties to organized crime, since some of alleged statements referred only generically to "owner" of facility).

In *Harwood v. Bush*, 223 So. 2d 359 (Fla. 4th DCA 1969), the court stated:

5

> "Although the article fails to identify plaintiff directly as 'Harwood the Rat' plaintiff has sufficiently alleged that the article was meant to refer to him, and that many persons reading the article so understood it. It was held in the O'Neal case [O'Neal v. Tribune Co., 176 So. 2d 535 (Fla. 2d DCA 1965)],:
> 'It is not essential that the person defamed be named in the publication if, by intrinsic reference, the allusion is apparent, or if the publication contains matters of description or reference to facts and circumstances from which others may understand that he is the person referred to, *or if he is pointed out by extraneous circumstances so that persons knowing him can and do understand that he is the person referred to*; and it is sufficient if those who know the plaintiff can make out that he is the person meant. 33 Am.Jur., Libel and Slander, section 89, page 102; and for numerous jurisdictions holding to this effect, see 91 A.L.R. 1161, 1163.'"

223 So. 2d at 362 (*emphasis added*).

There are numerous other out-of-state cases in which courts have allowed extrinsic evidence to establish that a publication was "of and concerning" particular persons who are not named in the statement. *E.g.*, *Yong Li v. Yanling Zeng*, 159 N.E.3d 199, 203–04 (Mass. App. Ct. 2020) (If the person is not referred to by name or in such manner as to be readily identifiable from the descriptive matter in the publication, extrinsic facts must be alleged and proved showing that a third person other than the person defamed understood it to refer to him.).

Twitter's publication should not be evaluated in a vacuum and extrinsic evidence such as the NY Post article should be considered in order to show that the tweets were referring to Plaintiff as a "hacker" and/or the source of confidential information.[2] The fact that so many unfavorable Yelp reviews were posted shortly after Twitter's publication occurred is evidence that many readers were able to associate Plaintiff with the tweets and/or newspaper article.

## V.     **Limited Purpose Public Figure**

Twitter alleges that Plaintiff willingly participated in the actions giving rise to this suit and is, thereby, a limited purpose public figure. In its argument, Twitter attempts to redraft the Amended Complaint ("AC") by adding (or removing) language.

A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention. *Bair v. Clark*, 397 So. 2d 926 (Fla. 4th DCA 1981). In *Exner v. American Medical Ass'n*, 529 P.2d 863 (Wash. Ct. App. 1974), the court observed:

---

[2] Note that one tweet refers to "attempts to compromise or infiltrate computer systems for malicious purposes."

6

> Private citizens do not become public figures subject to damaging falsehoods concerning their lives without recourse when they are suddenly thrust into the news by events.

529 P.2d at 869.

Twitter argues that one may become a limited purpose public figure even without intending to do so. However, it is important to note that this is a "rare" occurrence. *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 77 (Fla. 4th DCA 1986) ("This is not, however, one of those rare cases where the plaintiff became a limited public figure involuntarily."). The United States Supreme Court has stated:

> "Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of special prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment."

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). *Accord Warford v. Lexington Herald-Leader Co.*, 789 S.W.2d 758, 763 (Ky. 1990). Plaintiff did not thrust himself to the forefront of a controversy or attempt to influence resolution of an issue. He did not directly give the hard drive to the media, nor was he involved in the decision to give it to the NY Post. Prior to his run-in with the *Daily Beast*, he had never been part of an interview requesting personal statements.[3]

The fact that Plaintiff gave interviews after Twitter tweeted[4] is not relevant to his status as a private or public figure because one's status is determined with reference to the facts that existed *before* he is defamed. *See Mile Marker, Inc. v. Peterson Publishing*, 811 So. 2d 841, at 846 (Fla. Dist. Ct. App. 2002) ("courts should examine the nature and extent of the advertising and publicity campaigns *previously undertaken* by the claimant") (emphasis added); *Silvester v. American Broadcasting Companies*, 839 F.2d 1491, at 1496 (11th Cir. 1988) ("The essence of these cases is that the plaintiff must have been a public figure prior to the publication of the particular defamatory speech which is the issue of the litigation."). Prior to the newspaper article's publication and the tweets, Plaintiff did not offer his opinions publicly about any

---

[3] As noted in the AC, the only interactions with a journalist was when he confirmed the accuracy of the information provided by others to the NY Post for the article.
[4] The timing of Twitter's first defamatory statement is yet another fact that is in dispute.

controversial issue. In fact, he tried to remain anonymous with regard to issues that arose out of the contents of the laptop's hard drive. He did not attempt to thrust himself into the "vortex" of a matter of legitimate public interest. *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 490 (5th Cir. 2013); *Morgan v. Tice*, 862 F.2d 1495, 1500 (11th Cir. 1989).[5] Twitter alleges that Plaintiff "chose to conduct" an interview with *The Daily Beast*.[6] In reality, the Plaintiff was leaving his shop when, as noted in the AC, he was accosted by a group of alleged journalists seeking comments about the NY Post story. Plaintiff's "contribution to" the public controversy ended before the matter became a public controversy.

## VI. **Anti-SLAPP**

There is not much case law interpreting Florida's Strategic Lawsuits Against Public Participation statute, § 768.295, Fla. Stat. Ann, and none of it applies here[7]. First, Florida's anti-SLAPP statute does not apply where claims are meritorious. § 768.295(3). Twitter bears the initial burden of proving that the anti-SLAPP statute applies. *Baird v. Mason Classical Acad., Inc.*, 2D20-2550, 2021 WL 1323519 (Fla. 2d DCA Apr. 9, 2021). Second, Plaintiff's claims are not primarily motivated by any desire to restrict Twitter's free speech rights. Rather, Plaintiff is seeking damages for defamatory statements that are not protected by the Constitution. Plaintiff is not attempting to prevent Twitter from enforcing its content restrictions; he is only contending that in doing so Twitter cannot make defamatory statements. *Cf. DiNapoli v. Yelp Inc.*, 355 F. Supp. 3d 101 (D. Mass. 2019) (alleged conduct of operator of website on which consumers could post reviews of local businesses and service providers was not in furtherance of free speech and, thus, website operator could not prevail on special motion to strike under California's anti-SLAPP statute, and fact that operator provided forum for consumer reviews did not mean that every act it undertook was in furtherance of free speech).

Subsection (2)(a) of the anti-SLAPP statute specifies that the law applies to "free speech in connection with public issues" and/or statements "made in or in connection with a play, movie,

---

[5] "The so-called 'limited purpose public figure' or 'vortex figure,' was born from language in *Gertz*, wherein the Court recognized the difference between public figures in the classic sense—those who have achieved such pervasive fame or notoriety that they become a public figure for all purposes and in all contexts—as opposed to those individuals voluntarily injected into or drawn into a particular public controversy and thereby become a public figure for a limited range of issues." *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, at 1472 (S.D. Fla 1987).
[6] This is a factual dispute.
[7] *Bongino v. The Daily Beast Company, LLC*, Case 2:19-cv-14472-JEM (S. D. Fl. August 6, 2020) is easily distinguishable, as Bongino failed to file the FS 770.01 Defamation Letters, render the complaint deficient as a matter of law. Plaintiff has filed those letters although not required by statute.

television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." The first category of statements does not apply in this case because the statute defines "free speech in connection with public issues" to mean statements "made before a governmental entity in connection with an issue under consideration or review by a governmental entity," and the tweets were not such.

In Florida, this statute should be narrowly construed. *See WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 557 (Fla. 4th DCA 2019) (noting that the trial court ruled that Florida's Anti-SLAPP statute was "in derogation of the common law and an impediment to the constitutional guarantee of access to the courts" and "must be strictly and narrowly construed"). The tweets were not made "in connection with a … news report" because the statements were made by Twitter, not by the entity that published the news report. *Cf. Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020) (anti-SLAPP statute was applied to media defendants' statements because they arose out of protected First Amendment activity by the media defendants, who published a news report on a matter of public concern).

Twitter argues that courts have held that anti-SLAPP statutes apply to decisions arising out of a social media platform's content-moderation decisions. However, the cases Twitter cites for this proposition refer to liability for decisions as to whether to allow or not allow *statements made by third parties* to be published on social media platforms. *See Cross v. Facebook, Inc.*, 222 Cal. Rptr. 3d 250 (Ct. App. 2017); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017). In the present case, Plaintiff's claims against Twitter are not based on Twitter's decision to block dissemination of the New York Post's news article. Plaintiff's claims are based on Twitter's own statements that appeared in the tweets[8].

Plaintiff is not suing Twitter for moderating or publishing third parties' statements. In the present case, Twitter was not *moderating* a discussion of public issues; on the contrary, Twitter was attempting to *suppress* a discussion of public issues, and in doing so, Twitter published its own statements. Ironically, Twitter purports to champion the right of free speech as a media defendant, yet its own actions restricted public debate and thwarted the ability of the New York Post and others to engage in free speech.

---

[8] Though Twitter's speech is not protected by Florida's Anti-SLAPP statute, Plaintiff appreciates the admission that Twitter was generating the defamatory content rather than passively publishing the content of third parties, and respectfully brings this to the Court's attention in the context of the still-pending Section 230 issue.

9

## VII. Federal Rule 12(d)

Plaintiff's Complaint makes no mention of a purpose to suppress Twitter's free speech. Accordingly, Twitter's inclusion of Plaintiff's intentions vis a vis SLAPP is outside the pleadings. When such material is submitted, Rule 12(d) "presents district courts with only two options"—(a) exclude the additional material and decide the motion on only the complaint or (b) convert the motion to one for summary judgment under Rule 56 and permit all parties to submit supporting material. *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019); *Hurd v. District of Columbia, Government*, 864 F.3d 671, 687 (D.C. Cir. 2017).

> "If a district court considers matters outside of the pleadings when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), then the motion to dismiss must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (*per curiam*); Fed. R. Civ. P. 12(d)…

Further, in general, "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Georgia Bank of Savannah*, N.A., 859 F.2d 865, 870 (11th Cir. 1988)." *McGriff v City of Miami Beach*, No. 1:20-cv-22583-UU, 2020 U.S. Dist. LEXIS 254879 at *12 (S.D. Fla. Nov 30, 2020). Twitter's inclusion of the outside matter of Plaintiff's intent in filing his Complaint invokes Rule 12(d), and if the Court considers it, the Court must convert the matter to a Summary Judgment on the matter of SLAPP and rule in favor of Plaintiff, due to the Plaintiff's inadequate opportunity for discovery (or any opportunity for that matter, as no discovery has proceeding whatsoever).

## VIII. Failure to Abide by Word Count Limitation

Finally, please note that Judge Ursula Ungaro issued that certain "Order Setting Initial Planning and Scheduling Conference" (D.E. #10) stating that a motion and its incorporated memorandum of law shall exceed 6,000 words, and that all papers must include a certificate of compliance stating the number of words. This Order has not been vacated by the instant Court. Twitter's Motion to Dismiss contains no such certification and contains no less than 9,387 words.

Rule 16(f)(1)(C) states, "On motion or on its own, the court may issue any just orders . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). "Rule 16(f) sanctions were 'designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial

preparation.' *United States v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003). Rule 16(f) sanctions can be "imposed to vindicate the integrity of the court and deter future violations" of court orders. *Pinero v. Corp. Cts. At Miami Lakes*, 389 F. App'x 886, 889 (11th Cir. 2010).

A finding of bad faith is not a prerequisite to sanctions under Rule 16(f). *Giovanno v. Fabec*, 804 F.3d 1361, 1366 n.5 (11th Cir. 2015). Sanctions under Rule 16(f) "are appropriate for negligent failure to comply with court orders." *Ross v. Lamberti*, No. 09-61123-CIV, 2010 U.S. Dist. LEXIS 151620, 2010 WL 11505214, at *5 (S.D. Fla. July 16, 2010) (J. Snow) (citations omitted). "Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). *In re Zantac (Ranitidine) Prod. Liab. Litig.,* No. 20-MD-2924, 2021 U.S. Dist. LEXIS 84049, at *51-52 (S.D. Fla. May 4, 2021).

Due to the nature of this violation as being in a Motion to Dismiss, which requires a response from Plaintiff in any event, Plaintiff does not think that it is appropriate to request attorney's fees under this rule. However, Plaintiff respectfully requests that this Court issue such order as it deems just for Twitter's failure to abide by Judge Ungaro's Order, including striking same.

Respectfully submitted this 21st day of June, 2021,

| /s/ Brian R. Della Rocca | /s/ Wesley R. Harvin, II |
|---|---|
| Brian R. Della Rocca, Esquire<br>Compass Law Partners<br>51 Monroe Street, Suite 408<br>Rockville, Maryland 20850<br>Ph: (240) 454-1013<br>Fax: (301) 740-2297<br>bdellarocca@compass-law.com<br><br>*Admitted Pro Hac Vice* | Wesley R. Harvin, II, Esquire<br>Fla Bar ID #52706<br>Harvin & Harvin LLP<br>900 E. Ocean Blvd. Suite 210B<br>Stuart, FL 34994<br>(772) 286-3630<br>wesharvin@gmail.com |

***Attorneys for Plaintiff***

**ATTORNEY'S CERTIFICATION**

Pursuant to the Court's February 23, 2021, Order [D.E. #10], undersigned counsel certifies that this document contains less than 6,000 words by containing 5,054 words.

/s/ Wesley R. Harvin, II
 Wesley R. Harvin, II, Esquire
 Fla Bar ID #52706
 Harvin & Harvin LLP
 900 E. Ocean Blvd. Suite 210B
 Stuart, FL 34994
 (772) 286-3630
 wesharvin@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 21, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

/s/ Wesley R. Harvin, II
 Wesley R. Harvin, II, Esquire
 Fla Bar ID #52706
 Harvin & Harvin LLP
 900 E. Ocean Blvd. Suite 210B
 Stuart, FL 34994
 (772) 286-3630
 wesharvin@gmail.com