UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20684-BLOOM/Otazo-Reyes

JOHN PAUL MAC ISAAC,

      Plaintiff,

v.

TWITTER, INC.,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Twitter, Inc.'s ("Defendant") Motion to Dismiss Plaintiff's Amended Complaint, ECF No. [52] ("Motion"), filed on June 7, 2021. The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised. The Court also held a hearing and considered further argument of counsel. For the reasons set forth below, the Motion is granted.

## I.    FACTUAL BACKGROUND

On February 18, 2021, Plaintiff John Paul Mac Isaac ("Plaintiff") initiated this action against Defendant Twitter, Inc. ("Defendant"), asserting a single count for defamation *per se*. ECF No. [1]. According to the Amended Complaint for Defamation, ECF No. [44] ("Amended Complaint"), Plaintiff formerly owned a Mac computer repair shop in Delaware ("Mac Shop"). *Id.* ¶¶ 18-19. On April 12, 2019, Plaintiff was asked to recover information from damaged Mac computers owned by Hunter Biden ("Biden"). *Id.* ¶ 25; *see also* ECF No. [44-17] ("Repair

Authorization").[1] The following day, at Plaintiff's request, Biden returned to the Mac Shop with an external hard drive to which Plaintiff could transfer the recovered data. ECF No. [44] ¶ 26. Upon completing the job, Plaintiff contacted Biden to pick up the hard drive and sent him an electronic invoice. *Id.* ¶¶ 27-29; *see also* ECF No. [44-18]. Biden, however, never returned to the Mac Shop or paid his invoice. ECF No. [44] ¶ 30.

Starting in late July 2019 to October 14, 2020, Plaintiff had multiple interactions with the Federal Bureau of Investigations ("FBI"), U.S. Congressional staff members, and Robert Costello ("Costello")—attorney for Rudolph Giuliani ("Giuliani"). ECF No. [44] ¶ 32. On December 9, 2019, in response to a grand jury subpoena, Plaintiff turned over Biden's laptop and hard drive to the FBI. *Id.* ¶ 33; *see also* ECF No. [44-19]. Thereafter, in August 2020, Plaintiff connected with Costello, to whom he provided a copy of the recovered data. ECF No. [44] ¶ 34. Plaintiff asked Costello not to identify Plaintiff when discussing the recovered data with Giuliani, as Plaintiff desired to remain anonymous. ECF No. [44] ¶ 35. After August 26, but prior to October 14, 2020, Giuliani provided information from the recovered data to the New York Post newspaper ("NY Post"). *Id.* ¶ 37. Plaintiff also spoke with the NY Post to verify how Plaintiff came into possession of the recovered data, and explicitly told the NY Post that he did not want to be identified. *Id.* ¶ 41.

On October 14, 2020, at approximately 5:00 a.m., the NY Post published an article entitled, "Smoking-gun email reveals how Hunter Biden introduced Ukrainian businessman to VP dad" ("Article"). *Id.* ¶ 39; *see also* ECF Nos. [44-17] & [44-21]. The Article explained that the NY Post obtained materials extracted from a laptop computer owned by Biden, which was dropped off at a repair shop in Biden's home state of Delaware in April 2019. ECF No. [41-21]. While Plaintiff

---

[1] Pursuant to the Repair Authorization, "[e]quipment left with the Mac Shop after 90 days of notification of completed service will be treated as abandoned and you agree to hold the Mac Shop harmless for any damage or loss of property." ECF No. [44-17] at 2.

was not "explicitly identified" in the Article, the Article referenced the "store[] owner" of the Delaware repair shop. *Id.*; *see also* ECF No. [44] ¶ 43. Included in the Article was a photo of the Repair Authorization, which identified the name of the Mac Shop. ECF No. [44] ¶ 44; ECF No. [44-17]. After realizing its disclosure, the NY Post updated the Article to redact the Mac Shop's name from the Repair Authorization. ECF No. [44] ¶ 39; ECF No. [44-21]. Thus, "as a result of the NY Post's mistaken disclosure, Plaintiff's identity was revealed by media outlets, including writers from the Daily Beast purportedly investigating the NY Post [Article]." ECF No. [44] ¶ 45; *see also* ECF No. [44-23].

On October 14, 2020, following the NY Post's dissemination of the Article on its Twitter account, Defendant determined that the Article "[v]iolated [its] rules against 'distribution of hacked material'"[2] and took several actions in response. ECF No. [44] ¶¶ 48-52. Specifically, Defendant locked the NY Post's Twitter account, and issued the following explanation to the NY Post regarding its decision:



## Your account has been locked.

**New York Post**
@nypost

**What happened?**
We have determined that this account violated the Twitter Rules. Specifically, for:

1. **Violating our rules against distribution of hacked material.**
   We don't permit the use of our services to directly distribute content obtained through hacking that contains private information, may put people in physical harm or danger, or contains trade secrets.

ECF No. [44-26] at 2 ("Private Explanation"); *see also* ECF No. [44] ¶¶ 47-49. Defendant also prevented its users from accessing, posting, or sharing the Article on its platform:

---

[2] Pursuant to Defendant's Hacked Materials Policy, a "hack" is defined as "an intrusion or access of a computer, network, or electronic device that was unauthorized or exceeded authorized access." ECF No. [44-29] at 3.

Case No. 21-cv-20684-BLOOM/Otazo-Reyes



ECF No. [44-26] at 2 ("User Explanation"); *see also* ECF No. [44] ¶¶ 50-51. Lastly, Defendant issued the following public statement regarding its decision to prevent the dissemination of the Article on its platform:



ECF No. [44-26] at 3 ("Public Explanation"); *see also* ECF No. [44] ¶¶ 52-53.[3]

---

[3] The Private Explanation, User Explanation, and Public Explanation are collectively referred to as the "Explanations."

According to Plaintiff, Defendant's Explanations notified its users that the materials contained in the NY Post Article violated its Hacked Materials Policy, thereby spreading the false belief that Plaintiff is a hacker. ECF No. [44] ¶¶ 50, 58-59, 61, 64. As a result of Defendant's conduct, Plaintiff received threats to his person and property, and was forced to close his business. *Id.* ¶¶ 65-66. Based on the foregoing allegations, Plaintiff asserts a single claim against Defendant for defamation *per se*.

## II.    PROCEDURAL BACKGROUND

On December 28, 2020, Plaintiff filed a substantively identical lawsuit against Defendant in the United States District Court for the Southern District of Florida, *Isaac v. Twitter, Inc.*, No. 20-cv-25264-BB (S.D. Fla. 2020) ("2020 Lawsuit"). This Court *sua sponte* dismissed the 2020 Lawsuit without prejudice for lack of subject matter jurisdiction due to Plaintiff's failure to allege complete diversity between the parties. *Isaac*, No. 20-cv-25264-BB (S.D. Fla. Dec. 29, 2020), ECF No. [5].

On February 18, 2021, Plaintiff filed the instant lawsuit against Defendant and its subsidiary, Madbits, LLC (collectively, "Defendants"). *Isaac v. Twitter, Inc. et al.*, No. 21-cv-20684-UU (S.D. Fla. 2021) ("2021 Lawsuit"). The 2021 Lawsuit was originally assigned to the Honorable Ursula Ungaro and subsequently transferred to the undersigned based on the related nature of the 2020 Lawsuit. *Isaac*, No. 21-cv-20684-BB (S.D. Fla. Mar. 3, 2021), ECF No. [16]. On April 20, 2021, Defendants filed a motion to dismiss, ECF No. [39], identifying multiple grounds for dismissal. Rather than respond to the motion to dismiss, Plaintiff filed the operative Amended Complaint, ECF No. [44], and voluntarily dismissed Madbits, LLC from this action. ECF No. [49].

On June 7, 2021, Defendant filed the instant Motion seeking to dismiss the Amended Complaint with prejudice because the Explanations do not meet any of the elements required of a defamation *per se* claim. *See generally* ECF No. [52]. Specifically, Defendant contends that: (1) the Explanations do not concern or identify Plaintiff or his business by name or implication; (2) the Explanations do not relate to criminal conduct, but rather to violations of Defendant's Hacked Materials Policy; (3) Plaintiff failed to plead special damages; (4) Plaintiff failed to plead that the Explanations were false, published, or made with the requisite degree of fault; and (5) Defendant is entitled to a mandatory award of attorneys' fees and costs under Florida's Anti-SLAPP statute. *Id.* On June 21, 2021, Plaintiff filed a Response to the Motion, ECF No. [53] ("Response"), to which Defendant filed a Reply, ECF No. [57] ("Reply"). Thereafter, on July 21, 2021, the Court heard oral argument on the Motion. ECF No. [58].

The Motion is now ripe for consideration.

## III.   LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor

of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

## IV.   DISCUSSION

Defendant argues that the Amended Complaint should be dismissed because Plaintiff failed to plausibly allege a claim for defamation *per se*. *See generally* ECF No. [52]. Defendant also seeks mandatory attorneys' fees and costs pursuant to Florida's anti-SLAPP statute, Fla. Stat. § 768.295. The Court addresses each argument in turn.

### a. Defamation *Per Se*

Defamation, which includes libel and slander,[4] "may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)). To state a claim for defamation, a plaintiff must plead the following elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A-580B).[5]

Additionally, a defamatory statement is of a *per se* "character when, 'considered alone without innuendo,' they contain (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (4) to injure a person in his trade or profession." *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955) (citing *Richard v. Gray, Fla.*, 62 So. 2d 597(Fla. 1953)); *see also Harwood v. Bush*, 223 So. 2d 359, 361 (Fla. 4th DCA 1969). "In a *per se* action, the statements are 'so obviously defamatory' and 'damaging to reputation' that the

---

[4] A claim for slander is confined to defamatory spoken words, whereas a claim for libel refers to defamatory written statements. *See Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378, n.11 (S.D. Fla. 2006) (citing *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999)).

[5] Whether a statement is "reasonably capable of a defamatory interpretation" is a question of law for the Court to determine "prior to the jury's evaluation of whether the statement was in fact understood as defamatory." *Silvester v. Am. Broad. Companies, Inc.*, 650 F. Supp. 766, 770 (S.D. Fla. 1986), *aff'd*, 839 F.2d 1491 (11th Cir. 1988). "Only when a publication is 'susceptible of two reasonable interpretations,' one of which is defamatory, does the issue become one of fact for the jury." *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1318 (S.D. Fla. 2020) (citing *Turner v. Wells*, 879 F.3d 1254, 1269 (11th Cir. 2018)). Thus, a court may properly dismiss an action pursuant to Rule 12(b)(6) where the statement "could not possibly have a defamatory or harmful effect[.]" *Id.* (citing *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001)).

injurious nature of the statement is apparent from the words in the statement itself[.]" *Paulson v. Cosm. Dermatology, Inc.*, No. 17-cv-20094, 2017 WL 2484197, at *3 (S.D. Fla. June 8, 2017) (citing *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015)). Thus, in determining whether a publication is defamatory *per se*, "consideration is given only to the 'four corners' of the publication and the language used should be interpreted as the 'common mind' would normally understand it." *Paulson*, 2017 WL 2484197, at *3 (citing *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998); *McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986)).

In the present case, Plaintiff alleges that the Explanations are defamatory *per se* because they created the belief among members of the community that Plaintiff: (1) committed a crime—hacking; (2) was subject to hatred, ridicule, contempt, or disgrace—threats of harm and negative business reviews; and (3) was injured to his trade or business as a result—closed his business. ECF No. [44] ¶¶ 61-66, 77-78, 81-83. As noted, Defendant contends that Plaintiff has failed to assert a plausible claim for defamation, let alone defamation of a *per se* character.

Specifically, Defendant first argues that Plaintiff's defamation claim fails as a matter of law because the Explanations "do not name Plaintiff or his business" or even "permit an 'ascertainable implication' that they were about Plaintiff." *Id.* 15 (citing *Horsley*, 304 F.3d at 1136); *see also Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020) ("[A] defamatory statement must be 'of and concerning' the plaintiff to be actionable." (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 802 (Fla. 1st DCA 1997))). Plaintiff, however, maintains that the Explanations themselves need not specifically identify Plaintiff to be defamatory and Plaintiff is permitted to present extrinsic evidence in the form of the NY Post Article to demonstrate that the Explanations referred to him. ECF No. [53] at 9.

9

As Plaintiff correctly argues, there is no strict requirement in Florida that an allegedly defamed person be named in a publication for the statement to be actionable. *See Wolfson*, 273 So. 2d at 779. However, Florida courts have long held that if a defamed person is *not* named in the defamatory publication, "the communication as a whole [must] contain[] sufficient facts or references from which the injured person may be determined by the persons receiving the communication." *Id.* (citing *O'Neal v. Trib. Co.*, 176 So. 2d 535, 548 (Fla. 2d DCA 1965); *Harwood*, 223 So. 2d at 362); *see also Zimmerman v. Buttigieg*, No. 8:20-cv-1077-CEH-CPT, 2021 WL 694797, at *9 (M.D. Fla. Feb. 23, 2021) ("[A] tortfeasor could juxtapose a series of facts in such a way that a specific person is identifiable even though that person's name has not been used."). The relevant inquiry is whether "the average person upon reading [the] statements could reasonably have concluded that the plaintiff [ ] was implicated[.]" *Miami Herald Pub. Co. v. Ane*, 423 So. 2d 376, 389 (Fla. 3d DCA 1982), *aff'd*, 458 So. 2d 239 (Fla. 1984).

Here, while the Amended Complaint alleges that the NY Post "published a photo of the Repair Authorization . . . without blurring the business name thereby notifying the public where Biden had dropped off his laptop[,]" ECF No. [44] ¶ 44, the Explanations did not include the subject photo. *See* ECF No. [44-26]. Nor did the Explanations mention Plaintiff, the Mac Shop, or provide any other descriptive information identifying Plaintiff as a purported "hacker." *Id.*; *see also Sloan v. Shatner*, No. 8:17-cv-332-T-27AAS, 2018 WL 3769968, at *6 (M.D. Fla. June 22, 2018) (plaintiff failed to plead that the subject radio interview was "of and concerning" him because the transcript did "not mention [p]laintiff, his business, or identifying characteristics.").

In his submissions, Plaintiff seemingly concedes that the Explanations did not reveal his identity, but nonetheless avers that the Explanations "should not be evaluated in a vacuum and extrinsic evidence such as the NY Post article should be considered in order to show that the

[Explanations] were referring to Plaintiff as a 'hacker' and/or the source of the confidential information." ECF No. [53] at 4-6; *see also* ECF No. [44] ¶ 45 (alleging that "as a result of the NY Post's mistaken disclosure, Plaintiff's identity was *revealed by media outlets*, including writers from the Daily Beast purportedly investigating the NY Post exposé." (emphasis added)). As such, Plaintiff seeks to impose liability upon Defendant based upon external facts and statements attributed not to Defendant, but rather unaffiliated third parties. However, Plaintiff's extrinsic evidence theory is flawed for several reasons.

First, the law in Florida dictates that defamation *per se* must be "actionable on its face" and does not "require[] additional explanation of the words used to show that they have a defamatory meaning or that the person defamed is the plaintiff." *Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368, 1377 (M.D. Fla. 2002) (citing *Hoch v. Rissman*, 742 So. 2d 451 (Fla. 5th DCA 1999)). For example, in *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013), the court explained that defamation claims can be proven in either of the following ways: (1) defamation *per quod*, which "requires an additional explanation of, or an interpretation of innuendo suggested by the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement[,]" or (2) defamation *per se*, which "does not require any additional explanation in order to prove the defamatory nature of the statement." *Id.* (citations omitted). The critical distinction between these actions is that in *per se* cases, "consideration is given only to the 'four corners' of the publication and 'the injurious nature of the statement'" must be apparent from the words of the publication itself. *Id.* (citing *Ortega Trujillo*, 17 F. Supp. 2d at 1339; *Campbell v. Jacksonville Kennel Club Inc.*, 66 So. 2d 495 (Fla. 1953)). Thus, because Plaintiff has asserted a claim for defamation *per se*, looking outside the four corners of the Explanations to show that "the person defamed is plaintiff" would run afoul the very nature of a

*per se* action. *Thompson*, 224 F. Supp. 2d 1377; *see also Paulson*, 2017 WL 2484197, at \*4 ("When context is considered and 'extrinsic facts and innuendo are needed to prove the defamatory nature of the words,' the statements are not defamatory *per se*." (citation omitted)).

Additionally, the cases Plaintiff cites in support of his position that he may reference extrinsic facts to establish he is the target of the Explanations are readily distinguishable. Specifically, each case involved statements in which there was a clear description of an ascertainable person *within the communication itself*, thereby permitting the plaintiff to demonstrate that he or she was implicated. *See Harwood*, 223 So. 2d at 362 (article identified plaintiff's last name in the allegorical tale of "Harwood the Rat"); *O'Neal*, 176 So. 2d at 548 (article identified "operator of the nursery," as well as the address and name of a child and her parents who attended the nursery); *Horsley*, 304 F.3d at 1137 (broadcast identified website created and maintained by plaintiff); *Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-cv-4921, 2019 WL 1434719, at \*11 (S.D.N.Y. Mar. 31, 2019) (statement referred to an "anonymous blogger" who defendants publicly claimed was plaintiff); *Daytree at Corland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 632 (E.D.N.Y 2018) (statement identified name of plaintiffs' business); *La Luna Enterprises, Inc.*, 74 F. Supp. 2d at 391 (report included footage of plaintiff's restaurant); *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 923, 925 (2d Cir. 1987) (publication identified plaintiff's maiden name and address).

Here, in contrast, the only persons identified in the Explanations are the NY Post, Hunter Biden, "Ukranian biz man" and "dad"—not Plaintiff, his business, or any other descriptive information that made Plaintiff's identity readily ascertainable. ECF No. [44-26]. The Court is certainly sympathetic to the events that took place and could envision a plausible claim had the explanations identified the "Mac Shop," "a Delaware repair shop" or even included a photo of the

Repair Authorization. However, such is not the case here, and the law will not subject Defendant to liability where it was "meticulous enough" to preserve Plaintiff's anonymity. *See Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 710 (N.D. Ill. 1990); *see also Sloan*, 2018 WL 3769968, at *6. Thus, based on the four corners of the Explanations, the Court cannot conclude that an individual reading the Explanations would be able to identify them with Plaintiff. Accordingly, for this reason alone, the Explanations fail to provide a sufficient basis upon which to ground an action for defamation *per se*.[6]

### b. Florida's Anti-SLAPP Statute

Defendant also argues that the Amended Complaint falls within Florida's anti-SLAPP statute and is therefore entitled to mandatory attorneys' fees and costs. ECF No. [52] at 25.[7] Florida's anti-SLAPP statute prohibits a person from filing a cause of action "against another

---

[6] Defendant raises additional dispositive challenges regarding the remaining elements of Plaintiff's defamation claim—defamatory meaning *per se*, special damages, falsity, publication, and requisite degree of fault. *See* ECF No. [52] at 16-26. However, Plaintiff failed to address Defendant's challenges in his Response, thereby conceding the implausibility of his claim. *See generally* ECF No. [53]; *see also Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) ("Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." (internal quotations omitted) (citation omitted)); *Resolution Trust. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it[.]"); *W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*, No. 08-80897-CIV, 2009 WL 2957749, at *11 (S.D. Fla. Sept. 9, 2009) (recognizing that the plaintiff's failure to respond to an argument raised on a motion to dismiss enables a court to dismiss a claim by default). As such, the Court will not address Defendant's remaining arguments, as Plaintiff's failure to respond constitutes an independent ground for the Court to dismiss the defamation claim by default.

[7] In his Response, Plaintiff argues that because the Amended Complaint "makes no mention of a purpose to suppress [Defendant's] free speech[,]" Defendant's claim to fees under Florida's anti-SLAPP statute is a "matter outside the pleading" and necessarily converts the instant Motion to one for summary judgment. ECF No. [53] at 15; *see also* Fed. R. Civ. P. 12(b). However, Plaintiff has failed to cite to any authority in support of his contention that Defendant's invocation of Florida's anti-SLAPP statute creates a factual dispute necessitating discovery and summary judgment. Rather, the law is to the contrary. *See Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020) (affirming district court's judgment dismissing plaintiff's defamation claim for failure to state a claim and awarding defendant fees under Florida's Anti-SLAPP statute).

person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]" Fla. Stat. § 768.295(3); *see also* Fla. Stat. § 768.295(2)(a) (defining "[f]ree speech in connection with public issues" as "any written or oral statement that is protected under applicable law and . . . is made in or in connection with a . . . magazine article, musical work, news report, or other similar work."). The anti-SLAPP statute also provides that "[t]he court *shall* award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4) (emphasis added). "At bottom, Florida's statute is a garden variety fee shifting provision, which the Florida legislature enacted to accomplish a 'fundamental state policy'— deterring SLAPP suits." *Bongino*, 477 F. Supp. 3d at 1323 (quoting Fla. Stat. § 768.295(1)).

The Court agrees that Defendant is entitled to an award of attorneys' fees and costs under Florida's anti-SLAPP statute. First, for the reasons set forth above, Plaintiff's defamation claim is without merit. *See id.* at 1322 ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute § 768.295(3)."); *Parekh v. CBS Corp.*, 820 F. App'x 827, 836 (11th Cir. 2020) (same).

Second, the instant suit arose from Defendant's protected First Amendment activity—i.e., preventing the dissemination of the NY Post Article on its platform for violation of its content moderation policies. *See Corsi v. Newsmax Media, Inc.*, No. 20-cv-81396-RAR, 2021 WL 626855, at *11 (S.D. Fla. Feb. 12, 2021) (first amendment protection for "hosting and moderating a debate on matters of public concern."). Plaintiff maintains that the anti-SLAPP statute is inapplicable because "[Defendant] was not *moderating* a discussion of public issues[,]" but instead "attempting to *suppress* a discussion of public issues[.]" ECF No. [53] at 14. While this precise issue has not yet been addressed in the context of Florida's anti-SLAPP Statute, the Court agrees

with the numerous decisions of other courts that Defendant has a "First Amendment right to decide what to publish and what not to publish on its platform." *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (citations omitted); *see also Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 202 (Cal. App. 1 Dist. 2017) (applying California's anti-SLAPP statute, "the content of the pages and [defendant's] decision not to remove them, [is] an act 'in furtherance of the . . . right to petition or free speech.'"); *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 424-25 (9th Cir. 2014) ("[W]here . . . an action directly targets the way a content provider chooses to deliver, present, or publish news content on matters of public interest, that action is based on conduct in furtherance of free speech rights[.]").

Therefore, Defendant is entitled to an award of attorneys' fees and costs under Florida's anti-SLAPP statute, Fla. Stat. § 768.295(4).

## V.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [52]**, is **GRANTED**.

2. The Amended Complaint, **ECF No. [44]**, is **DISMISSED WITH PREJUDICE**.

3. Pursuant to Federal Rule of Civil Procedure 58, Final Judgment will be entered by separate order.

4. To the extent not otherwise disposed of, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED**.

5. The Clerk of Court is directed to **CLOSE** this case.

Case No. 21-cv-20684-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 30, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record